17 CV 4327 (SJF)(SIL)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

VINCENT MOSCA,

Plaintiff,

-against-

THE CITY OF NEW YORK, et. al.,

Defendants.

**DEFENDANTS CITY OF NEW YORK AND NYPD'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR DISMISSAL**

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
*Attorney for Defendants City and NYPD*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Mark Zuckerman*
*Tel:  (212) 356-3519*
*Matter #:  2017-039975*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................... 1

FACTUAL STATEMENT .............................................................................................. 1

LEGAL STANDARD ...................................................................................................... 3

ARGUMENT

     POINT I

          PLAINTIFF'S FEDERAL CLAIMS AGAINST
          THE CITY SHOULD BE DISMISSED ...................................................... 4

          A.  Introduction.................................................................................... 4

          B.  The Defendant Francesco Colavito was not
              acting under Color of State Law ............................................. 5

          C.  Plaintiff's Boilerplate and Conclusory Claims
              of an alleged Unconstitutional Policy or
              Practice by the City Should be Dismissed ........................... 7

     POINT II

          THE CITY IS NOT LIABLE UNDER A THEORY
          OF RESPONDEAT SUPERIOR ............................................................. 10

     POINT III

          THE CITY IS NOT LIABLE UNDER A
          NEGLIGENT HIRING OR RETENTION STATE
          LAW THEORY ........................................................................................ 13

     POINT IV

          THE CITY IS NOT LIABLE UNDER A THEORY
          OF RESPONDEAT SUPERIOR FOR THE TORT
          OF INTENTIONAL INFLICTION OF
          EMOTIONAL DISTRESS ...................................................................... 14

**Page**

POINT V

THE CITY WAS NOT THE PROXIMATE
CAUSE OF PLAINTIFF'S ALLEGED INJURIES ................................ 15

POINT VI

THE DEFENDANT NYPD IS A NON-SUABLE
ENTITY ............................................................................................ 17

CONCLUSION .......................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**                                                                    **Pages**

American Mfrs. Mut. Ins. Co. v. Sullivan,
526 U.S. 40, 119 S. Ct. 977, 143 L. Ed. 2d 130 (1999)...........................................................5

Aquino v. City of New York,
16 CV 1577 (GHW), 2017 U.S. Dist. LEXIS 10436 (S.D.N.Y. Jan. 25, 2017)......................7

Ashcroft v. Iqbal,
556 U.S. 662 (2008)...................................................................................................3, 10, 14

Banushi v. City of New York,
09 CV 2937 (KAM), 2010 U.S. Dist. LEXIS 109903 (E.D.N.Y. Oct. 15,
2010) ...........................................................................................................................9

Bell Atlantic Corp. v. Twombly,
550 U.S. 544 (2007).........................................................................................................3, 4

Bonsignore v. City of New York,
683 F.2d 635 (2d Cir. 1982)................................................................................................5

Bouchard v. New York Archdiocese,
719 F. Supp. 2d 255 (S.D.N.Y. 2010).................................................................................13

Bradley v. City of New York,
08 CV 1106 (NGG), 2009 U.S. Dist. LEXIS 51532 (E.D.N.Y. June 18, 2009) ......................9

Cardona v. Cruz,
271 A.D.2d 221, 705 N.Y.S.2d 368 (1st Dep't 2000) ............................................................12

City of Canton v. Harris,
489 U.S. 378 (1989)...........................................................................................................7

Claudio v. Sawyer,
675 F. Supp. 2d 403 (S.D.N.Y. 2009), *affirmed,* 409 Fed. App'x. 464 (2d Cir.
2011) ...........................................................................................................................6

Connick v. Thompson,
563 U.S. 51 (2011).............................................................................................................8

Cornejo v. Bell,
592 F.3d 121 (2d Cir. 2010)................................................................................................5

Cuevas v. City of New York,
07 Civ. 4169 (LAP), 2009 U.S. Dist. LEXIS 114984 (S.D.N.Y. Dec. 7, 2009) ................ 9-10

**Cases**                                                                                  **Pages**

Davis v. City of New York,
    226 A.D. 2d 271 (1st Dep't 1996) ........................................12

Derdiarian v. Felix Contracting Corp.,
    51 N.Y.2d 308 (1980) ........................................17

Deskovic v. City of Peekskill,
    673 F. Supp.2d 154 (S.D.N.Y. 2009) ........................................16

Doe v. Abdulaziz Bin Fahd Alsaud,
    12 F. Supp. 3d 674 (S.D.N.Y. 2014) ........................................13

Doe v. Waraksa,
    560 F. App'x 67 (2d Cir. 2014) ........................................6

Dwares v. City of New York,
    985 F.2d 94 (2d Cir. 1993) ........................................9

EEOC v. Die Fliedermaus, L.L.C.,
    77 F. Supp. 2d 460 (S.D.N.Y. 1999) ........................................15

Ehrens v. Lutheran Church,
    385 F.3d 232 (2d Cir. 2004) ........................................13

Flagg Brothers v. Inc. v. Brooks,
    436 U.S. 149 (1978) ........................................5

Franks v. City of New York,
    13 CV 5264 (KAM), 2017 U.S. Dist. LEXIS 49532 (E.D.N.Y. Mar. 31, 2017) ........................................9

Fuller v. City of Yonkers,
    100 A.D.2d 926 (2d Dep't 1984) ........................................12

Gierlinger v. Gleason,
    160 F.3d 858 (2d Cir. 1998) ........................................16

Gonzalez v City of the New York,
    133 A.D.3d 65 (1st Dep't 2015) ........................................14

Hansel v. Sheridan,
    991 F. Supp. 69 (N.D.N.Y. 1998) ........................................15

Hearst v. City of New York,
    05 Civ. 5272 (KAM)(RML), 2012 U.S. Dist. LEXIS 41135 (E.D.N.Y. 2012) ........................................11

**Cases**                                                                                      **Pages**

Howell v. New York Post Co.,
   81 N.Y.2d 115 (1993) .................................................................................14

Iqbal v. Hasty,
   490 F.3d 143 (2d Cir. 2007).........................................................................4

Estate of Jaquez v. City of New York,
   10 CV 2881 (KBF), 2014 U.S. Dist. LEXIS 81577 (S.D.N.Y. June 6, 2014)........................13

Jenkins v. City of New York,
   478 F.3d 76 (2d Cir. 2007)...........................................................................17

Kush v. City of Buffalo,
   59 N.Y. 2d 26 (1983) .............................................................................16, 17

Leibovitz v. City of New York,
   15 CV 1722 (KAM), 2015 U.S. Dist. LEXIS 84995 (E.D.N.Y. June 30, 2015) .....................9

Longin v. Kelly,
   875 F. Supp. 196 (S.D.N.Y. 1995) ................................................................11

Lugar v. v. Edmondson Oil Co.,
   457 U.S. 922 (1982).................................................................................5

Lundberg v. State of New York,
   25 N.Y. 467 (1967) ..................................................................................11

Martin v. City of New York,
   793 F. Supp.2d 583 (E.D.N.Y. 2011) .......................................................15, 16, 17

McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc.,
   256 A.D.2d 269, 682 N.Y.S.2d 167 (1st Dep't 1998) ...........................................15

Mesa v. City of New York,
   09 CV 10464 (JPO), 2013 U.S. Dist. LEXIS 1097 (S.D.N.Y. Jan. 3, 2013)...........................14

Monell v. New York City Dept, of Soc. Servs.,
   436 U.S. 658 (1978)..................................................................................7

Moore v. The City of New York,
   219 F. Supp. 2d 335 (E.D.N.Y. 2002) ...........................................................15

Morton v. City of Albany,
   08-CV-1304 (TJM)(RFT), 2009 U.S. Dist. LEXIS 73271 (N.D.N.Y, Aug. 19,
   2009) .....................................................................................................6

**Cases**                                                                                                       **Pages**

Oklahoma City v. Tuttle,
    471 U.S. 808 (1985)..................................................................................................4

Pembaur v. City of Cincinnati,
    475 U.S. 469 (1986)...............................................................................................4, 7

Perez v. City of New York,
    94 CV 2061 (DLC), 1996 U.S. Dist. LEXIS 2812 (Mar. 7, 1994).........................................11

Pitchell v. Callan,
    13 F.3d 545 (2d Cir. 1995)......................................................................................5, 6

Plair v. City of New York,
    789 F. Supp. 2d 459 (S.D.N.Y. 2011)...........................................................................9

Polk Cnt'y v. Dodson,
    454 U.S. 312 (1981).................................................................................................6

Reynolds v. Giuliani,
    506 F.3d 183 (2d Cir. 2007)......................................................................................8, 9

Riviello v. Waldron,
    47 N.Y.2d 297 (1979).............................................................................................11

Rodriguez v. Winski,
    973 F. Supp. 2d 411 (S.D.N.Y. 2013)...........................................................................7

Sachs v. Cantwell,
    10 Civ. 1663 (JPO), 2012 U.S. Dist. LEXIS 125335 (S.D.N.Y. Sept. 4, 2012).....................10

Screws v. United States,
    325 U.S. 91 (1945).................................................................................................5

In re September 11 Litigation,
    280 F. Supp.2d 279 (S.D.N.Y. 2003)...........................................................................16

In re September 11 Litigation Aegis Insurance Services, Inc.,
    865 F. Supp.2d 370 (S.D.N.Y. 2011)...........................................................................17

Sheehan v. City of New York,
    40 N.Y.2d 496 (N.Y. 1976).....................................................................................16

Stavitz v. City of New York,
    98 A.D.2d 529, 471 N.Y.S.2d 272 (1st Dep't 1984).......................................................11, 12

**Cases**                                                                                                              **Pages**

Swinton v. City of New York,
    08 Civ. 3278 (RJD) (RML), 2011 U.S. Dist. LEXIS 32384 (E.D.N.Y. Mar.
    28, 2011) ...................................................................................................................9

Tancredi v. Metro. Life Insurance Co.,
    316 F.3d 308 (2d Cir. 2012)...................................................................................5

Townes v. City of New York,
    176 F.3d 138 (2d Cir. 1999)............................................................................15, 16

Triano v. Town of Harrison,
    895 F. Supp. 2d 526 (S.D.N.Y. 2012)....................................................................9

Turk v. McCarthy,
    661 F. Supp. 1526 (E.D.N.Y. 1987) .....................................................................12

United States v. Classic,
    313 U.S. 299 (1941)................................................................................................6

Vippolis v. Vill. Of Haverstraw,
    768 F.2d 40 (2d Cir. 1985).....................................................................................4

Wray v. City of New York,
    340 F. Supp. 2d 291 (E.D.N.Y. 2004) .................................................................17

Wray v. City of New York,
    490 F.3d 189 (2d Cir. 2007)................................................................................7, 8

Zahrey v. City of New York,
    98 Civ. 4546 (DCP), 2009 U.S. Dist. LEXIS 31893 (S.D.N.Y. Apr. 15, 2009) ....................16

**Statutes**

42 U.S.C. § 1983..................................................................................4, 5, 6, 7, 8, 15, 16

Fed. R. Civ. P. Rule 12(b)(6) ...........................................................................................1, 16

Fed. Rule Civ. Proc. 8(a)(2)...........................................................................................3, 4

N.Y.C. Charter § 396 .......................................................................................................17

**Other Authorities**

Restatement 2d of Torts, § 390 (2nd 1979) .................................................................14

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------- x

VINCENT MOSCA,

**DEFENDANTS CITY OF
NEW YORK AND NYPD'S
MEMORANDUM OF LAW
IN SUPPORT OF MOTION
FOR DISMISSAL**

Plaintiff,

-against-

THE CITY OF NEW YORK, et. al.,

17 CV 4327 (SJF)(SIL)

Defendants.

------------------------------------------------------------------------- x

## PRELIMINARY STATEMENT

Defendants City of New York (the "City") and New York City Police Department ("NYPD") (a non-suable entity), hereby respectfully submit their Memorandum of Law in support of their motion to dismiss plaintiff's complaint with prejudice pursuant to Rule 12(b)(6), Fed. R. Civ. P. For the reasons set forth herein, plaintiff's complaint fails to state any claims upon which relief may be granted, thus, defendants' motion should be granted in its entirety and plaintiff's complaint dismissed with prejudice.[1]

## FACTUAL STATEMENT

The following facts are alleged to be true by plaintiff in his complaint: On April 29, 2016, plaintiff Vincent Mosca ("Mosca") "visited" a restaurant and bar called the "Tap Room," located at 1010 Park Boulevard, Massapequa, New York. (Complaint, ¶¶15, 26) Shortly after arriving at the Tap Room, plaintiff encountered the defendant Francesco Colavito

---

[1] Defendants have attempted to address herein the causes of action pled in plaintiff's complaint. To the extent that plaintiff is any bringing additional causes of action not addressed herein, such are without merit as well and should be dismissed.

and Ian Walsh, who were "visibly intoxicated."  (Complaint, ¶27)  Colavito was a probationary NYPD police officer at the time.  (Complaint, ¶27)  Colavito was off-duty at the time of the subject incident, which occurred outside the City of New York.  (See Complaint)

Colavito and Walsh, acting together, and almost immediately, "began to menace, threaten, bully, harass and act belligerent towards Mosca without just cause or provocation." (Complaint, ¶28)  Mosca announced that he was going to exit the restaurant/bar.  (Complaint, ¶29)  Colavito and Walsh followed Mosca as he attempted to leave the restaurant/bar, and continued to "menace, threaten, bully, harass and act belligerent towards Mosca without provocation."  (Complaint, ¶30)  Mosca "attempted to de-escalate the situation by giving Walsh a friendly hug and wishing him the best."  (Complaint, ¶31)  Colavito and Walsh followed Mosca to the parking lot of the Tap Room.  (Complaint, ¶32)

As Mosca was attempting to "remove himself from the situation and exit the parking lot" at the Tap Room, Colavito "confronted Mosca."  (Complaint, ¶34)  "Colavito pronounced:  'I'm with the NYPD, you're not going anywhere.'  Colavito flashed his NYPD badge at Mosca."  (Complaint, ¶35)  "While Mosca was confronted, detained, and distracted by Colavito, Walsh viciously punched Mosca from behind on his head."  (Complaint, ¶36)  Walsh continued to "repeatedly punch, kick, assault and brutalize Mosca," causing Mosca to lose consciousness.  (Complaint, ¶37)  Colavito and Walsh returned to inside the restaurant/bar while Mosca lied on the ground unconscious.  (Complaint, ¶38)  Colavito and Walsh "openly celebrated" their "unprovoked attack."  (Complaint, ¶39)  Colavito and Walsh "repeatedly, brazenly and openly brought out patrons of the bar into the parking lot in a jovial drunken fashion to mock the condition of Mosca," who remained unconscious.  (Complaint, ¶42)

2

A "good Samaritan Jeffrey Bucheit," assisted Mosca. (Complaint, ¶48) However, Mosca, "as a result of the attack,…suffered a traumatic brain injury, multiple facial fractures, required reconstructive surgery and continues to suffer from permanent physical and psychological injuries...." (Complaint, ¶48)

Colavito never reported the incident to NYPD. (Complaint, ¶50) Walsh pled guilty to a misdemeanor in connection with the incident. (Complaint, ¶52) Walsh had been "arrested for a similar assault and battery in the past." (Complaint, ¶53) Colavito was eventually terminated by NYPD. (Complaint, ¶57)

## **LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. (quoting Twombly, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

Two working principles determine whether a complaint may survive a motion to dismiss. Ashcroft, 556 U.S. at 678-679. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555) ("Although for the purposes of a motion to dismiss we

must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"). "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Id. (citing Twombly, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. (quoting Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007)). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – "that the pleader is entitled to relief.'" Id. (citing Fed. Rule Civ. Proc. 8(a)(2)).

## ARGUMENT

### POINT I

### PLAINTIFF'S FEDERAL CLAIMS AGAINST THE CITY SHOULD BE DISMISSED

**A.      Introduction**

Plaintiff's first three causes of action are brought under 42 U.S.C. § 1983. (See Complaint, e.g., ¶¶ 68, 69, 70, 71, 90, 107 and 112) To hold a municipality liable as a "person" within the meaning of 42 U.S.C. § 1983, a plaintiff must establish that the municipality itself was somehow at fault. Oklahoma City v. Tuttle, 471 U.S. 808, 810 (1985). A municipality may not be held liable under § 1983 by application of the doctrine of *respondeat superior*. Pembaur v. City of Cincinnati, 475 U.S. 469, 478 (1986). "The plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries . . . . Second, the plaintiff must establish a causal connection – an affirmative link –

4

between the policy and the deprivation of his constitutional rights." <u>Vippolis v. Vill. Of Haverstraw</u>, 768 F.2d 40, 44 (2d Cir. 1985) (internal quotation marks and citation omitted).

**B.      The Defendant Francesco Colavito was not acting under Color of State Law**

In order to sustain a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege (1) that the challenged conduct was "committed by a person acting under color of state law," and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." <u>Cornejo v. Bell</u>, 592 F.3d 121, 127 (2d Cir. 2010).  "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." <u>American Mfrs. Mut. Ins. Co. v. Sullivan</u>, 526 U.S. 40, 50, 119 S. Ct. 977, 143 L. Ed. 2d 130 (1999).  "In cases under § 1983, 'under color' of law has consistently been treated as the same thing as the 'state action' required under the Fourteenth Amendment." <u>Tancredi v. Metro. Life Insurance Co.</u>, 316 F.3d 308, 312 (2d Cir. 2012).

The "color of state law" requirement "reflects judicial recognition of the fact that 'most rights secured by the Constitution are protected only against infringement by governments[.]'" <u>Lugar v. v. Edmondson Oil Co.</u>, 457 U.S. 922, 936 (1982) (quoting <u>Flagg Brothers v. Inc. v. Brooks</u>, 436 U.S. 149, 156 (1978)).  The Supreme Court therefore "insist[s] that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State." <u>Lugar</u>, 457 U.S. at 937.

It is "axiomatic" that "under color of law" "means under 'pretense' of the law and that 'acts of officers in the ambit of their personal pursuits are plainly excluded'" by this requirement. <u>Pitchell v. Callan</u>, 13 F.3d 545, 548 (2d Cir. 1995) (quoting <u>Screws v. United States</u>, 325 U.S. 91 (1945)); <u>see</u> <u>Bonsignore v. City of New York</u>, 683 F.2d 635 (2d Cir. 1982) (off duty police officer not acting under color of state law when he shot wife as such was a

"personal pursuit"). Courts have also determined liability based on whether the officer, "albeit off-duty, nonetheless invokes the real or apparent power of the police department" or "performs duties prescribed generally for police officers." Pitchell, at 548. Under § 1983, "a person acts under color of state law only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" Polk Cnt'y v. Dodson, 454 U.S. 312, 317-18 (1981) (quoting United States v. Classic, 313 U.S. 299, 326 (1941)); Doe v. Waraksa, 560 F. App'x 67, 68 (2d Cir. 2014). There is no "bright line test" for making such a determination and courts look to "nature of the officer's act." Pitchell, at 548.

Courts have routinely dismissed complaints the "color of state law" analysis where an officer's acts were found to be his "personal pursuits." Claudio v. Sawyer, 675 F. Supp. 2d 403 (S.D.N.Y. 2009), affirmed, 409 Fed. App'x. 464 (2d Cir. 2011) (intoxicated off-duty officer who shot and killed plaintiff after plaintiff cut the officer off in traffic, was not acting under color of law); Morton v. City of Albany, 08-CV-1304 (TJM)(RFT), 2009 U.S. Dist. LEXIS 73271 (N.D.N.Y, Aug. 19, 2009) (officer did not invoke the real or apparent power of the police department in harassing and pointing a loaded handgun at a civilian police employee in the police station).

Plaintiff's complaint in this case demonstrates that the alleged acts of the defendant Colavito were private and personal pursuits in furtherance of a dispute with plaintiff that had nothing to do with his law enforcement duties as a then police officer of the NYPD. Colavito was off duty, and this incident occurred outside the City of New York. The incident was the sole result of the personal dispute that Colavito and Walsh had with plaintiff at a restaurant/bar in Massapequa. There was no law enforcement function taking place. Plaintiff's complaint does not reflect that he had committed a crime or was even being investigated for a

crime.   Rather, the complaint alleges that Colavito acted in an opposite manner from his responsibilities as a police officer, by allowing the alleged assault by Walsh to take place.  This incident simply had no relationship to Colavito's duties as a police officer, and was a private and personal pursuit.  As a result, Colavito was not acting under "color of state law," and plaintiff's federal claims (Causes of Action 1-3) should be dismissed for this reason alone.

**C.     Plaintiff's Boilerplate and Conclusory Claims of an alleged Unconstitutional Policy or Practice by the City Should be Dismissed**

Even in the event that the Court finds that plaintiff's federal claims are not barred by the "color of state law" doctrine, plaintiff's federal claims against the City (Causes of Action 1-3) must still fail.  "In order to hold the City of New York liable under 42 U.S.C. § 1983 for an alleged constitutional violation, plaintiff must plead: "(1) an official policy or custom that (2) cause[d] [Plaintiff] to be subjected to (3) a denial of a constitutional right." Aquino v. City of New York, 16 CV 1577 (GHW), 2017 U.S. Dist. LEXIS 10436, at *8 (S.D.N.Y. Jan. 25, 2017) (quoting Rodriguez v. Winski, 973 F. Supp. 2d 411, 425 (S.D.N.Y. 2013)) (citing Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007)).  Plaintiff can satisfy the "policy or custom" prong required for municipal liability by alleging "the existence of (1) a formal policy, see  Monell v. New York City Dept, of Soc. Servs., 436 U.S. 658, 690 (1978)); (2) actions taken or decisions made by final municipal policymakers that caused the violation of [Plaintiff's] rights, see Pembaur, at 483-484 (1986); (3) a practice so persistent and widespread that it constitutes a "custom or usage" and implies the constructive knowledge of policymakers, see Monell, 436 U.S. at 690-91; or (4) a failure to properly train or supervise municipal employees that amounts to "deliberate indifference to the rights of those with whom municipal employees will come into contact."  See City of Canton v. Harris, 489 U.S. 378, 388 (1989).

In his complaint, plaintiff has only attempted to proceed against the City under a municipal liability theory of "failure to train or supervise."  (See Causes of Action 2-3)[2]  A municipality's failure to train or supervise its employees may constitute a "policy" or "custom," but a plaintiff premising liability on a claim of failure to train or supervise must show that "the failure amounts to 'deliberate indifference' to the rights of those with whom the city employees interact."  Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007).  "Deliberate indifference," as the Supreme Court cautioned, "is a *stringent standard of fault*, requiring proof that a municipal actor disregarded a known obvious consequence of his action."  Connick v. Thompson, 563 U.S. 51, 61 (2011) (emphasis added).  Although a municipality may be liable under § 1983 for its policies or customs, only "[i]n limited circumstances [can] a local government's decision not to train certain employees about their duty to avoid violating citizens' rights [] rise to the level of an official government policy for purposes of § 1983."  Id. ("municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train").

"[W]here a city has a training program, a plaintiff must . . . identify a *specific deficiency* in the city's training program and establish that that deficiency is *closely related to the ultimate injury*, such that it actually caused the constitutional deprivation."  Wray, 490 F.3d at 196 (internal quotation marks and citations omitted; emphasis added).  "[A] training program must be quite deficient in order for the deliberate indifference standard to be met:  the fact that training is imperfect or not in the precise form a plaintiff would prefer is insufficient to make such a showing."  Reynolds v. Giuliani, 506 F.3d 183, 193 (2d Cir. 2007).

---

[2] Plaintiff's First Cause of Action does not allege an unconstitutional policy or practice of the City of any kind.

To succeed on a "deliberate indifference" theory, a plaintiff must show that (i) "city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights," and notwithstanding such notice, (ii) "the policymakers choose to retain that program." Connick, 563 U.S. at 61. With respect to claims alleging failure to train, it is "ordinarily necessary" to establish a "pattern of similar constitutional violations by untrained employees." Id. at 62 ("Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."). "[A] failure to act, train, or supervise can constitute a municipal custom 'only where the need to act is so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need.'" Triano v. Town of Harrison, 895 F. Supp. 2d 526, 534 (S.D.N.Y. 2012) (quoting Reynolds, at 192.)

"The mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." Bradley v. City of New York, 08 CV 1106 (NGG), 2009 U.S. Dist. LEXIS 51532, at *8-*9 (E.D.N.Y. June 18, 2009) (citing Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993)). Courts routinely dismiss boilerplate assertions of municipal liability, such as the one asserted here. Plair v. City of New York, 789 F. Supp. 2d 459, 469 (S.D.N.Y. 2011) (collecting cases). Moreover, wholly conclusory allegations of municipal liability are routinely dismissed by district courts in this Circuit. Franks v. City of New York, 13 CV 5264 (KAM), 2017 U.S. Dist. LEXIS 49532, at *14 (E.D.N.Y. Mar. 31, 2017); Leibovitz v. City of New York, 15 CV 1722 (KAM), 2015 U.S. Dist. LEXIS 84995, at *12-14 (E.D.N.Y. June 30, 2015);

Banushi v. City of New York, 09 CV 2937 (KAM), 2010 U.S. Dist. LEXIS 109903, at *35-37 (E.D.N.Y. Oct. 15, 2010) (KAM); Swinton v. City of New York, 08 Civ. 3278 (RJD)(RML), 2011 U.S. Dist. LEXIS 32384, at *15-17 (E.D.N.Y. Mar. 28, 2011) (dismissing as conclusory plaintiff's claim that [ADA's] inflate charges); Cuevas v. City of New York, 07 Civ. 4169 (LAP), 2009 U.S. Dist. LEXIS 114984, at *10 (S.D.N.Y. Dec. 7, 2009) ("Plaintiff's boilerplate allegations against the City … satisfy neither the elements [for municipal liability], nor the pleading requirements set forth in Iqbal").

Plaintiff's claims of a failure to train or supervise neither satisfy the elements for municipal liability nor meet the requirements set forth in Iqbal.  In fact, plaintiff's complaint identifies no other incidents, other than the subject incident, in which it is alleged that the City acted unconstitutionally.  No factual support of any kind is provided for any of these claims. Plaintiff does not even provide any factual support as to how the City failed to train or supervise with respect to the defendant Colavito.  Plaintiff's municipal liability claims are made without any factual support whatsoever, and are conclusory and boilerplate.  The factual allegations made in the complaint do not in any way support the elements of these claims.  No factual showing is made of alleged deliberate indifference, or any defect in defendant's training programs.  As such, under the foregoing authorities, plaintiff's federal claims against the City must be dismissed for these reasons as well.

## POINT II

## THE CITY IS NOT LIABLE UNDER A THEORY OF RESPONDEAT SUPERIOR

To the extent that plaintiff's complaint can be construed to be making state law claims against the City, such claims must be dismissed as well.  "Under New York law, 'an employer may be vicariously liable for an intentional tort committed by an employee if the

employee was acting within the scope of employment at the time the tort was committed.'"
Sachs v. Cantwell, 10 Civ. 1663 (JPO), 2012 U.S. Dist. LEXIS 125335, at *55 (S.D.N.Y. Sept.
4, 2012). (internal citations omitted)  Additionally, under New York law, "an employer may be
liable based on a theory of respondeat superior only where an employee was engaged in
furtherance of the employer's enterprise at the time of the employee's wrongdoing, and the
employer was or could have been exercising some control over the employee's activities."
Longin v. Kelly, 875 F. Supp. 196 (S.D.N.Y. 1995) (citing Lundberg v. State of New York, 25
N.Y. 467 (1967)).  With respect to off duty police officers, "New York courts have stated that
'where an employee's conduct is brought on by a matter wholly personal in nature, the nature of
which is not job related, his actions cannot be said to fall within the scope of his employment.'"
Id. (quoting Stavitz v. City of New York, 98 A.D.2d 529, 531, 471 N.Y.S.2d 272 (1st Dep't
1984)).  An officer's acts are personal and not job related when he is "not authorized to act by
virtue of his status" as a police officer.   Hearst v. City of New York, 05 Civ. 5272 (KAM)
(RML), 2012 U.S. Dist. LEXIS 41135, at *14 (E.D.N.Y. 2012) (quoting Longin, 875 F. Supp. at
202).

      In determining the factors to be weighed, New York courts often look to five
factors:  "[1] the connection between the time, place and occasion for the act, [2] the history of
the relationship between employer and employee as spelled out in actual practice, [3] whether
the act is one commonly done by such an employee, [4] the extent of departure from normal
methods of performance; [5] and whether the specific act was one that the employer could
reasonably have anticipated."  Riviello v. Waldron, 47 N.Y.2d 297, 302 (1979).

      "The act of identifying oneself as a police officer, producing a shield, and
executing an arrest, because one's employment with the City confers the authority to do so, does

not automatically create liability for the City." Perez v. City of New York, 94 CV 2061 (DLC), 1996 U.S. Dist. LEXIS 2812, at *6-7 (Mar. 7, 1994) (citing Stavitz, 471 N.Y.S.2d at 274). "The issue remains whether the alleged wrongful act was 'in the course of the officer's employment or outside it, to accomplish a purpose foreign to it.'" Id. (internal citation omitted).

Where it is undisputed that an off duty officer has been the aggressor in an off duty altercation, New York courts have consistently found that the municipality is not liable under a theory of *respondeat superior*.  Cardona v. Cruz, 271 A.D.2d 221, 705 N.Y.S.2d 368, 368-369 (1st Dep't 2000) (declining to hold City liable for officer's shooting of ex-wife's boyfriend even where officer told plaintiff that he was under arrest and plaintiff knew the officer's police officer status); Turk v. McCarthy, 661 F. Supp. 1526 (E.D.N.Y. 1987) (City not liable when a drunk off duty officer shot a security officer at an amusement park when asked to leave grounds);  Davis v. City of New York, 226 A.D. 2d 271 (1st Dep't 1996) (City not liable for  acts  of off duty Correction officer who shot person in McDonald's for cutting in front of him); Fuller v. City of Yonkers, 100 A.D.2d 926 (2d Dep't 1984) (municipality not liable for police officer who fatally shot bar employee while trying to remove daughter from bar); Stavitz v. City of New York, 98 A.D.2d 529 (1st Dep't 1984) (City not liable for police officer's off duty assault of a neighbor in common driveway).

Clearly, the defendant Colavito's acts complained of were not acts performed in the scope of his employment.  Indisputably, Colavito was off duty and the acts complained of were not undertaken in the City of New York, where he was a police officer, but rather at a restaurant/bar in Massapequa, Nassau County.  Plaintiff's acts, as alleged, were of course the opposite from what the NYPD expects, as plaintiff is alleged to have stood by/encouraged/assisted in an criminal assault by Walsh.  This would be a complete departure

from "normal methods of performance."   Furthermore, the City could not have reasonably anticipated that Colavito would have undertaken such acts, which were for a personal pursuit and not job related.   The City had no control over Colavito's personal pursuit as alleged in the complaint.   As such, the City cannot be liable under a theory of *respondeat superior* under any state law claim that plaintiff may be making in his Complaint.

**POINT III**

### THE CITY IS NOT LIABLE UNDER A NEGLIGENT HIRING OR RETENTION STATE LAW THEORY

To the extent that plaintiff is making such a claim, under New York law, in order to state a claim for negligent hiring and retention, plaintiff must show, in addition to the standard elements of negligence, that: "(1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and, (3) that the tort was committed on the employer's premises or with the employer's chattels." Ehrens v. Lutheran Church, 385 F.3d 232, 235 (2d Cir. 2004) (internal citations and quotation marks omitted).   "A claim for negligent hiring or supervision can only proceed against an employer for an employee acting outside the scope of [his or] her employment."   Estate of Jaquez v. City of New York, 2014 U.S. Dist. LEXIS 81577, 20-21 (S.D.N.Y. June 6, 2014).   Moreover, "[a] cause of action for negligent hiring or retention requires allegations that the employer failed to investigate a prospective employee notwithstanding knowledge of facts that would lead a reasonably prudent person to investigate that prospective employee." Bouchard v. New York Archdiocese, 719 F. Supp. 2d 255 (S.D.N.Y. 2010) (internal quotation marks, alterations, and citation omitted).   Courts have dismissed such claims where the complaint does not contain a factual allegation showing that the defendant "knew or should have known of the employee's

13

propensity for the conduct which caused the injury prior to the injury's occurrence." Doe v. Abdulaziz Bin Fahd Alsaud, 12 F. Supp. 3d 674, 680 (S.D.N.Y. 2014).

With respect to Colavito's alleged propensity for violence, plaintiff's complaint offers nothing more than conclusory and boilerplate allegations in support thereof. Plaintiff does not identify any act of Colavito, other than the subject incident, that could have put the City on notice of any such alleged propensity, or the basis of his claim that the City should have investigated Colavito further. As such, plaintiff has completely failed to meet his burden under Iqbal and/or otherwise meet his pleading burden as to the claim. As such, any negligent hiring or retention claim should be dismissed.

Furthermore, the assault of plaintiff was not made with the City's "chattels," such as an NYPD issued gun. As set forth in plaintiff's complaint, it was Walsh who assaulted plaintiff without any NYPD issued "chattel." To the extent that plaintiff points to the use of Colavito's badge as a "chattel" used in this incident, the caselaw requires that the "chattel" be one that inflicted physical injury, which the badge did not. See Gonzalez v City of the New York, 133 A.D.3d 65, 68 (1st Dep't 2015) (citing Restatement 2d of Torts, § 390 (2nd 1979)).

## POINT IV

### THE CITY IS NOT LIABLE UNDER A THEORY OF RESPONDEAT SUPERIOR FOR THE TORT OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In his Fourth Cause of Action, plaintiff seems to making a claim against the City for the tort of intentional infliction of emotional distress ("IIED") under a *respondeat superior* theory for the alleged acts of Colavito. Under New York Law, the tort of intentional infliction of emotional harm constitutes: (1) extreme and outrageous conduct; (2) an intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (3) a causal

relationship between the conduct and the injury; and (4) severe emotional distress.  Howell v. New York Post Co., 81 N.Y.2d 115, 121 (1993).  An IIED claim -- which is a "disfavored claim[ ] in New York courts, [] ha[s] a rigorous standard." Mesa v. City of New York, 09 Civ. 10464 (JPO), 2013 U.S. Dist. LEXIS 1097, at *97 (S.D.N.Y. Jan. 3, 2013).

"[I]n New York, 'intentional infliction of emotional distress is a theory of recovery that is to be invoked only as a last resort,' when traditional tort remedies are unavailable." Moore v. The City of New York, 219 F. Supp. 2d 335, 339 (E.D.N.Y. 2002) (citing EEOC v. Die Fliedermaus, L.L.C., 77 F. Supp. 2d 460, 472 (S.D.N.Y. 1999) (quoting McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc., 256 A.D.2d 269, 682 N.Y.S.2d 167, 169 (1ˢᵗ Dep't 1998)).  "Accordingly, 'no intentional infliction of emotional distress claim will lie where the conduct underlying the claim falls within the ambit of traditional tort liability.'" Moore, at 339 (quoting Hansel v. Sheridan, 991 F. Supp. 69, 75 (N.D.N.Y. 1998)).

Here, plaintiff has the traditional tort remedies of assault and battery against the perpetrators of the incident.  Thus, to the extent that said IIED claim is based on the acts of Colavito and Walsh, the alleged conduct of Colavito and Walsh fall under the "ambit of traditional tort liability," and under the foregoing authorities, an IIED claim does not lie based thereon.  Furthermore, the factual basis for said claim against the City in the Complaint is based on the "City and NYPD's reaction to the incident."  (Complaint, ¶116)  The City's alleged improper "reaction to the incident" clearly does not meet the elements for an IIED claim as set forth above.  As such, plaintiff's IIED claim should be dismissed.

## POINT V

## THE CITY WAS NOT THE PROXIMATE CAUSE OF PLAINTIFF'S ALLEGED INJURIES

"Actions brought under § 1983 are similar to tort actions since they both serve to compensate victims, and '[a] § 1983 action, like its state tort analog[ues], employs the principle of proximate causation.'"  Martin v. City of New York, 793 F. Supp.2d 583, 586 (E.D.N.Y. 2011) (quoting Townes v. City of New York, 176 F.3d 138, 146 (2d Cir. 1999)).  "In any Section 1983 case, a "plaintiff must prove that the defendant's action was a proximate cause of the plaintiff's injury."  Deskovic v. City of Peekskill, 673 F. Supp.2d 154, 161 (S.D.N.Y. 2009) (quoting Gierlinger v. Gleason, 160 F.3d 858, 872 (2d Cir. 1998)).  A court may decide the issue of proximate causation "if it can be determined as a matter of law that the defendant's actions were not the proximate cause of the plaintiff's injuries."  Deskovic, 673 F. Supp.2d at 162, n. 5 (citing Townes 176 F.2d at 147).  A § 1983 claim may be dismissed pursuant to Rule 12(b)(6) where plaintiff's allegations do not adequately allege that defendants proximately caused plaintiff's injury.  Townes, 176 F.2d at 147.

"When an intervening act 'is of such an extraordinary nature or so attenuates defendants' [actions] from the ultimate injury that responsibility for the injury may not be reasonably attributed to the defendant,' proximate cause is lacking."  In re September 11 Litigation, 280 F. Supp.2d 279, 301 (S.D.N.Y. 2003) (quoting Kush v. City of Buffalo, 59 N.Y. 2d 26 (1983)).  "Thus, 'when such an intervening cause 'interrupts the natural sequence of events, turns aside their course, prevents the natural and probable result of the original act or omission, and produces a different result that could not have been reasonably anticipated,' it will prevent a recovery on account of the act or omission of the original wrongdoer.'"  Id. (quoting Sheehan v. City of New York, 40 N.Y.2d 496 (N.Y. 1976)).  "An intervening act 'must be a new and independent force, which was not set in motion by the defendant's own wrongful acts, and must rise to such a level of culpability as to replace the defendant's [actions] as the legal cause.'"

16

Martin, supra, at 586-587 (quoting Zahrey v. City of New York, 98 Civ. 4546 (DCP), 2009 U.S. Dist. LEXIS 31893, at *16-17 (S.D.N.Y. Apr. 15, 2009)).

"Generally, an intervening intentional or criminal act severs the liability of the original tort-feasor," In re September 11 Litigation, 280 F. Supp.2d at 302 (citing Kush at 729), except where the "intentional or criminal intervention of a third party or parties is reasonably forseeable." Id. (quoting Kush). Injuries are not reasonably foreseeable for proximate cause purposes where the "injuries were different in kind than those which would have normally been expected" from the original wrongdoing. Martin, 793 F. Supp.2d at 588 (quoting Derdiarian v. Felix Contracting Corp., 51 N.Y.2d 308, 316 (1980)). The question presented is whether the risks being litigated were within the "zone of reasonable foreseeability." In re September 11 Litigation Aegis Insurance Services, Inc., 865 F. Supp.2d 370, 384 (S.D.N.Y. 2011).

Here, the acts of Colavito and Walsh are alleged in the Complaint to be criminal, and in fact, plaintiff has alleged that Walsh pled guilty to a misdemeanor in connection with the incident. (Complaint, ¶52) The alleged assault of plaintiff was certainly not within the "zone of foreseeability" to the City based on any facts alleged in the complaint. The acts of Colavito and Walsh were intervening and superceding acts that severed any liability of the City. As such, based on the principle of proximate causation, plaintiff's complaint against the City should be dismissed.

## POINT VI

## THE DEFENDANT NYPD IS A NON-SUABLE ENTITY

Plaintiff purports to name the New York City Police Department ("NYPD") as a defendant in this matter. The NYPD, however, is a non-suable entity. Jenkins v. City of New York, 478 F.3d 76, 93 n.19 (2d Cir. 2007); Wray v. City of New York, 340 F. Supp. 2d 291, 303

(E.D.N.Y. 2004) (quoting N.Y.C. Charter § 396) ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law.")).  As such, plaintiff's claims against the NYPD should be dismissed as well.

## **CONCLUSION**

    For the foregoing reasons, defendants' motion to dismiss should be granted and plaintiff's complaint dismissed with prejudice.

Dated:   New York, New York
      August 16, 2017


        ZACHARY W. CARTER
        Corporation Counsel of the
         City of New York
        *Attorney for Defendants City of New York and New*
        *York City Police Department (a non-suable entity)*
        100 Church Street
        New York, New York 10007
        (212) 356-3519


        By:     _/s/_____
          MARK D. ZUCKERMAN