UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
VINCENT MOSCA,                                                          17 CV 4327 (SJF)(SIL)

                              Plaintiff,


        -    Against –

THE CITY OF NEW YORK, THE NEW YORK
CITY POLICE DEPARTMENT, FRANCESCO
COLAVITO, TAPPED 1010 INC., and MXL LLC,

                              Defendants.
-----------------------------------------------------------------X




PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS CITY OF NEW YORK AND NEW YORK CITY
POLICE DEPARTMENT'S MOTION TO DISMISS




Of Counsel: Marc E. Freund

## TABLE OF CONTENTS

Page

Preliminary Statement...................................................................................1

Statement of Facts........................................................................................3

Legal Standard..............................................................................................6

Argument......................................................................................................7

POINT I:     THE MOTION TO DISMISS MUST BE DENIED
BECAUSE THE COMPLAINT SUFFICIENTLY
STATES MULTIPLE CAUSES OF ACTION.......................7

A. Colavito Falsely Arrested Mosca.........................................8

B. Colavito and Walsh Conspired to Assault Mosca.......................10

C. Colavito and Walsh Used Excessive Force.............................12

D. Colavito Acted Under Color of State Law.............................14

POINT II:    IN THE ALTERNATIVE, PLAINTIFF SEEKS
LEAVE TO AMEND THE COMPLAINT
PURSUANT TO FRCP 15(a)(2) TO
FURTHER SPECIFY THE EXISTENCE OF A
CUSTOM, POLICY OR PATTERN BY NYC
WHICH PROXIMATELY CAUSED OR
CONTRIBUTED TO HIS INJURIES................................21

Conclusion...................................................................................................22

i

## TABLE OF AUTHORITIES

**Cases**               **Page**

Allen v. Muskogee, Okl., 119 F.3d 837 (10th Cir. 1997),
cert den 522 U.S. 1148, 118 S.Ct. 1165 (1998)……………………………………………13

American Mutual Ins. Co. v. Sullivan, 526 U.S. 40, 51, 119 S.Ct. 977 (1999)…………….18

Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009)……………………………………………..6, 12

Bonsignore v. City of New York, 683 F.2d 635 92nd Cir. 1982)…………………………18, 19

Breitbard v. Mitchell, 390 F.Supp.2d 312 (E.D.N.Y. 2012)………………………………..8

Broughton v. State, 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 93 (1975)…………………………9

Brown v. City of New York, 2016 WO 1611502 (S.D.N.Y. 2016),
aff'd 862 F.3d 182 (2nd Cir. 2017)…………………………………………………………16

Brunner v. McKillip, 488 F.Supp.2d 775 (W.D. Wis. 2007)……………………………………9

Claudio v. Sawyer, 675 F.Supp.2d 403 (S.D.N.Y. 2009),
aff'd 409 Fed. App'x 464 (2nd Cir. 2011)…………………………………………………19

Collado v. City of New York, 2017 WL 4533772 (S.D.N.Y. 2017)…………………………16

Conley v. Gibson, 355 U.S. 41, 47-48, 78 S.Ct. 99 (1957)…………………………………...7

Connick v. Thompson, 563 U.S. 51, 61, 131 S.Ct. 1350, 1360 (2011)

Cook v. Sheldon, 41 F.3d 73 (2nd Cir. 1994)…………………………………………………8

Cox v. County of Suffolk, 78 F.Supp. 103 (E.D.N.Y. 1991).  …………………………………12

Davis v. Mason County, 927 F.2d 1473 (9th Cir. 1991),
cert den 502 U.S. 899, 112 S.Ct. 275 (1991)………………………………………………...15

Dwares v. City of New York, 985 F.2d 94, 98 (2nd Cir. 1993)……………………………..10-11

Eye Encounter, Inc. v. Countour Art, Ltd., 81 F.R.D. 683 (E.D.N.Y. 1979)…………………..6

Federal Ins. Co. v. May Dept. Stores Co., 808 F.Supp. 347 (S.D.N.Y. 1992)………………...7

Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227 (1962)……………………………………21

ii

**Cases (cont.)**                                                                 **Page**

Glover v. City of New York, 401 F.Supp. 632 (E.D.N.Y. 1975)......................................8

Gonzalez v. Waterbury Police Dept., 199 F.Supp.3d 616 (D. Conn. 2016).......................13

Guzinski v. Hasselbach, 920 F.Supp. 762, at *fn* 1 (E.D. Mich. 1996).............................10

Frasier v. General Electric Co., 930 F.2d 1004, 1007 (2nd Cir.1991).............................6

Hampton v. U.S., 425 U.S. 484, 490 96 S.Ct. 1646, 1650 (1976)..................................8

Hathaway v. Coughlin, 37 F.3d 63 (2nd Cir. 1994)...................................................15

Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229 (1984).............................6

Holmes v. New York City Housing Authority, 398 F.2d 262 (2nd Cir. 1968)....................6

J.K. v. Arizona Bd. Of Regents, 2008 WL 4446712, at 16 (D. Ariz. 2008).......................12

Jenkins v. City of New York.............................................................................1

Jeffreys v. Rossi, 275 F.Supp.2d 463 (S.D.N.Y. 2003), *aff'd* 426 F.3d 549 (2nd Cir. 2005)....12

Jocks v. Tavernier, 316 F.3d 128 (2nd Cir. 2003)...................................................9

Johns v. Town of East Hampton, 942 F.Supp. 99 (E.D.N.Y. 1996)............................17, 21

Jonelis v. Russo, 863 F.Supp. 84 (D. Conn. 1994)...................................................13

Karlen v. New York University, 464 F.Supp. 704 (S.D.N.Y. 1979)................................6

Kingsmill v. Szewczak, 117 F.Supp.3d 657 (E.D. Pa. 2015)........................................14

Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,
507 U.S. 163, 168–169, 113 S.Ct. 1160 (1993)...................................................7, 10

Longo v. Suffolk County Police Dept. County of Suffolk,
429 F.Supp.2d 553 (E.D.N.Y. 2006)...................................................................6

Lynch v. Jane Doe Correctional officer Blue, 2016 WL 831969
(S.D.N.Y. Feb. 29, 2016)...........................................................................12, 15

Mack v. Town of Wallkill, 253 F.Supp.2d 552 (S.D.N.Y. 2003)....................................17

Martin v. City of New York, 793 F.Supp.2d 583, 586-587 (E.D.N.Y. 2011).....................20

iii

**Cases (cont.)**                                                                      **Page**

Monell v. Department of Social Services of City of New York,
436 U.S. 658, 98 S.Ct. 2018 (1978)............................................................5, 7-8, 14

Naples v. Stefanelli, 972 F.Supp.2d 373 (E.D.N.Y. 2013)..........................................11

Norton v. McKeon, 444 F.Supp. 384 (E.D. Pa. 1977),
aff'd 601 F.2d 575 (3rd Cir. 1979)....................................................................16-17

Oliver v. Cutter, 968 F.Supp. 83 (E.D.N.Y. 1997).....................................................13

O'Neill v. Krzeminski, 839 F.2d 9, 11 (2nd Cir. 1988)................................................13

Parrish v. Johnson, 800 F.2d 600 (6th Cir. 1986).......................................................10

Persaud v. Exxon Corp., 867 F.Supp. 128, 135 (E.D.N.Y. 1994).................................21

Pitchell v. Callan, 13 F.3d 545 (2nd Cir. 1994).........................................................18

Podell v. Citicorp Diners Club, Inc., 859 F.Supp. 702 (S.D.N.Y. 1994).....................6, 12

Raysor v. Port Authority of New York and New Jersey,
768 F.2d 34, 40 (2nd Cir. 1985), cert den 475 U.S. 1027, 106 S.Ct. 1227 (1986).................8

Reid v. City of New York, 736 F.Supp. 21 (E.D.N.Y. 1990)......................................8, 15

Ricciuti v. N.Y.C. Transit Authority, 124 F.3d 123 (2nd Cir. 1997).............................17

Schanbarger v. Kellogg, 423 U.S. 929, 96 S.Ct. 277 (1975)........................................9

Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512, 122 S.Ct. 992, 998 (2002).................7

Tancredi v. Metropolitan Life Ins. Co., 316 F.3d 308 (2nd Cir. 2003)...........................18

Wahhab v. City of New York, 386 F.Supp.2d 277, 288 (S.D.N.Y. 2005).......................19

Walsh v. McGee, 918 F.Supp. 107 (S.D.N.Y. 1996)...................................................7

Wright v. Caspari, 779 F.Supp. 1025 (E.D. Mo. 1992)................................................6

Zahrey v. City of New York, 98 civ. 4546 (DCP),
2009 U.S. Dist. LEXIS 31893, at 16-17 (S.D.N.Y. 2009)..........................................20

**Statutes**                                                                                                          **Page**

FRCP 12(b)(6)……………………………………………………….1, 2, 4, 6, 7, 12, 13, 15, 17, 20, 22

FRCP 15(a)(2)…………………………………………………………....…..1, 3, 7, 20, 22

28 U.S.C. § 1343…………………………………………………………………………….5

42 U.S.C. § 1981…………………………………………………………………………….5

42 U.S.C. § 1983………………………………2, 3, 5, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 21

42 U.S.C. § 1985…………………………………………………………………………….5

42 U.S.C. § 1988……………………………………….…………………………………….5

New York State Alcoholic Beverage Control Law § 65…………..………………………….6

**Secondary Authority**

Wright & Miller, Federal Practice and Procedure:  Civil, § 1216…………………………….6

Wright & Miller, Federal Practice and Procedure:  Civil, § 1357…………………………….7

## PRELIMINARY STATEMENT

This Memorandum of Law is respectfully submitted on behalf of Plaintiff VINCENT MOSCA in opposition to the motion by Defendants CITY OF NEW YORK and NEW YORK CITY POLICE DEPARTMENT,[1] seeking an Order pursuant to FRCP 12(b)(6), dismissing the within action and, alternatively, in support of plaintiffs motion seeking leave to amend the Complaint pursuant to FRCP 15(a)(2).

This is an action seeking compensatory and punitive damages arising out of the false arrest, false imprisonment, assault, battery, common law negligence and permanent injuries inflicted on plaintiff VINCENT MOSCA ("Mosca") by Defendant FRANCESCO COLAVITO ("Colavito") and convicted non-party IAN M. WALSH ("Walsh") on or about April 29, 2016 at premises known as the "Tap Room," owned by Defendant MXL LLC ("MXL") and operated by Defendant TAPPED 1010 INC. ("Tapped") (*see* Plaintiff's Complaint, ECF 1).

At the time of their assault on Mosca, Colavito was employed by the New York City Police Department ("NYPD") as a police officer.  Plaintiff alleges *inter alia* that Defendants CITY OF NEW YORK ("NYC"), through NYPD, recklessly and negligently hired, trained, retained, supervised and failed to discipline Colavito, who acted under the color of state law when, during the course of the attack on Mosca by Colavito together with co-assailant Walsh, both Colavito and Walsh became intoxicated, and both conspired to follow Mosca out of the bar as Mosca was attempting to leave the premises.  In the bar's parking lot, Colavito identified himself as a New York City police officer, flashed his badge, cornered Mosca to prevent Mosca from escaping the attack, watched within arm's length distance as Walsh began the assault on Mosca, and then joined in the assault (Complaint, at ¶¶ 34-37).  Colavito and Mosca then returned to the Tap Room, where

---

[1] Plaintiff hereby withdraws its claims against NYPD as a non-suable entity.  Jenkins v. City of New York, 478 F.3d 76 (2nd Cir. 2007), though preserves its claims against defendant NYC.

they continued drinking, braggingly recreated the assault, and invited other bar patrons out to the parking lot to see Mosca in his unconscious state.

Here, Mosca contends that the facts and circumstances asserted in the Complaint as set forth above, when accepted as true and with all reasonable inferences resolved in plaintiff's favor, are sufficient to withstand scrutiny under FRPCP 12(b)(6) and, as a result, the municipal defendants' motion must be denied. By cornering Mosca, identifying himself as a NYPD police officer, flashing his badge and prohibiting Mosca from leaving the scene, Colavito falsely arrested Mosca under New York law by confining Mosca without his consent and without other privilege.

The Complaint also sufficiently asserts that Colavito and Walsh conspired to assault Mosca without cause or provocation, used excessive force in doing so by directly participating in the assault and/or failing to intercede on behalf of Mosca as NYC, through NYPD, was required to train Colavito to do and despite Colavito having had a reasonable opportunity to do.

The Complaint also asserts that Colavito's actions in conspiring with and joining in the assault on Mosca were actions undertaken under color of state law sufficient to state a cause of action pursuant to 42 U.S.C. § 1983 for violation of Mosca's constitutional and common law rights as guaranteed by the laws and Constitution of the United States and of the State of New York. Specifically, the Complaint alleged sufficient facts from which a jury could infer that NYC's failure to adequately train, supervise, retrain or discipline its officers as to the constitutional limits of use of force constitutes deliberate indifference to the safety of private citizens such as Mosca for purposes of imposing municipal liability under § 1983 where, as here, NYPD ignored its own training, supervisory and disciplinary policies (a) prohibiting its police officers from associating with any persons such as Walsh, who were likely to engage in criminal activities, and (b) requiring its police officers to notify their superiors of any off-duty incidents involving officers.

2

Alternatively, Mosca seeks leave to amend the Complaint pursuant to FRCP 15(a)(2) to further substantiate and/or amplify his § 1983 allegations in order to further specify the existence of a custom, policy or pattern by NYC which proximately caused or contributed to Mosca's injuries.

## STATEMENT OF FACTS

Prior to April 29, 2016, NYC, through NYPD, hired, trained and employed Colavito as a New York City police officer (Complaint, at ¶ "22").

On April 29, 2016, Colavito, who was on probation with the NYPD at the time, visited Defendants Tapped and MXL's bar/restaurant, The Tap Room, together with his close associate, Walsh (Id., at ¶¶ 26, 27). Separately, Mosca visited the Tap Room as well and, after a few minutes, encountered Colavito and Walsh, who were both visibly intoxicated (id.).

Colavito and Walsh almost immediately and, acting in concert, began to menace, threaten, bully, harass and act belligerently toward Mosca without just cause or provocation (¶ 28). Mosca attempted to de-escalate the situation by announcing he was leaving the bar, and began to exit (¶ 29), but Colavito and Walsh followed Mosca into the premises' parking lot and continued to menace, threaten, bully and harass Mosca (¶ 32). As Mosca was attempting to remove himself from the situation and exit the parking lot, Colavito confronted Mosca, flashed his NYPD badge at Mosca, and pronounced, "I'm with the NYPD, you're not going anywhere." ( ¶¶ 34-36).

While Colavito detained and confronted Mosca, Walsh viciously punched Mosca on the head from behind, and then Colavito and Walsh both began repeatedly punching, kicking, attacking, assaulting and brutalizing Mosca while Mosca lied helplessly and unconscious on the parking lot ground (¶ 37).

Colavito and Walsh thereafter returned to the Tap Room while Mosca lied helpless and unconscious on the parking lot ground, and openly celebrated the unprovoked attack upon Mosca inside the bar with other patrons while the Tap Room continued to serve alcoholic beverages to both Colavito and Walsh (¶¶ 39-43). Colavito and Walsh also brought out patrons into the parking lot to continue mocking the condition of Mosca, who remained unconscious on the ground. (Id.) At no point did Colavito, the Tap Room or anyone else render any safety or security to Mosca or stop serving alcohol to Colavito or Walsh (45-46). Ten minutes later, good Samaritan Jeffrey Buchheit came to Mosca's assistance (¶ 47).

Mosca suffered a traumatic brain injury and multiple facial fractures, requiring reconstructive facial surgery, and sustained physical and psychological injuries for which he remains under active treatment (¶ 49).

Mosca attempted to press charges against Colavito and Walsh with the Nassau County Police Department (¶ 51). Walsh had been previously arrested for a similar assault, and thus Colavito was prohibited from associating with Walsh pursuant to NYPD's policies as set forth in its Patrol Guide (Exhibit "A" annexed hereto). Walsh eventually pled guilty to a misdemeanor with no jail time (¶ 52-53).

Colavito never reported this off-duty incident to the NYPD, also in violation of NYPD guidelines (Exhibit "A").[2] However, virtually the entire incident was captured on the Tap Room's

---

[2] It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6). See Marshall County Health Care Auth. v. Shalala, 988 F.2d 1221, 1222 (D.C.Cir.1993); see also Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir.1991) (district court could consider documents of which the plaintiff had notice and which were integral to their claim in ruling on motion to dismiss even though those documents were not incorporated into the complaint by reference); Garmhausen v. Holder, 757 F.Supp.2d 123 (E.D.N.Y. 2010) ("On a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the court may consider those documents submitted by the parties that are matters of public record or are deemed included in the complaint.")

surveillance video at the premises (¶ 50), and NYPD received a copy of it within a few weeks after the attack (¶ 54) (*see* Exhibit "B" annexed hereto).[3]

Notwithstanding receipt of the surveillance video, NYPD continued to engage in an improper, systemic failure to hire, retain, retrain, suspend and/or terminate its employees, by allowing Colavito to remain employed by NYPD for more than one full year after the assault, despite his already existing probationary status (¶ 56), further subjecting the public to danger, and in particular causing further mental anguish and suffering to Mosca (¶ 58).  Colavito was eventually terminated as the Complaint in this matter was being prepared and as the New York news media was set to publish the story and surveillance video (¶ 57).

The Complaint alleges that the delay in disciplining Colavito was emblematic of the systemic failure by NYPD to screen, retain, train, retrain and supervise Colavito and other similarly situated officers who are clearly unfit for duty and who present a danger to the general public (¶ 59).  As a result, the Complaint alleges that NYC directly caused the constitutional violations suffered by Mosca, and is liable for the proximately-resulting damages due to NYC's policies and practices in failing to institute safe and appropriate measures for the selection, training, hiring, retraining, supervising and disciplining of NYPD police officers (¶ 60).

The Complaint alleges six causes of action, alleging (a) violation of 42 U.S.C. §§ 1981, 1983, 1985 and 28 U.S.C. § 1343 (¶¶ 61-74), (b) common law negligence (¶¶ 75-94), (c) 42 U.S.C. §§ 1983 and 1988 via Monell v. Department of Social Services of City of New York, 436 U.S. 658, 98 S.Ct. 2018 (1978) (¶¶ 95-112), (d) deprivation of statutory and common law rights as guaranteed by the laws and Constitution of the United States and of the State of New York (¶¶

---

[3] Id., *supra* at Footnote 1.

113-118), also including (e) Section 65 of the New York Alcoholic Beverage Control Law (¶¶ 119-144), and (f) intentional and negligent infliction of emotional distress (¶¶ 145-165).

## LEGAL STANDARD

When considering a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true the well-pleaded factual allegations set forth in the complaint and draw all reasonable inferences in favor of the plaintiff. Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009); Frasier v. General Electric Co., 930 F.2d 1004, 1007 (2nd Cir.1991); Longo v. Suffolk County Police Dept. County of Suffolk, 429 F.Supp.2d 553 (E.D.N.Y. 2006).

A motion to dismiss for failure to state a claim challenges the formal legal sufficiency of a claim, and not its underlying facts or merits. Podell v. Citicorp Diners Club, Inc., 859 F.Supp. 702 (S.D.N.Y. 1994); Longo, supra. Thus, the determinative question is not whether there is a likelihood of success, but rather whether there is a mere possibility of success on the merits. Karlen v. New York University, 464 F.Supp. 704 (S.D.N.Y. 1979).

The court should not grant a motion to dismiss merely because the complaint does not state with precision every element of the offense necessary for discovery. Wright v. Caspari, 779 F.Supp. 1025 (E.D. Mo. 1992), citing 5 Wright & Miller, Federal Practice and Procedure: Civil, Sec. 1216 at 120 (1969). Nor is the mere fact that some of the allegations are lacking in detail a proper ground for dismissal on this ground. Holmes v. New York City Housing Authority, 398 F.2d 262 (2nd Cir. 1968). And, to survive dismissal, it is not necessary to plead evidence or facts upon which claims are based. Eye Encounter, Inc. v. Countour Art, Ltd., 81 F.R.D. 683 (E.D.N.Y. 1979). Thus, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229 (1984).

For this reason, a motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted. Walsh v. McGee, 918 F.Supp. 107 (S.D.N.Y. 1996), *citing* 5A Wright & Miller, § 1357, at 321. Rather, the standard of review on a FRCP 12(b)(6) motion to dismiss is heavily weighted in favor of plaintiff, and the court is required to read the complaint generously, drawing all reasonable inferences from plaintiff's allegations. Federal Ins. Co. v. May Dept. Stores Co., 808 F.Supp. 347 (S.D.N.Y. 1992). This is consistent with the simplified notice pleading standard, which relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512, 122 S.Ct. 992, 998 (2002), *citing* Conley v. Gibson, 355 U.S. 41, 47-48, 78 S.Ct. 99 (1957); Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168–169, 113 S.Ct. 1160 (1993).

Here, Mosca contends that the facts and circumstances as asserted in the Complaint and set forth above, when accepted as true and with all reasonable inferences resolved in plaintiff's favor, are sufficient to withstand scrutiny under FRPCP 12(b)(6) and, as a result, the municipal defendants' motion must be denied. In the alternative, Mosca seeks leave to amend the Complaint pursuant to FRCP 15(a)(2) to further substantiate and/or amplify his § 1983 allegations in this respect.

## ARGUMENT

## POINT I

### THE MOTION TO DISMISS MUST BE DENIED BECAUSE THE COMPLAINT SUFFICIENTLY STATES MULTIPLE CAUSES OF ACTION

In Monell v. Department of Social Services of City of New York, *supra*, the United States Supreme Court held that the Civil Rights Act of 1871, as codified in 42 U.S.C. § 1983, applied to municipalities and other local government units. Id., 436 U.S. at 690, 98 S.Ct. at 2036.

7

With respect to police misconduct, the Supreme Court has noted that, "[i]f the police engage in illegal activity in concert with a defendant beyond the scope of their duties the remedy lies….in prosecuting the police under the applicable provisions of state or federal law. Hampton v. U.S., 425 U.S. 484, 490 96 S.Ct. 1646, 1650 (1976).

Generally, misconduct by a police officer which infringes on constitutionally protected rights, gives rise to civil rights actions for deprivation of rights under color of state law. Glover v. City of New York, 401 F.Supp. 632 (E.D.N.Y. 1975).

Here, Colavito's misconduct in (a) falsely arresting Mosca, (b) conspiring with Walsh to assault Mosca, and (c) using excessive force and/or failing to intercede on behalf of Mosca even though he had a reasonable opportunity to do so, constituted actions performed under color of state law in violation of Mosca's constitutional rights, thus supporting Mosca's claims pursuant to § 1983 as set forth in the Complaint.

## A.  Colavito Falsely Arrested Mosca

The tort of false arrest supports Mosca's claim against NYC under 42 U.S.C. § 1983 because it violates the Fourth Amendment to the United States Constitution. Cook v. Sheldon, 41 F.3d 73 (2nd Cir. 1994); *see also* Breitbard v. Mitchell, 390 F.Supp.2d 312 (E.D.N.Y. 2012).

To prove a constitutional violation under § 1983 for false arrest, Mosca must establish the elements of the state law tort of false arrest as well as Colavito's actions under color of state law. Reid v. City of New York, 736 F.Supp. 21 (E.D.N.Y. 1990), *citing* Raysor v. Port Authority of New York and New Jersey, 768 F.2d 34, 40 (2nd Cir. 1985), *cert den* 475 U.S. 1027, 106 S.Ct. 1227 (1986).

The elements of a false arrest claim in New York are (a) a defendant's intent to confine the plaintiff, (b) plaintiff's consciousness of the confinement and lack of consent to it, and (3) the lack

of privilege to confine. <u>Broughton v. State</u>, 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 93 (1975), *cert den sub nom* <u>Schanbarger v. Kellogg</u>, 423 U.S. 929, 96 S.Ct. 277 (1975).

Here, Mosca has satisfied all three elements. As explicitly set forth in the Complaint, as Mosca announced he was leaving the bar, and began to exit, Colavito (an off-duty police officer) and Walsh followed Mosca out of the Tap Room and into its parking lot, where Colavito and Walsh continued to menace, threaten, bully and harass Mosca (Complaint, at ¶ 32). As Mosca attempted to remove himself from the situation and exit the parking lot, Colavito confronted Mosca, flashed his NYPD badge at Mosca, and pronounced, "I'm with the NYPD, you're not going anywhere." (Id., at ¶¶ 34-36). These facts establish Mosca's lack of consent (he tried to exit the parking lot and the situation) and intent by Colavito to confine Mosca without reason or other privilege. The Complaint then alleges that Mosca was then immediately assaulted by both individuals.

The Second Circuit so holds. *See e.g.* <u>Jocks v. Tavernier</u>, 316 F.3d 128 (2nd Cir. 2003) (Off-duty police officer's conduct of displaying his shield, identifying himself as police officer to arrestee, physically restraining arrestee, transporting him at gunpoint and detaining him until police officers arrived constitutes an arrest for purposes of § 1983 false arrest claim).

<u>Brunner v. McKillip</u>, 488 F.Supp.2d 775 (W.D. Wis. 2007) is factually on point. There, a police chief was deemed to have effectuated an arrest, for purposes of a § 1983 false arrest claim, when a drink was thrown and hit a deputy sheriff who was with him. The chief thereafter told the bar owner, whom he believed to be the drink thrower, to accompany him outside, where the chief and the deputy continued to restrain her.

Here, the fact that Colavito's statement to Mosca, in and of itself, did not constitute a physical attack is irrelevant, since a verbal threat is also actionable under § 1983 where it results

9

in physical harm, or is part of a pattern of unnecessary and wanton abuse. Guzinski v. Hasselbach, 920 F.Supp. 762, at *fn* 1 (E.D. Mich. 1996), *citing* Parrish v. Johnson, 800 F.2d 600 (6th Cir. 1986).

### B. Colavito and Walsh Conspired to Assault Mosca

Where, as here, a police officer conspires with a private individual to commit an unconstitutional act, such facts subject the officer to liability under § 1983. Dwares v. City of New York, 985 F.2d 94, 98 (2nd Cir. 1993), *overruled on other grounds* Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, *supra* 507 U.S. 163, 113 S.Ct. 1160 (1993).

In Dwares, plaintiff sued the City of New York, certain NYPD officers and another individual for violation of civil rights in connection with the beating of the plaintiff during a demonstration that involved flag burning. Plaintiff was physically attacked by several private individuals, including defendant Kreitzman, in the presence of the defendant police officers, who made no attempt to intervene or to protect plaintiff from harm. Plaintiff's complaint alleged that,

> prior to the specific incident that gave rise to this litigation, the individual police officer defendants herein and the "skinheads", including defendant Kreitzman, had conspired and/or agreed amongst themselves to permit the "skinheads" to harass and assault those who wished to express their First Amendment rights by burning an American flag, as well as those wo supported the right of individuals to express themselves in that way…

In Dwares, the Second Circuit vacated a District Court decision, holding that plaintiff's allegation that the police officers conspired with "skinheads" to permit the later to beat up flag burners was sufficient to allege a cause of action against the officers. In so holding, the Dwares Court noted, with respect to pleading such a cause of action, that "while mere conclusory allegations are insufficient, complaints containing some "details of time and place and the alleged effect of [a] conspiracy" suffice to state a claim of conspiracy under § 1983."

10

The Complaint in the present case contains such "details of time and place and the alleged effect of a conspiracy." Specifically, the Complaint alleges that on April 29, 2016, Colavito and Walsh conspired and/or agreed among themselves to menace, threaten, bully, harass and assault Mosca without just cause or provocation, both in the Tap Room and thereafter outside in the parking lot, during which time Mosca flashed his NYPD badge at Mosca, and pronounced, "I'm with the NYPD, you're not going anywhere." (Complaint, at ¶¶ 28, 29, 32, 34-35). The Complaint thereafter alleges that while Colavito detained and confronted Mosca, Walsh viciously punched Mosca on the head from behind, and then Colavito and Walsh both began repeatedly punching, kicking, attacking, assaulting and brutalizing Mosca while Mosca lied helplessly and unconscious on the parking lot ground." (Id., at ¶ 37). In so doing, the Complaint alleges, that Colavito and Walsh "did, without provocation, conspire, collude, plan and thereafter attack and viciously [sic] assault Mosca until and beyond when he was rendered unconscious and incapacitated." (¶¶ 140, 157).

These "details of time and place and the alleged effect of [a] conspiracy" suffice to state a claim of conspiracy under § 1983. Dwares, supra; see also Naples v. Stefanelli, 972 F.Supp.2d 373 (E.D.N.Y. 2013) (Allegations that biofuel rendering company's competitor paid county police officer to pull company owner over and arrest him were sufficient to state a claim under § 1983).

C.  **Colavito and Walsh Used Excessive Force**

Separately, the use of excessive force during an arrest, investigatory stop, or other seizure of a free citizen violates that person's Fourth Amendment rights and is actionable under § 1983. Cox v. County of Suffolk, 78 F.Supp. 103 (E.D.N.Y. 1991).

A police officer is personally involved in the use of excessive force for purposes of § 1983 if he either (a) directly participates in an assault, or (2) was present during the assault, yet failed to intercede on behalf of the victim even though he had a reasonable opportunity to do so. Jeffreys v. Rossi, 275 F.Supp.2d 463 (S.D.N.Y. 2003), aff'd 426 F.3d 549 (2nd Cir. 2005).

Here, the question whether Colavito "directly participated in the assault" is inherently one for a jury, who is best suited to consider the totality of the evidence, including the surveillance video, the testimony of the respective eyewitnesses inside and outside of the Tap Room, both before, during and after the assault on Mosca. See e.g. Hathaway v. Coughlin, 37 F.3d 63 (2nd Cir. 1994); Lynch v. Jane Doe Correctional Officer Blue, 2016 WL 831969, at *6 (S.D.N.Y. Feb. 29, 2016); J.K. v. Arizona Bd. Of Regents, 2008 WL 4446712, at 16 (D. Ariz. 2008).

However, there is no question that Colavito was present during the assault and failed to intercede on Mosca's behalf even though he had ample opportunity to do so.  Certainly, there is no question that, drawing all reasonable inferences in Mosca's favor on a motion to dismiss pursuant to CRCP 12(b)(6), Ashcroft v. Iqbal, supra 556 U.S. 662, 677, the Complaint at the very least presents "a possibility of success on the merits." Podell v. Citicorp Diners Club, Inc., supra 859 F.Supp. 702.

Additionally, the question whether force used is "reasonable" under the Fourth Amendment for purposes of a § 1983 determination requires an objective inquiry as to whether Colavito's actions were objectively reasonable given the totality of the circumstances, regardless of Colavito's underlying intent or motive. Oliver v. Cutter, 968 F.Supp. 83 (E.D.N.Y. 1997). This

inquiry not only includes Colavito's actions at the moment the threat was presented, but may also include his actions in moments leading up to Walsh's threat of force if those actions are deemed "immediately connected" to such a threat of force. Allen v. Muskogee, Okl., 119 F.3d 837 (10th Cir. 1997), cert den 522 U.S. 1148, 118 S.Ct. 1165 (1998).

Here, the facts as pled in the Complaint, which this Court must accept as true for purposes of a FRCP 12(b)(6) motion, Iqbal, supra, amply supported by the surveillance video, fully support a § 1983 claim. Colavito and Walsh were together from well prior to the assault, accompanied each other in following Mosca out into the parking lot, at which time Colavito threatened Mosca that he wasn't "going anywhere," and in fact stood within arms' length while Walsh pummeled Mosca into an unconscious state, the two thereafter attacked Mosca jointly, and thereafter both walked back into the Tap Room, where the two proceeded to brag about their exploit for quite some time thereafter.

Even if Colavito himself had not participated in the use of excessive force (though the Complaint alleges that he did), an officer who fails to intercede on behalf of a citizen whose constitutional rights are being violated in his presence can be liable under § 1983 for the preventable harm caused by the actions of others. Jonelis v. Russo, 863 F.Supp. 84 (D. Conn. 1994), citing O'Neill v. Krzeminski, 839 F.2d 9, 11 (2nd Cir. 1988). As clearly evidenced by the surveillance video, Colavito here was at the very least standing within an arm's length of both Walsh and Mosca, and thus in "close vicinity" when Walsh assaulted Mosca. Gonzalez v. Waterbury Police Dept., 199 F.Supp.3d 616 (D. Conn. 2016).

Here, Kingsmill v. Szewczak, 117 F.Supp.3d 657 (E.D. Pa. 2015) is factually on point. In Kingsmill, the plaintiff pedestrian alleged that an officer commanded him, while he was defending himself from attack by another individual, to leave the altercation and approach the officer's patrol

13

car that was less than 20 feet away. The officer thereafter watched while the assailant approached the plaintiff from behind and struck the plaintiff with a steel pipe. After the assault, the officer told the plaintiff that he would not call an ambulance or take a report. The Kingsmill Court held that the plaintiff's allegations were sufficient to plead a § 1983 claim on Fourteenth Amendment substantive due process grounds against the officer on the state-created danger theory.

Similarly here, the Complaint sufficiently alleges that Colavito commanded Mosca that he (Colavito) was "with the NYPD, you're not going anywhere," immediately after which Colavito watched Walsh viciously punch and kick Mosca and then also participated in the assault." (Complaint, at ¶ 37). Again, these allegations suffice to state a cause of action for relief under § 1983.

### D.  Colavito Acted Under Color of State Law

In Monell v. Department of Social Services of City of New York, *supra* 436 U.S. 658, 98 S.Ct. 2018 (1978), the Supreme Court held that local governments were held to be subject to suits for "constitutional deprivations visited pursuant to governmental custom even though such a custom has not received formal approval through the body's official decision-making channels." Id., 436 U.S. at 690, 98 S.Ct. at 2036.

Such "constitutional deprivations" subjecting local governments to suit may be inferred from a police department's failure to train, supervise, or discipline its officers where the need for such training, supervision, or discipline is obvious and inadequate enough to result in violation of constitutional rights such that policymakers can reasonably be said to have deliberate indifference to need. Reid v. City of New York, 736 F.Supp. 21 (E.D.N.Y. 1990).

The question whether an institution acted with deliberate indifference under a particular set of circumstances is a question normally left to the jury, and is thus not the proper province of

a FRCP 12(b)(6) motion to dismiss.  *See e.g.* <u>Hathaway v. Coughlin</u>, *supra* 37 F.3d 63 (2nd Cir. 1994); <u>Lynch v. Jane Doe Correctional Officer Blue</u>, 2016 WL 831969, at *6 (S.D.N.Y. Feb. 29, 2016), <u>J.K. v. Arizona Bd. Of Regents</u>, *supra* 2008 WL 4446712, at 16 (D. Ariz. 2008).

Here, the Complaint alleged sufficient facts from which a jury could infer that NYC's failure to adequately train its officers as to the constitutional limits of use of force constitutes deliberate indifference to the safety of private citizens such as Mosca for purposes of imposing municipal liability under § 1983 where, as here, NYPD's Patrol Guide, although apparently adequate on paper, was not followed in practice. *See e.g.* <u>Davis v. Mason County</u>, 927 F.2d 1473 (9th Cir. 1991), *cert den* 502 U.S. 899, 112 S.Ct. 275 (1991).  These "deprivations" can be inferred here from NYPD's failure to train, supervise and discipline its officers in the following two directives, as set forth in the NYPD Patrol Guide effective at the time of the incident at issue, collectively annexed hereto as Exhibit "A", of which Mosca requests that this Court take judicial notice:

(a) a prohibition against knowingly associating with any person or organization...reasonably believed to be engaged in, likely to engage in, or to have engaged in criminal activities (Exhibit "A" annexed hereto), and

(b) a directive relevant to off duty incidents involving a police officer requiring that officer to *inter alia* notify the desk officer, precinct of occurrence or Operations Unit (Exhibit "A").

Here, as set forth in the Complaint, Colavito breached both directives:  He (a) associated with a person (Walsh) who engaged in criminal activities and who had been previously arrested for a similar assault and battery (Complaint, at ¶ 53), and (b) failed to notify the desk officer or the precinct of occurrence or relevant Operations Unit of the incident in question.

These portions of NYPD's Patrol Guide, "although apparently adequate on paper," (Davis, supra) were not followed in practice, and as such create precisely the type of municipal policy or custom which supports Mosca's § 1983 claims. In this regard, the NYPD Patrol Guide has been held to be "relevant in determining how a reasonable police officer might comport himself under the circumstances." Collado v. City of New York, 2017 WL 4533772 (S.D.N.Y. 2017), citing Brown v. City of New York, 2016 WO 1611502 (S.D.N.Y. 2016), aff'd 862 F.3d 182 (2nd Cir. 2017).

Moreover, the Complaint alleges that NYC, despite knowledge of this incident via its receipt of the surveillance video in question, "continued to engage in an improper systemic failure to hire, retain, retrain, suspend and terminate its employees, by allowing Colavito to remain employed with the NYPD for more than one full year after the assault, despite the fact that he was on probation to begin with." (Complaint, at ¶ 56) Clearly this full year period is sufficient to constitute "constructive notice that a particular omission…causes city employees to violate citizens' constitutional rights," especially when "the policymakers choose to retain that program." Connick v. Thompson, 563 U.S. 51, 61, 131 S.Ct. 1350, 1360 (2011).

Here, in so acting, NYC, through the NYPD, created "within the police department an atmosphere of lawlessness in which police officers employed excessive and illegal force and violence" sufficient to state a cause of action against NYC, which conduct constitutes a sufficient causal link between the alleged conduct and Mosca's injury. See e.g. Norton v. McKeon, 444 F.Supp. 384 (E.D. Pa. 1977), aff'd 601 F.2d 575 (3rd Cir. 1979); see also Johns v. Town of East Hampton, 942 F.Supp. 99 (E.D.N.Y. 1996) (Mother of minor questioned in his home by police officer who entered without mother's permission or knowledge stated claim under § 1983 against

police chief, who allegedly evinced deliberate indifference in failing to investigate fully and thoroughly allegations of police misconduct).

Ricciuti v. N.Y.C. Transit Authority, 124 F.3d 123 (2nd Cir. 1997) is instructive. In holding that police officers had an affirmative duty to intercede on behalf of a citizen whose constitutional rights were being violated, the Second Circuit noted that those police officers were subject to § 1983 claims for false arrest based on their failure to intervene under the collective knowledge doctrine, where the relevant knowledge of the acts was either actually communicated, and it was not believed, or such knowledge was actually not communicated.

Here, similarly, NYC, through NYPD, failed to intervene under the collective knowledge doctrine because Colavito never communicated the incident as required under the above-referenced NYPD Patrol Guide sections.

Mack v. Town of Wallkill, 253 F.Supp.2d 552 (S.D.N.Y. 2003) is also instructive. In finding issues of fact regarding a police officer's alleged failure to intercede, the Court noted that "[a]n officer who fails to intercede is liable under § 1983 for the preventable harm caused by the actions of other officers where that officer observes or has reason to know that (a) excessive force is being used, (b) a citizen has been unjustifiably arrested, or (c) any constitutional violation has been committed by a law enforcement official." (Id., at 559) (internal citations omitted.) Here, NYPD's failure to intercede for over one year, despite having knowledge of the incident in question via its having received the surveillance video, constitutes precisely the type of factual underpinning of a proper § 1983 cause of action, sufficient to withstand FRCP 12(b)(6) scrutiny.

The movants argue at some length, correctly, that § 1983 liability cannot be based on the doctrine of *respondeat superior.* However, in light of the above, Mosca cannot be said to base his Complaint under this vicarious liability doctrine.

17

Nor is the Complaint based on facts and circumstances evidencing merely Colavito's private conduct. In this regard, Tancredi v. Metropolitan Life Ins. Co., 316 F.3d 308 (2nd Cir. 2003) is distinguishable both on its facts and its application, in that Tancredi dealt with an insurance claim wherein policy holders alleged that an insurer converted from a mutual life insurance company to a stock insurance company, thus depriving plaintiffs of constitutionally protected rights. Notably, the Tancredi Court correctly reasoned that when analyzing allegations of state action, the specific conduct of which a plaintiff complains must be considered. Id., at 312, citing American Mutual Ins. Co. v. Sullivan, 526 U.S. 40, 51, 119 S.Ct. 977 (1999).

Pitchell v. Callan, 13 F.3d 545 (2nd Cir. 1994) and Bonsignore v. City of New York, 683 F.2d 635 92nd Cir. 1982) are also distinguishable. In Pitchell, plaintiff was at a friend's home with two Hartford, Connecticut police officers, one of whom, while drinking, produced a gun, confirmed that it was loaded with real bullets, pointed the gun at plaintiff and, after stating, "Now what did you say about Kennedy?", shot him. In Bonsignore, an off-duty policeman who shot his wife and then turned his gun on himself was held to not be acting under color of state law since "his actions were not 'committed in the performance of any actual or pretended duty." The facts of the present case are considerably different in that here, Colavito's actions in (a) identifying himself as a New York City police officer, and (b) prohibiting Mosca from leaving the scene constituted precisely the type of "actual or pretended duty" sufficient to support § 1983 liability under color of state action.

Claudio v. Sawyer, 675 F.Supp.2d 403 (S.D.N.Y. 2009), aff'd 409 Fed. App'x 464 (2nd Cir. 2011) is likewise distinguishable. There, the defendant officer's vehicle was cut off by plaintiff's vehicle, after which the two drivers exchanged words, the officer drew a pistol, shot and killed the other driver. Notably, while dismissing plaintiff's § 1983 claims under color of state

law, the Claudio Court acknowledged that, "there is no bright line test for distinguishing 'personal pursuits' from activities taken under color of law and the relevant question in deciding color of law is…whether the officer 'albeit off-duty, nonetheless invokes the real or apparent power of the police department…" Id., at 408. Here, unlike in Claudio, Colavito clearly "invoked the real or apparent power of the police department."

The Claudio Court also noted the factors to be considered when determining whether an off-duty police officer acted under color of law. These factors include:

> [W]hether defendants identified themselves as police officers at any time during the incident; if plaintiff was aware that the defendants were police officers; whether defendants detained or questioned the plaintiff in the line of duty or scope of employment as police officers; if defendants drew a firearm or arrested the plaintiff; whether defendants were engaged in any investigation or any aspect of the traditional public safety functions of police work. Id., citing Wahhab v. City of New York, 386 F.Supp.2d 277, 288 (S.D.N.Y. 2005).

Here, the facts and circumstances described in the Complaint, when viewed in the light most favorable to Mosca and drawing all reasonable inferences from plaintiff's allegations, clearly satisfy at least several of these factors: Colavito (a) identified himself as a police officer shortly prior to the assault, (b) thereby rendering Mosca aware that Colavito was a police officer, and (c) Colavito detained plaintiff.

Nor can NYC escape liability based on the lack of proximate cause. The facts as set forth in the Complaint do not present the type of "intervening" cause which so attenuates NYC's deliberate indifference to the specific conduct at issue so as to sever the causal connection between the violations of its policies as enunciated in the Patrol Guide and the events which led to the assault on Mosca. Here, it cannot be said, at this procedural juncture (on a FRCP 12(b)(6) motion to dismiss) that Colavito's conduct in (a) identifying himself as a NYPD police officer, (b) detaining Mosca, and (c) joining in the assault on Mosca, constituted the type of "independent

19

force…not set in motion by the defendant's own wrongful acts" sufficient to sever any causal connection. Martin v. City of New York, 793 F.Supp.2d 583, 586-587 (E.D.N.Y. 2011), *quoting* Zahrey v. City of New York, 98 civ. 4546 (DCP), 2009 U.S. Dist. LEXIS 31893, at 16-17 (S.D.N.Y. 2009).

Therefore, where, as here, a police officer (a) identifies himself as a police officer shortly prior to an assault, (b) thus rendering the plaintiff aware that he is in the presence of a police officer, and (c) is detained by the officer in violation of clearly defined, written policies prohibiting precisely such conduct, which conduct NYPD fails to discipline for at least one year after the incident, is clearly the type of "color of state action" which, when viewed in the light most favorable to the nonmoving party, warrants the denial of a FRCP 12(b)(6) motion to dismiss.

## POINT II

### IN THE ALTERNATIVE, PLAINTIFF SEEKS LEAVE TO AMEND THE COMPLAINT PURSUANT TO FRCP 15(a)(2) TO FURTHER SPECIFY THE EXISTENCE OF A CUSTOM, POLICY OR PATTERN BY NYC WHICH PROXIMATELY CAUSED OR CONTRIBUTED TO HIS INJURIES

When a party requests leave to amend his complaint, permission generally should be freely granted. *See, e.g* Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227 (1962) ("The court should freely give leave [to amend] when justice so requires.").

In order for an application to amend a pleading under FRCP 15(a) to be denied, the non-moving party must demonstrate either bad faith on the part of the moving party, the futility of the claims asserted in the application, or undue prejudice.  Johns v. Town of East Hampton, *supra* 942 F.Supp. 99, 105 (E.D.N.Y. 1996), *citing* Persaud v. Exxon Corp., 867 F.Supp. 128, 135 (E.D.N.Y. 1994).

Here, in the event this Court deems that the facts as set forth in the Complaint are insufficient to state a cause of action pursuant to § 1983, Mosca seeks leave to amend the Complaint pursuant to FRCP 15(a)(2) to further substantiate and/or amplify his § 1983 allegations in order to further specify the existence of a custom, policy or pattern by NYC which proximately caused or contributed to Mosca's injuries.

## CONCLUSION

For the reasons stated above, Plaintiff VINCENT MOSCA respectfully requests that Defendants CITY OF NEW YORK and NEW YORK CITY POLICE DEPARTMENT's motion seeking an Order pursuant to FRCP 12(b)(6) be denied.  In the alternative, Plaintiff requests that his motion seeking leave to amend the Complaint pursuant to FRCP 15(a)(2) be granted.

Dated: New York, New York
      October 18, 2017

                        Yours, etc.,

LIPSIG, SHAPEY, MANUS & MOVERMAN, P.C.

By:_____

      MARC E. FREUND
      Attorneys for Plaintiff
      40 Fulton Street
      New York, New York 10038-1850
      (212) 285-3300
      mfreund@lipsig.com

22

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK        )
                         ) ss.:
COUNTY OF NEW YORK       )

      Kennia Pluas, being duly sworn, deposes and says:

      I am not a party to the action, am over 18 years of age and reside in Queens County, New York.

      On October 20, 2017, I served the within **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS CITY OF NEW YORK AND NEW YORK CITY POLICE DEPARTMENT'S MOTION TO DISMISS**, by depositing a true copy thereof enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State, addressed to each of the following persons at the last known address set forth after each name:

           ZACHARY W. CARTER
           CORPORATION COUNSEL
           100 Church Street, Room 3-133b
           New York, NY 10007

           LAW OFFICES OF PENINO & MOYNIHAN
           1025 Westchester Avenue, Ste. 403
           White Plains, NY 10604

           KAUFMAN BORGEEST & RYAN LLP
           1205 Franklin Avenue, Ste. 200
           Garden City, NY 11530

           ADRIENNE C. LYNCH
           1060 Park Blvd.
           Massapequa Park, NY 11762

                                          KENNIA PLUAS

Sworn to before me this
20th day of October, 2017

_____
      Notary Public

          DAISY DEJESUS
        Commissioner of Deeds
           No. 3-7377
     Cert. Filed in Bronx County
   Commission Expires Jan. 1, 20_18_

# EXHIBIT "A"

Exhibit "A"

## PATROL GUIDE

| Section:  General Regulations | | Procedure No:   203-10 |
|---|---|---|
| **PUBLIC CONTACT - PROHIBITED CONDUCT** | | |
| DATE ISSUED:<br>08/01/13 | DATE EFFECTIVE:<br>08/01/13 | REVISION NUMBER: | PAGE:<br>1 of 3 |

**PUBLIC CONTACT – PROHIBITED CONDUCT**

1. Using discourteous or disrespectful remarks regarding another person's ethnicity, race, religion, gender, gender identity/expression, sexual orientation, or disability.

   a. Members shall address the public using pronouns, titles of respect, and preferred name appropriate to the individual's gender identity/expression as expressed by the individual. The term "gender" shall include actual or perceived sex and shall also include a person's gender identity, self-image, appearance, behavior, or expression, whether or not that gender identity, self-image, appearance, behavior, or expression is different from that traditionally associated with the legal sex assigned to that person at birth.

2. Knowingly associate with any person or organization:

   a. Advocating hatred, oppression, or prejudice based on race, religion, gender, gender identity/expression, sexual orientation, or disability.

   b. Disseminating defamatory material.

   c. Reasonably believed to be engaged in, likely to engage in, or to have engaged in criminal activities.

   d. Preventing or interfering with performance of police duty.

3. Divulging or discussing official Department business, except as authorized.

4. Manipulating manually or electronically, transmitting in any form, or distributing any official Department recorded media or recorded media coming into possession of the Department as evidence or for investigative purposes except as authorized for official Department business. Recorded media includes videotapes, photographic images or pictures, audio recordings, electronic or internet files, or any like forms to be available in the future.

5. Engaging in conduct prejudicial to good order, efficiency, or discipline of the Department.

6. Making recommendation for or concerning any person or premises to any government agency in connection with issuance, revocation, or suspension of any license or permit, except when required in performance of duty.

7. Soliciting, collecting, or receiving money for any political fund, club, association, society, or committee.

8. Joining any political club within the precinct to which assigned.

9. Being a candidate for election to, or serving as member of a School Board, if School District is located within City of New York (see Section 2103-a, Education Law).

10. While on duty or in uniform, endorsing political candidates or publicly expressing personal views and opinions concerning the merits of:

    a. Any political party or candidate for public office;

## NEW • YORK • CITY • POLICE • DEPARTMENT

EXHIBIT "A"



## PATROL GUIDE

| Section:  Command Operations | | Procedure No:   212-32 |
|---|---|---|
| **OFF DUTY INCIDENTS INVOLVING**<br>**UNIFORMED MEMBERS OF THE SERVICE** | | |
| DATE ISSUED:<br>08/01/13 | DATE EFFECTIVE:<br>08/01/13 | REVISION NUMBER: | PAGE:<br>1 of 1 |

**PURPOSE**    To facilitate the preliminary investigation of off duty incidents involving uniformed members of the service.

**PROCEDURE**    When an off duty uniformed member of the service is at an unusual police occurrence to which the uniformed member of the service is either a participant or a witness:

**UNIFORMED MEMBER OF THE SERVICE**
1.    Remain at the scene of incident when feasible and consistent with personal safety.
2.    Request response of patrol supervisor, precinct of occurrence.

**NOTE**    *For purposes of this procedure an unusual police occurrence shall include family disputes and other incidents of domestic violence in which the officer is either a participant or a witness.  When remaining at the scene is inappropriate, the uniformed member of the service concerned may leave the scene; however, said member must promptly notify the desk officer, precinct of occurrence, and be guided by the desk officer's instructions.  If incident occurs outside of the City the uniformed member of the service concerned will promptly notify the Operations Unit.  The Operations Unit will notify the appropriate patrol borough responsible for conducting investigations in the residence county, or the appropriate authority if outside residence counties.*

**PATROL SUPERVISOR**
3.    Respond to scene and assess situation.
4.    Notify desk officer of available details.

**DESK OFFICER**
5.    Notify precinct commander/duty captain.
6.    Notify the Internal Affairs Bureau Command Center (212-741-8401) with all available details.

**COMMANDING OFFICER/ COUNTERPART**
7.    Conduct investigation and take appropriate action.

**NOTE**    *Any investigation of a police incident or unusual occurrence, including domestic violence and family disputes, which involve an off duty uniformed member of the service as a participant or witness will benefit from that uniformed member's presence.*

**ADDITIONAL DATA**    *When the Internal Affairs Bureau, Command Center, is notified that an off duty uniformed member of the service has suffered a non-fatal bullet wound from a firearms discharge and he/she did not discharge a firearm and the injured member is not the subject of any allegation of misconduct, the Internal Affairs Bureau will notify the Personnel Bureau to enter the event entitled, "UMOS Victim of Bullet Wound" with a zero point value on the concerned member's Central Personnel Index (CPI).*

**RELATED PROCEDURES**    *Interrogation of Members of the Service (P.G. 206-13)*
*Unusual Occurrence Reports (P.G. 212-09)*

## NEW • YORK • CITY • POLICE • DEPARTMENT

# EXHIBIT "B"

