# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

| | | |
|---|---|---|
| VINCENT MOSCA | ) | |
| _Plaintiff_ | ) | |
| v. | ) | Civil Action No. 17-cv-04327 |
| FRANCESCO COLAVITO | ) | |
| _Defendant, Third-party plaintiff_ | ) | |
| v. | ) | |
| IAN M. WALSH | ) | |
| _Third-party defendant_ | ) | |

## SUMMONS ON A THIRD-PARTY COMPLAINT

To: _(Third-party defendant's name and address)_    IAN M. WALSH
11 HARBOUR LANE
MASSAPEQUA, NY 11758

A lawsuit has been filed against defendant  Francesco Colavito , who as third-party plaintiff is making this claim against you to pay part or all of what the defendant may owe to the plaintiff  Vincent Mosca .

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff and on the defendant an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the defendant or defendant's attorney, whose name and address are:

Penino & Moynihan, LLP
1025 Westchester Ave., Ste. 403
White Plains, NY 10604

It must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

Lipsig Shapey Manus & Moverman, PC
40 Fulton St.
New York, NY 10038-1850

If you fail to respond, judgment by default will be entered against you for the relief demanded in the third-party complaint. You also must file the answer or motion with the court and serve it on any other parties.

A copy of the plaintiff's complaint is also attached. You may — but are not required to — respond to it.

Date:   03/29/2018

_CLERK OF COURT_

_____

_Signature of Clerk or Deputy Clerk_

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

VINCENT MOSCA,

                              Plaintiff,

        -against-

THE CITY OF NEW YORK, THE NEW YORK CITY
POLICE DEPARTMENT, FRANCESCO COLAVITO,
TAPPED 1010 INC., and MXL LLC,

                            Defendants.

------------------------------------------------------------------X

TAPPED 1010 INC.,

                        Third-Party Plaintiff,

-against-

PROFESSIONAL SECURITY SERVICES, INC.,

                        Third-Party Defendant

------------------------------------------------------------------X

FRANCESCO COLAVITO,

                        Second Third-Party Plaintiff,

-against-

IAN M. WALSH.

                        Second Third-Party Defendant,

------------------------------------------------------------------X

**Second Third-Party Complaint**

Docket No.: 17-cv-04327

Judge
Sandra J. Feuerstein

Magistrate Judge
Steven I. Locke

Defendant/Second Third-Party Plaintiff, **FRANCESCO COLAVITO**, by and through his attorneys, **PENINO & MOYNIHAN, LLP** as and for his Second Third-Party Complaint, upon information and belief, alleges the following:

      1.    At all times mentioned herein, defendant/second third-party plaintiff, Francesco Colavito ("Colavito") was and still is a resident of New York.

      2.    At all times mentioned herein, second third-party defendant, Ian M. Walsh ("Walsh"), was and still is a resident of New York.

3.     The plaintiff in the primary action, Vincent Mosca ("plaintiff"), served upon Colavito a complaint alleging that, on or about April 29, 2016, Colavito and Walsh acted in concert at the "Tap Room" bar located at 1010 Park Boulevard, Massapequa, New York, to falsely arrest, imprison, restrain, detain, and assault plaintiff in violation of 42 U.S.C. § 1983; § 1988; and plaintiff's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution; that Colavito was negligent; and that the foregoing conduct resulted in personal injury and damages. A copy of plaintiff's complaint is annexed as Exhibit "A".

4.     Colavito denied the material allegations against him in the answer annexed as Exhibit "B".

5.     Supplemental jurisdiction exists over Walsh pursuant to 28 U.S.C. § 1367 (a), as all of the claims alleged herein are related to the same incident underlying the original action.

## AS AND FOR A FIRST CAUSE OF ACTION

6.     Colavito repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "5" above, with the same force and effect as though set forth in full herein.

7.     That on April 29, 2016, Walsh negligently, recklessly, and/or intentionally struck the plaintiff.

8.     Colavito did not strike plaintiff, or engage in any other culpable conduct.

9.     If the plaintiff in the primary action was caused to sustain damages as set forth in the complaint and a judgment is recovered against Colavito, such liability will have been brought about by Walsh's culpable conduct, entitling Colavito to complete indemnity.

## AS AND FOR A SECOND CAUSE OF ACTION

10.    Colavito repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "9" above, with the same force and effect as though set forth in full herein.

11.    If the plaintiff in the primary action was caused to sustain damages as set forth in the complaint and a judgment is recovered against Colavito, such liability will have been brought about by Walsh's culpable conduct, entitling Colavito to contribution for the proportional share of any damages awarded at the trial of this action.

**WHEREFORE** the defendant/second third-party plaintiff, Francesco Colavito, demands judgment over and against the second third-party defendant, Ian M. Walsh, for the amount of any settlement, verdict, or judgment which may be recovered by plaintiff in the primary action, or, in the alternative, for contribution, together with costs and attorneys' fees incurred by the defendant/second third-party plaintiff.

DATED:   White Plains, New York
             March 29, 2018

Respectfully,

**PENINO & MOYNIHAN, LLP**

BY: _____

Henry L. Liao (HL6071)
Attorneys for Defendant
**FRANCESCO COLAVITO**
1025 Westchester Avenue, Suite 403
White Plains, New York 10604
(914) 949-6996
Our File No.: 12-3211

TO:    Lipsig Shapey Manus & Moverman, PC
         Attorneys for Plaintiff
         40 Fulton St.
         New York, NY 10038-1850

Zachary W. Carter
Corporation Counsel of the City of New York
Attorney for Defendant
CITY OF NEW YORK and NYPD
100 Church Street, Room 3-133b
New York, NY 10007

Kaufman Borgeest & Ryan, LLP
Attorneys for Defendant/Third-Party Plaintiff
TAPPED 1010, INC.
1205 Franklin Ave., Ste. 200
Garden City, NY 11530

Adrienne Lynch, Esq.
Attorney for Defendant
MXL LLC
1060 Park Blvd.
Massapequa Park, NY 11762

Ian M. Walsh
Defendant, *Pro Se*
11 Harbour Lane
Massapequa, NY 11758

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
VINCENT MOSCA,

                      Plaintiff,

  -against-

THE CITY OF NEW YORK, THE NEW YORK CITY
POLICE DEPARTMENT, FRANCESCO COLAVITO,
TAPPED 1010 INC., and MXL LLC,

                Defendants.

--------------------------------------------------------------x

CIVIL ACTION NO. 17 CV 4327

COMPLAINT

JURY TRIAL DEMANDED

ECF Case

Plaintiff, by his attorneys, **LIPSIG, SHAPEY, MANUS & MOVERMAN, P.C.**, hereby brings this action under 42 U.S.C. §1983 to redress his civil and legal rights, and alleges as follows:

## PRELIMINARY STATEMENT

1.     This is a civil action for monetary damages which the plaintiff seeks compensatory and punitive damages, an award of costs, interest and attorney's fees, against the defendants THE CITY OF NEW YORK ("CITY"), THE NEW YORK CITY POLICE DEPARTMENT ("NYPD"), FRANCESCO COLAVITO ("COLAVITO"), TAPPED 1010 INC. d/b/a THE TAP ROOM ("TAP ROOM"), and MXL LLC ("MXL"), arising out of the false arrest, false imprisonment, assault, battery, common law negligence and permanent injuries caused to plaintiff VINCENT MOSCA ("MOSCA") on or about April 29, 2016.

2.     On or about April 29, 2016, COLAVITO a member of the New York City Police Department, who was negligently and recklessly hired, trained, retained and supervised by the CITY and the NYPD in the County of Kings, City and State of New York, acting under the color of state law and acting in concert with convicted assailant IAN WALSH ("WALSH"), intentionally and willfully subjected plaintiff VINCENT MOSCA to, inter alia, false arrest, false imprisonment, intentional, unlawful and substantial restraint, detention, and

assault and battery without just cause in violation of plaintiff VINCENT MOSCA's rights under the United States Constitution and 42 USC §1983 and 1988.

3.  On and prior to April 29, 2016, CITY and NYPD , acted negligently and with reckless disregard for public safety in the screening, hiring, training, retention and supervision of COLAVITO, who CITY and NYPD knew or should have known was completely unfit for duty, and thus caused the false arrest, false imprisonment, intentional, unlawful and substantial restraint, detention, and assault and battery without just cause in violation of plaintiff VINCENT MOSCA's rights under the United States Constitution and 42 USC §1983 and 1988.

4.  On and prior to April 29, 2016, CITY and NYPD , acted negligently and with reckless disregard for public safety in the systematic failure to properly screen, hire, train, retain and supervise its police officers, indeed it was the custom and practice to hire and retain officers that were clearly unfit for duty and thus caused the false arrest, false imprisonment, intentional, unlawful and substantial restraint, detention, and assault and battery without just cause in violation of plaintiff VINCENT MOSCA's rights under the United States Constitution and 42 USC §1983 and 1988.

5.  On or about April 29, 2016, defendant TAP ROOM, and MXL, failed to provide reasonable and adequate control, supervision, and security at the premises, thereby causing, contributing and/or allowing COLAVITO to intentionally and willfully act in concert with WALSH and subject plaintiff MOSCA to, inter alia, false arrest, false imprisonment, intentional, unlawful and substantial restraint, detention, and a assault and battery without just cause.

6.  On or about April 29, 2016, defendants THE TAP ROOM, and MXL, engaged in the unlawful commercial sale of alcohol to intoxicated persons in violation of  Section 65 of the Alcoholic Beverage Control Law, thereby causing and contributing to COLAVITO intentionally and willfully acting in concert with WALSH to subject plaintiff MOSCA to,

inter alia, false arrest, false imprisonment, intentional, unlawful and substantial restraint, detention, and a assault and battery without just cause.

## JURISDICTION AND VENUE

7.     This action is brought pursuant to 42 USC §1983 and 1988, and the First and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §1331 and 1343, this being an action seeking redress for the violation of the Plaintiff's constitutional and civil rights.

8.     Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all state law claims and as against all parties that are so related to the claims in this action within the original jurisdiction of this Court that they form part of the same case or controversy.

9.     Venue in this District is proper under 28 U.S.C. § 1391(b) and (c) in that COLAVITO, a member of the New York City Police Department, was primarily screened, hired, trained, retained and supervised by the CITY and the NYPD in the County of Kings, City and State of New York, and the events giving rise to this claim occurred within the boundaries of the Eastern District of New York.

## JURY TRIAL DEMANDED

10.     Plaintiff demands a trial by jury on each and every one of her claims as pleaded herein.

## PARTIES

11.     On or about April 29, 2016, plaintiff MOSCA was a resident of the County of Nassau, City and State of New York. MOSCA was a hedge fund analyst. His father was a battalion chief with the New York City Fire Department. His mother and other family members had dutifully served in the New York Police Department.

12.     CITY is a municipal entity duly organized under and existing by virtue of the laws of the State of New York. It is authorized by law to maintain a police department which acts as its agent in the area of law enforcement and for which it is ultimately

responsible. Defendant CITY assumes the risks incidental to the maintenance of a police force and the employment of police officers. Defendant City was at all times relevant herein the public employer of defendant Police Officer COLAVITO.

13.     Defendant COLAVITO was at all times relevant herein duly appointed and acting officers, servants, employees and agents of the NYPD, a municipal agency of defendant CITY. At all times relevant herein, the individual defendants were acting under color of the laws, statutes, ordinances, regulations, policies, customs and/or usages of the State of New York and the NYPD, in the course and scope of their duties and functions as officers, agents, servants, and employees of defendant CITY, were acting for, and on behalf of, and with the power and authority vested in them by the CITY and the NYPD, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties. They are sued individually and in their official capacity.

14.     By the conduct, acts, and omissions complained of herein, defendants CITY, NYPD and COLAVITO violated clearly established constitutional standards under the First, Fourth, and Fourteenth Amendments to the United States Constitution of which a reasonable police department and police officer under the circumstances would have known.

15.     On or about April 29, 2016, MXL was the landlord that owned, operated, controlled and supervised the premises where the incident occurred known as 'THE TAP ROOM" at 1010 Park Boulevard, City of Massapequa, State of New York ("the premises").

16.     On or about April 29, 2016, TAP ROOM was the tenant that owned, operated, controlled and supervised the premises

**NOTICE OF CLAIM**

17.     On July 27, 2016, plaintiff duly served a Notice of Claim upon the  CITY and the NYPD, specifying the time when, location where, and manner in which this claim arose, for adjustment.

18.     On July 10, 2017, plaintiff duly served an Amended Notice of Claim upon the CITY and NYPD, specifying the time when, location where, and manner in which this claim arose, for adjustment.

19.     CITY has wholly failed and refused and refused to adjust or settle this claim.

20.     NYPD has wholly failed and refused and refused to adjust or settle this claim.

21.     Plaintiff has appeared for his 50(h) hearing and met all conditions precedent for the filing of this action.

## STATEMENT OF FACTS

22.     Prior to April 29, 2016, CITY and NYPD , hired, trained and employed COLAVITO, as a New York City Police Officer.

23.     Prior to April 29, 2016, CITY and NYPD , hired, trained and employed COLAVITO, as a New York City Police Officer despite the fact that was unfit for duty and that retaining him as a Police Officer would pose a undue threat to the health and safety of the general public.

24.     In particular, upon information and belief,  CITY and NYPD knew or should have known that COLAVITO had a history of and a psychological tendency to engage in undue acts of aggressive/violent/bizarre behavior/bullying/alcoholism/mental disturbance and upon information and belief COLAVITO closely associated with persons who engaged in acts of aggressive/violent/bizarre behavior/bullying/alcoholism/substance abuse/mental disturbance and unlawful behavior.

25.     COLAVITO remained unfit for duty after he was hired by the NYPD and CITY and NYPD failed to retrain him, suspend him or terminate his employment despite the fact that upon information and belief he continued to  to engage in undue acts of aggressive/violent/bizarre behavior/bullying/alcoholism/mental disturbance and upon information and belief COLAVITO continued to associate with persons who engaged in acts of aggressive/violent/bizarre behavior/bullying/alcoholism/substance abuse/mental disturbance/unlawful behavior.

26.     On or about April 29, 2016, plaintiff MOSCA visited the restaurant and bar known as the TAP ROOM at the premises.

27.     MOSCA was in the bar a few minutes when he encountered COLAVITO and his close associate WALSH. Both were visibly intoxicated. COLAVITO was on probation with the NYPD at the time.

28.     COLAVITO and WALSH almost immediately and acting in concert, began to menace, threaten, bully, harass and act belligerent towards MOSCA without just cause or provocation.

29.     MOSCA attempted to de-escalate the situation by announcing he was leaving the bar. MOSCA then began to exit.

30.     COLAVITO and WALSH continued to follow MOSCA as he attempted to exit the bar and continued to menace, threaten, bully, harass and act belligerent towards MOSCA without just cause or provocation.

31.     MOSCA further attempted to de-escalate the situation by giving WALSH a friendly hug and wishing him the best.

32.     COLAVITO and WALSH followed MOSCA into the parking lot at the premises and continued to menace, threaten, bully, harass and act belligerent towards MOSCA without just cause or provocation.

33.     The Tap Room and MXL provided no safety or security to MOSCA on the premises or parking lot despite the fact that it was known or should have been known that MOSCA was about to be violently attacked by drunk patrons of the TAP ROOM and there was a history of prior violent behavior at the premises..

34.     As  MOSCA was attempting to remove himself from the situation and exit the parking lot at the premises, COLAVITO confronted MOSCA.

35.     COLAVITO pronounced: "I'm with the NYPD, you're not going anywhere". COLAVITO further flashed his NYPD badge at MOSCA.

36.     While MOSCA was confronted, detained, and distracted by COLAVITO, WALSH viciously punched MOSCA from behind on his head .

37.     WALSH, acting in concert with COLAVITO, continued to repeatedly punch, kick, attack, assault and brutalize MOSCA, while MOSCA lied helplessly and unconscious on the ground in the parking lot.

38.     COLAVITO and WALSH returned back inside to the bar while MOSCA lied helplessly and unconscious on the ground.

39.     COLAVITO and WALSH openly celebrated the unprovoked attack upon MOSCA inside the bar with other patrons as MOSCA lied helplessly and unconscious on the ground in the parking lot.

40.     The TAP ROOM continued to serve alcoholic beverages to COLAVITO, WALSH and other patrons, as a large group engaged in celebratory drinking, high fives, handshakes and mock reenactments of the assault.

41.     The TAP ROOM continued to serve alcoholic beverages to COLAVITO, WALSH and other patrons, as COLAVITO and WALSH conducted drunk mock re-enactments of MOSCA convulsing on the parking lot floor unconscious.

42.     COLAVITO and WALSH repeatedly, brazenly and openly brought out patrons of the bar into the parking lot in a jovial drunken fashion to mock the condition of MOSCA who remained unconscious and convulsing on the ground.

43.     After each such occasion, TAP ROOM continued to serve alcoholic beverages to COLAVITO, WALSH and other patrons, as a large group engaged in celebratory drinking, high fives, handshakes and mock re-enactments of the assault.

44.     At no point did COLAVITO, TAP ROOM or MXL render any medical assistance to MOSCA or call for any medical assistance.

45.     At no point did TAP ROOM or MXL render any safety or security to MOSCA.

46.     At no point did TAP ROOM or MXL stop serving alcohol to the assailants or their cohorts.

47.     Nearly 10 minutes after the attack, a good Samaritan Jeffrey Buchheit, came to the assistance of MOSCA.

48.     As a result of the attack, MOSCA suffered a traumatic brain injury, multiple facial fractures, required reconstructive facial surgery and continues to suffer from permanent physical and psychological injuries and for which he remains under active treatment.

49.     Virtually the entire incident was captured on the TAP ROOM'S surveillance video at the premises and on the parking lot.

50.     COLAVITO never reported this off-duty incident to the NYPD in violation of NYPD guidelines.

51.     MOSCA attempted to press charges against COLAVITO and WALSH for the assault and battery with the Nassau County Police Department.

52.     The Nassau County District Attorney charged WALSH with assault but eventually allowed him to plead guilty to a misdemeanor with no jail time.

53.     WALSH had been arrested for a similar assault and battery in the past.

54.     Within a few weeks of the attack, the NYPD learned of the incident and received a copy of the surveillance video depicting COLAVITO and WALSH's brutal assault and battery.

55.     The video alone provided enough evidence that COLAVITO engaged in unlawful criminal behavior, violated numerous NYPD rules and guidelines and was clearly unfit for duty.

56.     Despite this fact, the NYPD continued to engage in a improper systemic failure to hire, retain, retrain, suspend and terminate its employees, by allowing COLAVITO to remain employed with the NYPD for more than one full year after the assault, despite the fact that he was on probation to begin with.

57.     COLAVITO was eventually terminated by the NYPD during a period of time that this civil lawsuit was being prepared on MOSCA's behalf and the news media in New York was set to publish the story and surveillance video.

58.     The delay and inaction by the NYPD in effect condoned the heinous conduct of COLAVITO and all the patrons at the bar that night, and further subjected the public to danger and in particular caused further mental anguish and suffering to the plaintiff MOSCA.

59.     The delay and inaction by the NYPD highlights the negligent systemic failure by the NYPD to screen and retain COLAVITO and other similarly situated officers who are clearly unfit for duty and present a danger to the general public.

60.     The CITY OF NEW YORK directly caused the constitutional violations suffered by Plaintiff, and is liable for the damages suffered by Plaintiff as a result of the conduct of the defendant COLAVITO. The conduct of COLAVITO was a direct consequence of policies and practices of defendant CITY in failing to institute safe and appropriate measures for the selection, training, hiring, retraining and supervising of police officers.

## FIRST CAUSE OF ACTION

61.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

62.     At the aforesaid time and place, plaintiff MOSCA was unlawfully arrested, detained, and prevented from leaving against his will by Officer COLAVITO who identified himself as an Officer of the NYPD.

63.     At the aforesaid time and place, Officer COLAVITO, who identified himself as an Officer of the NYPD, acted in concert with WALSH to distract, arrest, detain and  and viciously assault MOSCA until and beyond when he was rendered unconscious and incapacitated..

64.     Officer COLAVITO, acting with the authority of the NYPD and under color of badge did at the aforementioned time and place, during his illegal arrest, detention and assault of plaintiff in concert with WALSH cause and allow the plaintiff to be beaten until unconscious.

65.     When said Police Officer COLAVITO, arrested, detained, distracted and assaulted the plaintiff in concert with WALSH, he deprived him of the rights, privileges and immunities secured to him by the Constitution of The United States and violated 42 USC §1983, et seq.

66.     At the time of this occurrence, the conduct of Officer COLAVITO  was not justified under the circumstances.

67.     At the time of this occurrence, plaintiff, MOSCA, was unarmed and posed no threat to the police officers or anyone else.

68.     As a result of Officer COLAVITO'S negligence, recklessness and assault and battery of COLAVITO, and the violation of 42 USC §1983, et seq, plaintiff, VINCENT MOSCA was injured.

69.     The injuries sustained by MOSCA, were due to the negligence, carelessness and recklessness of the defendants COLAVITO, the CITY and the NYPD their agents, servants and/or employees, in the violation of 42 USC §1983, et seq.

70.     As a result of the violation of 42 USC §1983, et seq, the physical injuries inflicted upon plaintiff, MOSCA, which included assault and battery, MOSCA claims all damages recoverable under 42 USC §1983, et seq and the laws of the State of New York, including but not limited to past and future pain and suffering, past and future medical expenses, mental anguish, harm to reputation, embarrassment, ridicule, police brutality, false arrest, assault and battery, attorneys fees pursuant to 42 USC §1988, and all other items of damage recoverable under New York State Law and the laws of The United States of America.

71.     As a result of the aforementioned occurrence, plaintiff was deprived of his civil rights under the Constitution of the State of New York and the Constitution of the United States, as well as other State ordinances statutes, codes and rules, including 42 U.S.C. 1981, 1983, 1985 and 28 U.S.C. 1343.

72.     Plaintiff was injured.

73.     Plaintiff was seriously injured.

74.     As a result of the forgoing, plaintiff was rendered permanently injured and is entitled to punitive and compensatory damages from the defendants well in excess$75,000.00.

## SECOND CAUSE OF ACTION

75.     Plaintiff reiterates and re-alleges all of the above paragraphs as if fully set forth herein again.

76.     At all times relevant herein, the NYPD employed COLAVITO as Police Officer in The New York City Police Department.

77.     At all times relevant herein, the NYPD conducted a background investigation of, Officer COLAVITO as a condition precedent of his employment.

78.     At all times relevant herein, the NYPD conducted  psychological testing of, Officer COLAVITO as a condition precedent of his employment.

79.     At all times relevant herein, the NYPD conducted physical- medical examinations of, Officer COLAVITO as a condition precedent of his employment.

80.     At all times relevant herein, the NYPD conducted evaluations of Officer COLAVITO as a condition precedent of his employment.

81.     At all times relevant herein, the NYPD conducted  psychological testing of, Officer COLAVITO as a condition precedent of his employment.

82.     At all times relevant herein, the NYPD conducted required  Officer COLAVITO to attend the Police Academy as a condition precedent of his employment.

83.     At all times relevant herein, the NYPD trained Officer COLAVITO as a condition precedent of his employment as Police Officer.

84.     At all times relevant herein, the NYPD failed to properly investigate, screen, evaluate test, train, supervise and examine COLAVITO and that said failures resulted in COLAVITO becoming a Uniformed Member of the New York City Police Department.

85.     At all times relevant herein, COLAVITO was unfit to be a New York City Police Officer.

86.     At all times relevant herein, the CITY and the NYPD knew or should have known of COLAVITO'S criminal, aggressive, violent, and abusive tendencies.

87.     At all times relevant herein, the NYPD failed to properly supervise  Officer COLAVITO.

88.     The injuries, both physical and psychological, sustained by MOSCA, were due to the negligence, carelessness and recklessness of the defendants, the CITY and the NYPD,

their agents, servants and/or employees, in their failures to properly screen for employment, hire, retain, train supervise, and employ, Officer COLAVITO.

89.     The injuries, both physical and psychological, sustained by VINCENT MOSCA, were due to the negligence, carelessness and recklessness of the defendants, the CITY and the NYPD, their agents, servants and/or employees, in their systemic failure to properly screen for employment, hire, retain, train supervise, and employ New York City Police Officers.

90.     As a result off the foregoing negligence, carelessness and recklessness of the NYPD and CITY, COLAVITO a member of the New York City Police Department acting under the color of state law and acting in concert with convicted assailant WALSH, intentionally and willfully subjected plaintiff MOSCA to, inter alia, false arrest, false imprisonment, intentional, unlawful and substantial restraint, detention, and assault and battery without just cause in violation of plaintiff MOSCA's rights under the United States Constitution and 42 USC §1983.

91.     As a result of the foregoing, plaintiff was injured.

92.     As a result of the foregoing, plaintiff was seriously injured.

93.     As a result of the forgoing, plaintiff was rendered permanently injured and is entitled to punitive and compensatory damages from the defendants well in excess$75,000.00.

94.     As a result of the foregoing, plaintiff has been damaged in excess of the jurisdictional limits of all lower courts in which this action could otherwise have been brought.

### THIRD CAUSE OF ACTION -MONELL CLAIM AGAINST THE CITY OF NEW YORK - 42 U.S.C. §1983

95.     Plaintiff reiterates and re-alleges all of the above paragraphs as if fully set forth herein again.

96.     The CITY directly caused the constitutional violations suffered by Plaintiff, and is liable for the damages suffered by Plaintiff as a result of the conduct of the defendant officers. The conduct of the defendant officers was a direct consequence of policies and practices of defendant CITY.

97.     At all times relevant to this complaint defendant CITY,  acting through the NYPD, had in effect policies, practices, and customs that condoned and fostered the unconstitutional conduct of COLAVITO and other similarly situated officers, and were a direct and proximate cause of the damages and injuries complained of herein.

98.     It was the policy and/or custom of the CITY to inadequately and improperly screen, train, hire and supervise its officers and it was a police and custom not to investigate citizen complaints of police misconduct, and acts of misconduct were instead tolerated by the CITY, including, but not limited to, the incidents listed above.

99.     Prior to April 29, 2016, CITY and NYPD , hired, trained and employed COLAVITO, as a New York City Police Officer despite the fact that was unfit for duty and that retaining him as a Police Officer would pose a undue threat to the health and safety of the general public.

100.     In particular, upon information and belief,  CITY and NYPD knew or should have known that COLAVITO and other similarly situated officers had a history of and a psychological tendency to engage in undue acts of aggressive/violent/bizarre behavior/bullying/alcoholism/mental disturbance and upon information and belief COLAVITO closely associated with persons who engaged in acts of aggressive/violent/bizarre behavior/bullying/alcoholism/substance abuse/mental disturbance and unlawful behavior.

101.     COLAVITO remained unfit for duty after he was hired by the NYPD and CITY and NYPD failed to retrain him, suspend him or terminate his employment despite the fact that upon information and belief he continued to  to engage in undue acts of aggressive/violent/bizarre behavior/bullying/alcoholism/mental disturbance and upon information and belief COLAVITO continued to associate with persons who engaged in acts of aggressive/violent/bizarre behavior/bullying/alcoholism/substance abuse/mental disturbance/unlawful behavior.

102.     The video surveillance provided to the NYPD following the subject incident provided more than enough evidence that COLAVITO engaged in unlawful criminal

behavior, violated numerous NYPD rules and guidelines, was clearly unfit for duty and should be terminated immediately.

103.     Despite this fact and that COLAVITO was already on probation, the NYPD continued to engage in a improper systemic failure to reasonably and safely hire, retain, retrain, suspend and terminate its employees, by allowing COLAVITO to remain employed with the NYPD for more than one full year after the assault.

104.     The system and practice as it came to the hiring and retention of COLAVITO and the continued employment of COLAVITO after the attack, is demonstrative of a systematic failure and a custom and practice of the CITY and NYPD to hire and retain officers that are clearly unfit for duty and pose a serious risk to the general public.

105.     The red flags that should have been apparent in the case of COLAVITO as to why he was unfit for duty, were ignored based on an established custom and practice that threatens the civil liberties of all members of the public.

106.     The injuries, both physical and psychological, sustained by MOSCA, were due to the negligence, carelessness and recklessness of the defendants, the CITY and the NYPD, their agents, servants and/or employees, in their systemic failure to properly screen for employment, hire, retain, train supervise, and employ New York City Police Officers and their custom and practice to hire and retain police officers that pose a serious threat of danger to the general public.

107.     As a result off the foregoing negligence, carelessness and recklessness of the NYPD and CITY, COLAVITO a member of the New York City Police Department acting under the color of state law and acting in concert with convicted assailant WALSH, intentionally and willfully subjected plaintiff MOSCA to, inter alia, intentional, unlawful and substantial restraint, detention, and assault and battery without just cause in violation of plaintiff MOSCA's rights under the United States Constitution and 42 USC §1983.

108.     As a result of the foregoing, plaintiff was injured.

109.     As a result of the foregoing, plaintiff was seriously injured.

110.    As a result of the forgoing, plaintiff was rendered permanently injured and is entitled to punitive and compensatory damages from the defendants well in excess$75,000.00.

111.    As a result of the foregoing, plaintiff has been damaged in excess of the jurisdictional limits of all lower courts in which this action could otherwise have been brought.

112.    As a result of the violation of 42 USC §1983, et seq, the physical injuries inflicted upon plaintiff, MOSCA, which included assault and battery, VINCENT MOSCA claims all damages recoverable under 42 USC §1983, et seq and the laws of the State of New York, including but not limited to past and future pain and suffering, past and future medical expenses, mental anguish, harm to reputation, embarrassment, ridicule, police brutality, assault and battery, attorneys fees pursuant to 42 USC §1988, and all other items of damage recoverable under New York State Law and the laws of The United States of America.

<u>FOURTH CAUSE OF ACTION</u>

113.    Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

114.    Defendant COLAVITO'S conduct in assaulting and battering the plaintiff without provocation or justification, was extreme, outrageous, and utterly intolerable in a civilized community; conduct which exceeded all reasonable bounds of decency.

115.    Defendant COLVAITO'S conduct, described above, was intended to and did cause severe emotional distress to Plaintiff.

116.    The CITY and NYPD'S reaction to the incident as described above in permitting COLAVITO to remain employed for over a year following the incident and the release of the video surveillance to the NYPD was extreme, outrageous, and utterly intolerable in a civilized community; conduct which exceeded all reasonable bounds of decency and was intended to and did cause severe emotional distress to Plaintiff.

117.    The conduct of the defendants CITY, NYPD and COLAVITO was the direct and proximate cause of injury and damage to Plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

118.    As a result of the foregoing, Plaintiff was deprived of his liberty, was subjected to serious physical and emotional pain and suffering, and was otherwise damaged and injured.

### FIFTH CAUSE OF ACTION

119.    On or about April 29, 2016, TAP ROOM, owned, operated, controlled and supervised the premises/business/parking lot known as "THE TAP ROOM" located at 1010 Park Boulevard, City of Massapequa, State of New York.

120.    On and before April 29, 2016  defendant TAP ROOM conducted business at 1010 Park Boulevard,  in the City of Massapequa, County of Nassau and State of New York, under the name "THE TAP ROOM".

121.    On or about April 29, 2016, TAP ROOM was an establishment that served food and beverages containing alcohol to the public.

122.    The business so conducted by defendant TAP ROOM, at the aforementioned location consisted of the sale and/or service of, among other things, intoxicating beverages, as authorized and approved by the New York State Liquor Authority and other governmental agencies created for this purpose.

123.    On or about April 29, 2016, TAP ROOM premises included an interior area for service of food and drinks and a parking lot for use by patrons.

124.    On April 29, 2016, WALSH was served alcoholic beverages by the agents, servants and/or employees of TAP ROOM.

125.    On April 29, 2016, WALSH purchased alcoholic beverages at TAP ROOM.

126.    On April 29, 2016, WALSH was served by agents, servants and/or employees of TAP ROOM,  such quantities of alcoholic beverages that WALSH was rendered intoxicated.

127.    On April 29, 2016, defendant TAP ROOM, its agents, servants and/or employees continued to serve WALSH after said WALSH was rendered intoxicated.

128.    On April 29, 2016, defendant TAP ROOM, its agents, servants and/or employees continued to serve WALSH after said WALSH was rendered visibly intoxicated.

129.    On April 29, 2016, while at TAP ROOM, WALSH was served intoxicating beverages and/or was illegally sold intoxicating beverages in violation of Section 65 of the Alcoholic Beverage Control Law by said defendant TAP ROOM, its agents, servants and/or employees.

130.    While WALSH was at TAP ROOM, defendant TAP ROOM, its agents, servants and/or employees knew or had reason to know the intoxicated condition of WALSH.

131.    When WALSH was at TAP ROOM, defendant TAP ROOM, its agents, servants and/or employees knew or had reason to know the intoxicated condition of WALSH and that same condition caused him to be aggressive, belligerent, violent, and dangerous.

132.    When WALSH was at the TAP ROOM premises, defendant TAP ROOM, its agents, servants and/or employees knew or had reason to know the intoxicated condition of WALSH and that same condition caused him to be aggressive, belligerent, violent, and dangerous which was a cause of the attack by WALSH and COLAVITO upon MOSCA as complained of herein.

133.    On April 29, 2016, COLAVITO was served alcoholic beverages at TAP ROOM,  by the agents, servants and/or employees of defendant TAP ROOM.

134.    On April 29, 2016  COLAVITO was served by agents, servants and/or employees of defendant TAP ROOM,  such quantities of alcoholic beverages that COLAVITO was rendered intoxicated.

135.    On April 29, 2016,  TAP ROOM,  its agents, servants and/or employees continued to serve COLAVITO after said COLAVITO was rendered intoxicated.

136.    On April 29, 2016, while at TAP ROOM, COLAVITO was served intoxicating beverages and/or was illegally sold intoxicating beverages in violation of Section 65 of the Alcoholic Beverage Control Law by said defendant TAP ROOM, its agents, servants and/or employees.

137.    While COLAVITO was at the premises, defendant TAP ROOM, its agents, servants and/or employees knew or had reason to know the intoxicated condition of COLAVITO.

138.    While COLAVITO was at the premises, defendant TAP ROOM,  its agents, servants and/or employees knew or had reason to know the intoxicated condition of COLAVITO and that same condition caused him to be aggressive, belligerent, violent, and dangerous.

139.    When COLAVITO was at the premises, defendant TAP ROOM,  its agents, servants and/or employees knew or had reason to know the intoxicated condition of COLAVITO and that same condition caused him to be aggressive, belligerent, violent, and dangerous which was a cause of the attack upon MOSCA as complained of herein.

140.    As a result off the foregoing negligence, carelessness and recklessness of the defendants, and as a result of the alcohol served to them as described above herein, COLAVITO and WALSH, did, without provocation, conspire, collude, plan and thereafter attack and viscously assault MOSCA until and beyond when he was rendered unconscious and incapacitated.

141.    As a result off the foregoing negligence, carelessness and recklessness of the defendants, and as a result of the alcohol served to them as described above herein, COLAVITO a member of the New York City Police Department acting under the color of state law and acting in concert with convicted assailant WALSH, intentionally and willfully subjected plaintiff MOSCA to, inter alia, intentional, unlawful and substantial restraint, detention, and assault and battery without just cause in violation of plaintiff MOSCA'S rights under the United States Constitution and 42 USC §1983.

142.    Plaintiff was injured.

143.    Plaintiff was seriously injured.

144.    As a result of the forgoing, plaintiff was rendered permanently injured and is entitled to punitive and compensatory damages from the defendants well in excess$75,000.00.

## SIXTH CAUSE OF ACTION

145.    Plaintiff reiterates and re-alleges all of the above paragraphs as if fully set forth herein again.

146.    On or about April 29, 2016, MXL,  owned the premises.

147.    On or about April 29, 2016, MXL, leased the premises.

148.    On or about April 29, 2016, MXL, rented the premises.

149.    On or about April 29, 2016, MXL, operated the premises.

150.    On or about April 29, 2016, MXL, managed the premises.

151.    On or about April 29, 2016, MXL, leased the premises to TAP ROOM.

152.    On or about April 29, 2016, MXL, and TAP ROOM had a responsibility to provide reasonable and adequate security at the premises.

153.     On and prior to April 29, 2016, MXL, and TAP ROOM knew or should have known that there was a history of dangerous and unlawful activities taking place at the premises, including prior incidents of fights and attacks on patrons at the premises.

154.    On or about April 29, 2016, MXL, and TAP ROOM knew or should have known of the high risk of crime and violence at the premises.

155.    On or about April 29, 2016, MXL and TAP ROOM, failed to provide adequate security to persons lawfully at the premises, including the plaintiff,  despite their knowledge of the high risk of crime /violence at the premises/business/parking lot.

156.    On or about April 29, 2016, plaintiff was a lawful patron on the premises.

157.    As a result off the foregoing negligence, carelessness and recklessness of the defendants TAP ROOM  and MXL to provide adequate security at the premises, COLAVITO and WALSH, did, without provocation, conspire, collude, plan and thereafter attack and viscously assault MOSCA until and beyond when he was rendered unconscious and incapacitated.

158.     As a result off the foregoing negligence, carelessness and recklessness of the defendants TAP ROOM  and MXL to provide adequate security at the premises,

COLAVITO a member of the New York City Police Department acting under the color of state law and acting in concert with convicted assailant WALSH, intentionally and willfully subjected plaintiff MOSCA to, inter alia, false arrest, false imprisonment, intentional, unlawful and substantial restraint, detention, and assault and battery without just cause in violation of plaintiff MOSCA's rights under the United States Constitution and 42 USC §1983.

159.    As a result off the foregoing negligence, carelessness and recklessness of the defendants TAP ROOM  and MXL failed to render any medical assistance to the plaintiff whatsoever despite the fact that it was known or should have been known to the TAP ROOM and MXL, that plaintiff remained unconscious for several minutes and was in emergent need of medical aid and assistance.

160.    TAP ROOM  and MXL's conduct prior to, during and subsequent to the brutal attack on plaintiff in MOSCA, in continuing to serve alcohol to the assailants and cohorts and promote a festive celebration of the attack while the plaintiff remained in dire need of medical treatment,   was extreme, outrageous, and utterly intolerable in a civilized community; conduct which exceeded all reasonable bounds of decency.

161.    Defendant TAP ROOM  and MXL's conduct, described above, was intended to and did cause severe emotional distress to plaintiff.

162.    TAP ROOM  and MXL's conduct in promoting such a heinous atmosphere at the bar, was witnessed by numerous members of the plaintiff's community and captured on surveillance video for the whole world to see, causing severe emotional distress to Plaintiff.

163.    Plaintiff was injured.

164.    Plaintiff was seriously injured.

165.    As a result of the forgoing, plaintiff was rendered permanently injured and is entitled to punitive and compensatory damages from the defendants well in excess of $75,000.00.

WHEREFORE, Plaintiff demands the following relief jointly and severally against all of the Defendants:

(a)    Compensatory damages in the amount to be determined by a jury;

(b)     Punitive damages in an amount to be determined by a jury;

(c)    The convening and empanelling of a jury to consider the merits of the claims herein;

(d)     Costs and interest and attorney' s fees;

Yours, etc.

LIPSIG, SHAPEY, MANUS & MOVERMAN, P.C.

By
MARC E. FREUND
Attorney for Plaintiff
40 Fulton Street
New York, NY 10038-1850
(212) 285-3300

## VERIFICATION

MARC E. FREUND, an attorney duly admitted to practice law in the State of New York, affirms the following under penalty of perjury:

I am a member with the law firm of LIPSIG, SHAPEY, MANUS & MOVERMAN, P.C., attorneys for the plaintiff herein.

I have read the foregoing Verified Complaint and know the contents thereof, and upon information and belief your affirmant believes the matters therein alleged to be true.

The reason this verification is made by your affirmant and not the plaintiff herein is that plaintiff herein reside in a county other than that in which your affirmant maintains his offices.

The source of your affirmant's information and the grounds of his belief are communications, papers, reports and investigations contained in the file.

DATED:  New York, New York
        July 20, 2017

_____
MARC  E. FREUND

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

VINCENT MOSCA,

                                        Plaintiff,

        -against-

THE CITY OF NEW YORK, THE NEW YORK CITY
POLICE DEPARTMENT, FRANCESCO COLAVITO,
TAPPED 1010 INC., and MXL LLC,

                                        Defendants.

-------------------------------------------------------------------X

**ANSWER WITH
AFFIRMATIVE
DEFENSES AND
CROSS CLAIMS**

Docket No.: 17-cv-04327

Judge
Sandra J. Feuerstein

Magistrate Judge
Steven I. Locke

Defendant, **FRANCESO COLAVITO**, by and through his attorneys, **PENINO &
MOYNIHAN, LLP** as and for his Answer to the Complaint herein, sets forth the
following:

## PRELIMINARY STATEMENT

1.      Denies the allegations contained in paragraphs "1", "2", "3", "4", "5" and
"6" of the complaint.

## JURISDICTION AND VENUE

2.      Denies knowledge or information sufficient to form a belief as to the truth
of the allegations set forth in paragraphs "7", "8" and "9" of the complaint and respectfully
refers all questions of law and ultimate fact to the trial court during the course of trial.

## JURY TRIAL DEMAND

3.      Denies knowledge or information sufficient to form a belief as to the truth
of the allegations set forth in paragraph "10" of the complaint and respectfully refers all
questions of law and ultimate fact to the trial court during the course of trial.

## PARTIES

4.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs "11" and "12" of the complaint and respectfully refers all questions of law and ultimate fact to the trial court during the course of trial.

5.      Denies the allegations contained in paragraph "13" of the complaint and respectfully refers all questions of law and ultimate fact to the trial court during the course of trial.

6.      Denies the allegations contained in paragraph "14" of the complaint.

7.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs "15" and "16" of the complaint and respectfully refers all questions of law and ultimate fact to the trial court during the course of trial.

## NOTICE OF CLAIM

8.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs "17", "18", "19", "20" and "21" of the complaint and respectfully refers all questions of law and ultimate fact to the trial court during the course of trial.

## STATEMENT OF FACTS

9.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "22" of the complaint and respectfully refers all questions of law and ultimate fact to the trial court during the course of trial.

10.      Denies the allegations contained in paragraphs "23", "24" and "25" of the complaint.

11.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "26" of the complaint.

12.     Denies the allegations contained in paragraphs "27", "28", "29", "30", "31", "32", "33", "34", "35", "36", "37", "38", "39", "40", "41", "42" and "43" of the complaint.

13.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs "44", "45", "46" and "47" of the complaint and respectfully refers all questions of law and ultimate fact to the trial court during the course of trial.

14.     Denies the allegations contained in paragraph "48" of the complaint.

15.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "49" of the complaint.

16.     Denies the allegations contained in paragraph "50" of the complaint.

17.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs "51", "52", "53" and "54" of the complaint.

18.     Denies the allegations contained in paragraphs "55" and "56" of the complaint.

19.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "57" of the complaint.

20.     Denies the allegations contained in paragraphs "58", "59" and "60" of the complaint.

## AS AND FOR AN ANSWER
## TO THE FIRST CAUSE OF ACTION

21.     Repeats and reiterates the answers to each and every allegation contained in paragraphs "1" through "61" of the complaint as if more fully set forth at length herein.

22.     Denies the allegations contained in paragraphs "62", "63", "64", "65" and "66" of the complaint.

23.     Denies the allegations contained in paragraph "67" of the complaint and respectfully refers all questions of law and ultimate fact to the trial court during the course of trial.

24.     Denies the allegations contained in paragraphs "68", "69", "70", "71", "72", "73" and "74" of the complaint.

## AS AND FOR AN ANSWER
## TO THE SECOND CAUSE OF ACTION

25.     Repeats and reiterates the answers to each and every allegation contained in paragraphs "1" through "75" of the complaint as if more fully set forth at length herein.

26.     Admits the allegations contained in paragraph "76" of the complaint to the extent as to employment but sets forth that he was off duty at the time of the alleged event.

27.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs "77", "78", "79", "80", "81", "82" and "83" of the complaint.

28.     Denies the allegations contained in paragraphs "84", "85", "86", "87", "88", "89", "90", "91", "92", "93" and "94" of the complaint.

## AS AND FOR AN ANSWER
## TO THE THIRD CAUSE OF ACTION

29.     Repeats and reiterates the answers to each and every allegation contained in paragraphs "1" through "95" of the complaint as if more fully set forth at length herein.

30.     Denies the allegations contained in paragraphs "96", "97", "98", "99", "100", "101", "102", "103", "104", "105", "106", "107", "108", "109", "110", "111" and "112" of the complaint.

## AS AND FOR AN ANSWER
## TO THE FOURTH CAUSE OF ACTION

31.     Repeats and reiterates the answers to each and every allegation contained in paragraphs "1" through "113" of the complaint as if more fully set forth at length herein.

32.     Denies the allegations contained in paragraphs "114", "115", "116", "117" and "118" of the complaint.

## AS AND FOR AN ANSWER
## TO THE FIFTH CAUSE OF ACTION

33.     Repeats and reiterates the answers to each and every allegation contained in paragraphs "1" through "118" of the complaint as if more fully set forth at length herein.

34.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs "119", "120", "121", "122", "123", "124", "125", "126", "127" and "128" of the complaint.

35.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs "129", "130" and "131" of the complaint and respectfully refers all questions of law and ultimate fact to the trial court during the course of trial.

36.     Denies the allegations contained in paragraph "132" of the complaint.

37.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "133" of the complaint and respectfully refers all questions of law and ultimate fact to the trial court during the course of trial.

38.     Denies the allegations contained in paragraphs "134", "135", "136", "137", "138", "139", "140", "141", "142, "143" and "144" of the complaint.

## AS AND FOR AN ANSWER
## TO THE SIXTH CAUSE OF ACTION

39.     Repeats and reiterates the answers to each and every allegation contained in paragraphs "1" through "145" of the complaint as if more fully set forth at length herein.

40.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs "146", "147", "148", "149", "150", "151", "152", "153", "154", "155" and "156" of the complaint and respectfully refers all questions of law and ultimate fact to the trial court during the course of trial.

41.     Denies the allegations contained in paragraphs "157" and "158" of the complaint.

42.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "159" of the complaint.

43.     Denies the allegations contained in paragraphs "160" and "161" of the complaint.

44.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "162" of the complaint.

45.     Denies the allegations contained in paragraphs "163", "164", "165" and "A", "B", "C" and "D" of the "WHEREFORE" clause of the complaint.

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

46.     Upon information and belief, the answering defendant has no liability to plaintiff by reason of plaintiff having undertaken conduct such as to assume the risk of all that conduct complained of by plaintiff having flowed there from.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

47.     Upon information and belief, any damage or damages sustained by the plaintiff herein were not caused by the wrongdoing on the part of the answering defendant,

its servants, agents or employees, but were caused solely by the wrongdoing of plaintiff and that such conduct requires diminution of any award, verdict or judgment that plaintiff may recover against said answering defendant.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

48. Any award to the plaintiffs for economic loss shall be reduced by the amount of economic loss received by collateral sources.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

49. Plaintiffs have failed to take the necessary measures to mitigate the damages complained of herein.

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

50. Upon information and belief, in the event that a judgement is rendered against the answering defendant, he shall not be responsible for more than his proportionate share of liability.

## AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

51. Plaintiff is not permitted to recover under any other theories brought forth in the Summons and Complaint due to the doctrine of unclean hands as plaintiff provoked the alleged incident.

## AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

52. That at the time complained of answering defendant was off duty and in compliance with New York Police Department protocol and regulations.

## AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE

53. That the instant action is barred in that the plaintiff has commenced a prior and now pending action in State Court seeking the same relief as is sought herein as against the answering defendant.

## AS AND FOR A NINTH AFFIRMATIVE DEFENSE

54.     Plainitff has failed to join an indispensable necessary party.  The plaintiff has failed to join Ian Walsh, who is an indispensable necessary party to this action.

## AS AND FOR A FIRST CROSS-CLAIM AGAINST
## CO-DEFENDANT THE CITY OF NEW YORK

55.     Although the answering defendant has denied the allegations of the plaintiff with respect to any wrongdoing on the part of the said defendant, nevertheless, in the event that there is a verdict or judgment in favor of the plaintiff against the answering defendant, then, in that event, the said defendant demands judgment over and against the aforementioned co-defendant by reason of their wrongful conduct being primary and/or active while any wrongdoing on the part of the answering defendant, if any, was secondary and/or passive and the indemnity is to be full and complete.

## AS AND FOR A SECOND CROSS-CLAIM AGAINST
## CO-DEFENDANT THE CITY OF NEW YORK

56.     That although the answering defendant has denied the allegations of the plaintiff with respect to any wrongdoing on the part of the said defendant, nevertheless, if it is found that the answering defendant is liable to the plaintiff and if complete indemnity is not granted in furtherance of the first cross-claim hereinabove, then the answering defendant is, nevertheless, entitled to contribution from the co-defendant, above-named in proportion to the relative degrees of wrongdoing as between the parties.

## AS AND FOR A FIRST CROSS-CLAIM AGAINST
## CO-DEFENDANT THE NEW YORK
## CITY POLICE DEPARTMENT

57.     Although the answering defendant has denied the allegations of the plaintiff with respect to any wrongdoing on the part of the said defendant, nevertheless, in the event that there is a verdict or judgment in favor of the plaintiff against the answering defendant, then, in that event, the said defendant demands judgment over and against the

aforementioned co-defendant by reason of their wrongful conduct being primary and/or active while any wrongdoing on the part of the answering defendant, if any, was secondary and/or passive and the indemnity is to be full and complete.

### AS AND FOR A SECOND CROSS-CLAIM AGAINST CO-DEFENDANT THE NEW YORK CITY POLICE DEPARTMENT

58. That although the answering defendant has denied the allegations of the plaintiff with respect to any wrongdoing on the part of the said defendant, nevertheless, if it is found that the answering defendant is liable to the plaintiff and if complete indemnity is not granted in furtherance of the first cross-claim hereinabove, then the answering defendant is, nevertheless, entitled to contribution from the co-defendant, above-named in proportion to the relative degrees of wrongdoing as between the parties.

### AS AND FOR A FIRST CROSS-CLAIM AGAINST CO-DEFENDANT TAPPED 1010 INC.

59. Although the answering defendant has denied the allegations of the plaintiff with respect to any wrongdoing on the part of the said defendant, nevertheless, in the event that there is a verdict or judgment in favor of the plaintiff against the answering defendant, then, in that event, the said defendant demands judgment over and against the aforementioned co-defendant by reason of their wrongful conduct being primary and/or active while any wrongdoing on the part of the answering defendant, if any, was secondary and/or passive and the indemnity is to be full and complete.

### AS AND FOR A SECOND CROSS-CLAIM AGAINST CO-DEFENDANT TAPPED 1010 INC.

60. That although the answering defendant has denied the allegations of the plaintiff with respect to any wrongdoing on the part of the said defendant, nevertheless, if it is found that the answering defendant is liable to the plaintiff and if complete indemnity is not granted in furtherance of the first cross-claim hereinabove, then the answering

defendant is, nevertheless, entitled to contribution from the co-defendant, above-named in proportion to the relative degrees of wrongdoing as between the parties.

## AS AND FOR A FIRST CROSS-CLAIM AGAINST
## CO-DEFENDANT MXL LLC

61.    Although the answering defendant has denied the allegations of the plaintiff with respect to any wrongdoing on the part of the said defendant, nevertheless, in the event that there is a verdict or judgment in favor of the plaintiff against the answering defendant, then, in that event, the said defendant demands judgment over and against the aforementioned co-defendant by reason of their wrongful conduct being primary and/or active while any wrongdoing on the part of the answering defendant, if any, was secondary and/or passive and the indemnity is to be full and complete.

## AS AND FOR A SECOND CROSS-CLAIM AGAINST
## CO-DEFENDANT MXL LLC

62.    That although the answering defendant has denied the allegations of the plaintiff with respect to any wrongdoing on the part of the said defendant, nevertheless, if it is found that the answering defendant is liable to the plaintiff and if complete indemnity is not granted in furtherance of the first cross-claim hereinabove, then the answering defendant is, nevertheless, entitled to contribution from the co-defendant, above-named in proportion to the relative degrees of wrongdoing as between the parties.

**WHEREFORE**, the defendant, **FRANCESCO COLAVITO,** demands judgment dismissing the Complaint herein as to said defendant and further demands that the ultimate rights of the defendant be determined in this action and that the answering defendant has judgment over and against the co-defendants, **THE CITY OF NEW YORK, THE NEW YORK CITY POLICE DEPARTMENT, TAPPED 1010 INC., and MXL LLC,** for all, or alternatively that portion of any verdict or judgment which may be obtained by plaintiff

against said defendant, to the extent that the responsibility of the aforesaid co-defendants

contributed hereto, together with the costs and disbursements of this action.

DATED:   White Plains, New York
           August 16, 2017

                            **Yours, etc.,**

                            **PENINO & MOYNIHAN, LLP**

**BY:**_____
                 **STEPHEN J. PENINO (5704SP)**
                 Attorneys for Defendant
                 **FRANCESCO COLAVITO**
                 1025 Westchester Avenue, Suite 403
                 White Plains, New York 10604
                 (914) 949-6996
                 Our File No.: 12-3211

TO:    **MARC E. FREUND**
       Attorneys for the Plaintiff
       40 Fulton Street
       New York, New York 10038-1850
       (212) 285-3300

       **THE CITY OF NEW YORK**

       **THE NEW YORK CITY POLICE DEPARTMENT**

       **TAPPED 1010 INC.**

       **MXL LLC.**