```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
VINCENT MOSCA,

                        Plaintiff,

    -against-                                    REPORT AND
                                                 RECOMMENDATION
THE CITY OF NEW YORK, THE NEW YORK               17-CV-4327 (SJF)(SIL)
CITY POLICE DEPARTMENT, FRANCESCO
COLAVITO, TAPPED 1010 INC., and MXL LLC,

                        Defendants.
----------------------------------------------------------------x
```

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court, on referral in this 42 U.S.C. § 1983 civil rights litigation from the Honorable Sandra J. Feuerstein for Report and Recommendation, is Defendants' the City of New York (the "City") and the New York City Police Department (the "NYPD" or the "Police Department") (together the "Municipal Defendants") motion to dismiss Plaintiff Vincent Mosca's ("Mosca" or "Plaintiff") Complaint as to them. *See* Motion to Dismiss, Docket Entry ("DE") [28]; *see also* Complaint ("Compl."), DE [1]. On July 21, 2017, Plaintiff commenced the instant action alleging: (i) violations of the First, Fourth and Fourteenth Amendments of the U.S. Constitution under 42 U.S.C. § 1983; and (ii) assorted state-law claims. *See id.* On November 9, 2017, the Municipal Defendants filed the instant motion. *See* DE [28]. On November 29, 2017, Judge Feuerstein referred the motion to this Court for a Report and Recommendation as to whether it should be granted. *See* DE [28, 36]. For the reasons set forth herein, the Court respectfully recommends that

1

the motion be granted in its entirety and that the Complaint as against the Municipal Defendants be dismissed without prejudice and with leave to amend.

## I. STATEMENT OF RELEVANT FACTS

The following facts, set forth in the Complaint and the attached exhibits, are presumed true for purposes of the Municipal Defendants' motion.

Defendant Francesco Colavito's ("Colavito") and non-party Ian Walsh's ("Walsh") purported attack on Plaintiff Mosca sparks the instant action. *See generally* Compl. On April 29, 2016, Plaintiff visited the Tap Room, which is a bar located in Massapequa, New York, where he met a visibly intoxicated Colavito and Walsh. *See id.* ¶¶ 26-27. Almost immediately, Colavito, who at the time was an off-duty probationary NYPD officer, and Walsh began harassing Plaintiff. *See id.* Fearful, Mosca exited the bar and retreated into an adjacent parking lot. *See id.* However, Colavito and Walsh followed. *See id.*

In the parking lot, Colavito confronted Plaintiff and, while showing his NYPD badge, pronounced that he "was with the NYPD, [and that Plaintiff was] not going anywhere." *Id.* ¶¶ 30, 35. Walsh thereafter punched Mosca in the back of his head and "in concert with Colavito" pummeled Plaintiff into unconsciousness. *See id.* ¶ 37. The pair returned inside the bar and "openly celebrated" the bludgeoning for approximately ten minutes until a good Samaritan eventually assisted Mosca. *Id.* ¶¶ 39, 47. As a result of the incident, Plaintiff allegedly suffered a traumatic brain injury, multiple facial fractures which required reconstructive facial surgery, and permanent psychological injuries. *See id.* ¶ 48.

Walsh was ultimately arrested, charged with assault and pleaded guilty to an unidentified misdemeanor. *See id.* ¶ 52.

Colavito, in violation of internal guidelines, never reported the incident to the NYPD. *See id.* ¶ 50. However, within a few weeks of the incident, the NYPD received a copy of the Tap Room's surveillance video which purportedly depicts the attack. *See id.* ¶ 54. Despite the video evidence, Colavito was employed by the NYPD for "more than one full year after the assault" until he was eventually terminated. *See id.* ¶¶ 56-57. Plaintiff alleges that this delay highlights the systemic failure by the NYPD to screen similarly situated officers who are unfit for duty and present a danger to the public. *See id.* ¶ 59.

## II. PROCEDURAL HISTORY

Based on the above, Plaintiff commenced the instant action alleging causes of action under 42 U.S.C. § 1983 for: (1) false arrest; (2) excessive force; (3) conspiracy; and (4) failure to train against the Municipal Defendants. *See* Compl. Further, the Complaint asserts state-law claims against the Municipal Defendants for: (1) negligent hiring and retention; (2) negligent and intentional infliction emotional distress; and (3) negligence. In addition, Plaintiff asserts claims for assault and battery and violation of New York's Dram Shop Act against Defendants Colavito, XML, Inc. ("XML") and Tapped 1010 Inc ("Tapped").[1] *See id.* Colavito, Tapped and the Municipal Defendants subsequently interposed answers with Colavito asserting

---

[1] Tapped is alleged to be the tenant of MXL which, in turn, is alleged to own the subject premises. *See* Compl. ¶¶ 15-16.

3

crossclaims against the Municipal Defendants.[2] *See* DE [16, 18, 19]. Thereafter, the Municipal Defendants moved pursuant to the Federal Rule of Civil Procedure (Fed. R. Civ. P.) 12(b)(6) to dismiss for failure to state a claim, *see* DE [28], and Judge Feuerstein referred the motion to this Court for Report and Recommendation. *See* DE [36]. Plaintiff and Colavito oppose the motion. *See* DE [30, 31]. However, Mosca withdraws his claims against the NYPD as he concedes that it is a non-suable entity. *See* Plaintiff's Memorandum in Opposition ("Pl.'s Opp."), DE [30], at 1; *see also Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007). Further, as the Municipal Defendants fail to move with respect to Colavito's crossclaims, the Court does not address them.

### III.  LEGAL STANDARD

While ostensibly seeking relief pursuant to Rule 12(b)(6), the Court concludes that, as the Municipal Defendants have already filed their Answer, the motion to dismiss is properly considered under Rule 12(c). However, for the purposes of this motion, as both apply the same standard, this is a distinction without difference. *See Cleveland v. Caplaw Enterprises*, 448 F.3d 518, 521 (2d Cir. 2006) ("The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim."). Rule 12(c) allows for either party to move for judgment on the pleadings, "after the pleadings are closed but within such time as not to delay the trial." Fed. R. Civ. P. 12(c). Under both Rules 12(b)(6) and 12(c), to survive a motion to dismiss a complaint must set forth "enough

---

[2] Defendant MXL has failed to answer or otherwise respond to the Complaint.

4

facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). A pleading "that offers only 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966).

In reviewing a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See LaFaro v. New York Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009). In deciding a motion to dismiss the complaint, the court may consider:

> (1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as an exhibit or incorporated . . . by reference; (3) matters of which judicial notice may be taken; and (4) documents upon whose terms and effect the complaint relies heavily, *i.e.,* documents that are "integral" to the complaint.

*Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003) (internal citation omitted); *see also Miotto v. Yonkers Pub. Sch.*, 534 F. Supp. 2d 422, 425 (S.D.N.Y. 2008) ("[I]n assessing the legal sufficiency of a claim, the court may consider only the

facts alleged in the complaint, and any document attached as an exhibit to the complaint or incorporated in it by reference.").

IV. **DISCUSSION**

Applying the standards outlined above, and for the reasons set forth herein, the Court respectfully recommends that the Municipal Defendants' motion to dismiss the Complaint be granted in its entirety and without prejudice. Initially, the Municipal Defendants seek to dismiss Plaintiff's 42 U.S.C. § 1983 claims for: (i) failure to allege that Colavito was acting under the color of state law during the subject incident; and (ii) that the Complaint fails to plausibly assert a deliberate indifference cause of action. *See* Municipal Defendants' Memorandum of Law ("Defs.' Mem."), DE [29]. As to the state-law claims, the Municipal Defendants argue, *inter alia*, that the Complaint fails to plausibly allege: (1) that the City is liable for under the doctrine of *respondeat superior*; (2) negligent hiring and retention for failure to assert any prior similar misconduct; (3) negligent and intentional infliction of emotional distress as traditional tort theories of recovery are available; and (4) negligence as Colavito's actions were intentional and deliberate. *See id.* The Court considers each argument in turn.[3]

---

[3] In opposition to the motion to dismiss, Plaintiff annexes a purported copy of the Tap Room's surveillance video that purportedly depicts the subject incident. *See* DE [30-2]. In this Circuit, courts have considered video evidence in conjunction with 12(b)(6) motions where the tape has either been: (1) incorporated into the pleadings by reference; (2) offered by the plaintiff as part of its pleadings; or (3) the plaintiff has incorporated the video by reference after the defendant introduced the video. *Garcia v. Does*, 779 F.3d 84, 88 (2d Cir. 2015); *see also Gersbacher v. City of New York*, 134 F. Supp. 3d 711, 720 (S.D.N.Y. 2015). Here, Mosca has not offered the video as part of his pleadings but does reference a surveillance tape that depicts the subject incident. *See, e.g.*, Compl. ¶ 49. However, the Court declines to consider the video for the purposes of the instant motion as it is not integral to the analysis of the allegations against the Municipal Defendants. *See Leibovitz v. City of New York*,

### A. 42 U.S.C. § 1983

Initially, the Court concludes that Mosca fails to plausibly state a 42 U.S.C. § 1983 claim against the Municipal Defendants. Here, the Complaint's Section 1983 claim against the Municipal Defendants is premised under a municipal theory of liability. *See* Compl. ¶¶ 95-112. 42 U.S.C. § 1983 provides, in relevant part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983. Although Section 1983 itself does not create substantive rights, it does provide "a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). To prevail on a claim arising under 42 U.S.C. § 1983, a plaintiff must demonstrate: "(1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state law." *Hawkins v. Nassau Cty. Corr. Facility*, 781 F. Supp. 2d 107, 111 (E.D.N.Y. 2011) (citing 42 U.S.C. § 1983).

#### i. Color of State Law

As a preliminary matter, Mosca sufficiently asserts that Colavito acted under the color of state law as to invoke the protections of 42 U.S.C. § 1983. "The purpose of Section 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to

---

No. 14-cv-7106, 2018 WL 1157872, at *6 (E.D.N.Y. Mar. 2, 2018) (declining to consider, among other things, video evidence that was not integral to allegations made in the complaint).

victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161, 112 S.Ct. 1827, 1829 (1992). To act under color of state law for purposes of 42 U.S.C. § 1983, the defendant must "have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49, 108 S.Ct. 2250, 2255 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043 (1941)). "However, not all acts performed by public employees are under color of state law: 'acts of officers in the ambit of their personal pursuits are plainly excluded.'" *Gleason v. Scoppetta*, 566 F. App'x 65, 68 (2d Cir. 2014) (quoting *Screws v. United States*, 325 U.S. 91, 111, 65 S.Ct. 1031, 1040 (1945)).

"[T]here is no bright line test for distinguishing personal pursuits from activities taken under color of law." *Pitchell v. Callan*, 13 F.3d 545, 548 (2d Cir. 1994) (internal quotation marks omitted). Where the defendant is an off-duty police officer, "courts look to the nature of the officer's act, not simply his duty status." *Id.* Liability under Section 1983 "may attach where an off-duty officer 'invokes the real or apparent power of the police department.'" *Wong v. Yoo*, 649 F.Supp.2d 34, 54 (E.D.N.Y. 2009) (quoting *Pitchell*, 13 F.3d at 548); *see also Rivera v. La Porte*, 896 F.2d 691, 695 (2d Cir. 1990) ("The off-duty status of an arresting officer does not mean that he is not acting under color of law."). In analyzing whether a police officer acted under the color of law, courts consider, among other things, whether the officer:

> (1) was off-duty; (2) identified himself as an officer of the law; (3) was in uniform; (4) was authorized to make an arrest at the time; (5) was carrying handcuffs; (6) was carrying any weapons; (7) flashed a police

badge; and (8) placed the plaintiff under arrest or otherwise detained her.

*Cotz v. Mastroeni*, 476 F.Supp.2d 332, 372 (S.D.N.Y. 2007).

Consistent with these factors, courts have found that an off-duty officer who engaged in a private altercation but also invoked the real or apparent power of the police department acted under the color of state law. In *Davis v. Lynbrook Police Dep't*, the court denied summary judgment on the issue of whether an off-duty officer who initiated a traffic stop was acting under the color of state law. *See* 224 F. Supp. 2d 463, 475 (E.D.N.Y. 2002). Significantly, the off-duty officer was dressed in civilian clothes and immediately prior to the stop was at local bar drinking for approximately four hours. *See id.* The Court concluded that, while the officer's pursuit began as purely personal in nature, the character of the officer's conduct changed when he identified himself as a police officer and flashed what appeared to be a badge thereby invoking the "real or apparent power of the police department." *See id.* As a result, the Court concluded that a reasonably jury could rationally conclude that the off-duty officer was acting under the color of state law. *See id.*

Here, the nature of Colavito's alleged conduct, like the off-duty officer in *Davis*, changed when he invoked his apparent authority as a police officer. Specifically, the Complaint alleges that Colavito: (1) identified himself as an officer of the law; (2) flashed his badge; and (3) detained Plaintiff when he stated that "I'm with the NYPD, you're not going anywhere." *See* Compl. ¶ 35. Assuming these allegations to be true, it is reasonable to conclude that Colavito used his authority as an NYPD officer to facilitate his conduct. Accordingly, Mosca has plausibly alleged that

9

Colavito acted under the color of state law and proceeds to consider whether municipal liability is otherwise properly stated.

### ii. *Municipal Liability*

Turning to the substance of Mosca's municipal liability cause of action, the Court concludes that the Complaint fails to state a claim. A municipality may not be held liable under Section 1983 on a *respondeat superior* theory of liability. *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91, 98 S. Ct. 2018, 2036 (1978); *see also Genovese v. Town of Southampton*, 921 F. Supp. 2d 8, 24 (E.D.N.Y. 2013) ("[A] municipal entity may only be held liable where the entity itself commits a wrong; a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.") (internal quotation omitted). To state a claim for municipal liability, a plaintiff must allege "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Torraco v. Port Authority of New York & New Jersey*, 615 F.3d 129, 140 (2d Cir. 2010) (citing *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)); *see Norton v. Town of Islip*, 97 F. Supp. 3d 241, 264 (E.D.N.Y. 2015), *reconsideration denied*, 12 CV 4463, 2016 WL 264930 (E.D.N.Y. Jan. 21, 2016), *aff'd*, 16-490-CV, 2017 WL 440131 (2d Cir. Feb. 1, 2017) (citing *Monell*, 436 U.S. at 690-91, 98 S. Ct. at 2036; *Lamont v. City of New York*, 12-CV-2478, 2014 WL 4829328, at *7 (E.D.N.Y. Sept. 29, 2014)).

Moreover, though Section 1983 does not require application of a heightened pleading standard to allege municipal liability, a complaint does not "suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1937 (alteration in original) (internal citations and quotation

marks omitted); *see Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168, 113 S. Ct. 1160, 1163 (1993). Thus, Plaintiff cannot simply allege the existence of a policy and/or custom without putting forth "facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." *Santos,* 847 F. Supp. 2d at 576 (citing *Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir. 1993), *overruled on other grounds by Leatherman,* 507 U.S. at 164, 113 S. Ct. at 1163-64)). Simply asserting that the alleged violations could not have occurred unless supervisors and policy makers tolerated them is insufficient to demonstrate the existence of such a custom unless the assertion is clearly supported by an articulated factual context. *See Missel v. Cnty. of Monroe,* 351 F. App'x. 543, 545 (2d Cir. 2009); *Duncan v. City of New York,* 11-CV-3826, 2012 WL 1672929, at *3 (E.D.N.Y. May 14, 2012) (holding that "boilerplate statements" claiming that the city has a custom of making and tolerating false arrests and of using excessive force "are insufficient to state a claim of municipal liability under *Monell*"); *Bradley v. City of New York,* 08-CV-1106, 2009 WL 1703237, at *3 (E.D.N.Y. June 18, 2009) ("The Complaint's conclusory, boilerplate language – that the City 'fail[ed] to adequately discipline and supervise' employees and 'fail[ed] to promulgate and put into effect appropriate rules and regulations applicable to the duties and behavior' of its employees—is insufficient to raise an inference of the existence of a custom or policy, let alone that such a policy caused Plaintiff to be arrested without probable cause.") (internal citations omitted).

A municipality may also be held liable where it demonstrates a "manifest failure to train, supervise or discipline [its] employees." *Mahan v. City of New York*, No. 00-CV-6645, 2005 WL 1677524, at *3 (E.D.N.Y. July 19, 2005) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 823, 105 S. Ct. 2427, 2436 (1985)). As described by the Supreme Court:

> [D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. Thus, when [municipal] policymakers are on actual or constructive notice that a particular omission in their training program causes [municipal] employees to violate citizens' constitutional rights, the [municipal entity] may be deemed deliberately indifferent if the policymakers choose to retain that program.

*Connick v. Thompson*, 563 U.S. 51, 62, 131 S. Ct. 1350, 1360 (2011) (internal citations omitted); *see also Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) ("We have held that municipal inaction such as the persistent failure to discipline subordinates who violate civil rights could give rise to an inference of an unlawful municipal policy or ratification of unconstitutional conduct within the meaning of *Monell*."). As a result, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62, 131 S. Ct. at 1360. Moreover, where a municipal entity has a training program, a plaintiff must identify a specific deficiency in the program that is "closely related to the ultimate injury, such that it 'actually caused' the constitutional deprivation." *Wray v. City of New York*, 490 F.3d 189, 196 (2d Cir. 2007) (citing *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 129 (2d Cir.2004)).

Applying these standards, Mosca has failed to state a claim for municipal liability under Section 1983. Plaintiff alleges that the Municipal Defendants were deliberately indifferent to the need to properly screen potential NYPD police officers that "pose a serious threat of danger to the general public." *See* Compl. ¶ 106. However, the Complaint is devoid of any allegations of prior similar constitutional violations. Therefore, Plaintiff cannot plausibly allege that the Municipal Defendants acquired sufficient actual or constructive notice as to be deliberately indifferent as to the need for further screening of potential NYPD employees. *See Connick*, 563 U.S. at 62, 131 S. Ct. at 1360 ("Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."). Further, the Complaint fails to allege any inadequacies—specific or general—in the NYPD's existing training program. *See Wray v. City of New York*, 490 F.3d at 196. Instead, it appears that Mosca attempts to impermissibly infer a policy from the alleged single violation of its own civil rights. *See Anderson v. City of New York*, 657 F. Supp. 1571, 1574 (S.D.N.Y. 1987) ("Plaintiff cannot infer a policy from the alleged violation of his own civil rights."). Therefore, at most, Plaintiff has identified an isolated incident which is insufficient to state a claim for municipal liability. *See Tuttle*, 471 U.S. at 814, 105 S. Ct. at 2431 ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*."). Accordingly, the Court recommends

that the Municipal Defendants' motion to dismiss Plaintiff's Section 1983 claims be granted as to them.[4]

### B. **State-Law Claims**

Turning to Plaintiff's state-law claims, the Court concludes that they similarly fail as a matter of law. Initially, the Court notes that Plaintiff's opposition fails to address the Municipal Defendants' arguments for dismissal of the state-law claims. Therefore, these claims are deemed abandoned as against the Municipal Defendants. *See D.C. by Conley v. Copiague Union Free Sch. Dist.*, No. 16-cv-4546, 2017 WL 3017189, at *10 (E.D.N.Y. July 11, 2017) (citing *Tamir v. Bank of N.Y. Mellon*, No. 12-cv-4780, 2013 WL 4522926, at *2 (E.D.N.Y. Aug. 27, 2013) ("Plaintiff has failed to provide any response to Defendants' plausible arguments, and, therefore, the court deems the . . . claim abandoned.")). However, for the sake of completeness, the Court proceeds to consider the merits of Mosca's state-law claims.

#### i. *Respondeat Superior*

Here, the Court concludes that the City is not vicariously liable based on Colavito's allegedly tortious conduct. Initially, the Court notes that the state-law

---

[4] While not specifically alleged in the Complaint, Plaintiff's opposition references 42 U.S.C. §§ 1981 and 1985. *See* Pl.'s Opp. at 5. To the extent that the Complaint alleges municipal liability under Sections 1981 and 1985, those claims are similarly deficient for failure to plausibly allege the existence of a municipal policy or custom. *See Owens v. Hass*, 601 F.2d 1242, 1247 (2d Cir. 1979), *cert. denied sub nom. County of Nassau v. Owens*, 444 U.S. 980, 100 S.Ct. 483 (1979) (finding that a municipal policy or custom is a prerequisite for liability as against a municipality under Section 1985); *see also Patterson v. Cty. of Oneida*, N.Y., 375 F.3d 206, 226 (2d Cir. 2004) (finding that a Section 1981 claim requires that the challenged acts were performed pursuant to a municipal policy or custom). Further, as Mosca does not plausibly allege the existence of a municipal policy or custom, he similarly fails to assert that the Municipal Defendants were the proximate cause of his injuries. *See Cash v. Cty. of Erie*, 654 F.3d 324, 342 (2d Cir. 2011) (recognizing that proximate cause fairly describes a plaintiff's causation burden with respect to a municipal liability claim under 42 U.S.C. § 1983); *see also H.H. v. City of New York*, No. 11-cv-4905, 2017 WL 3396434, at *9 (E.D.N.Y. Aug. 7, 2017).

14

*respondeat superior* inquiry is distinct from the Section 1983 color of state law analysis. *DeVito v. Barrant*, No. 03-cv-1927, 2005 WL 2033722, at *7 (E.D.N.Y. Aug. 23, 2005). It is well-established that an employer is vicariously liable for a tort committed by his servant while acting within the scope of his employment. *Krynski v. Chase*, 707 F. Supp. 2d 318, 329 (E.D.N.Y. 2009) (internal citations omitted). To determine whether an action falls within the scope of employment, New York state courts consider five factors:

> (1) the connection between the time, place and occasion for the act; (2) the history of the relationship between the employer and employee as spelled out in actual practice; (3) whether the act is one commonly done by such an employee; (4) the extent of departure from normal methods of performance; and (5) and whether the specific act was one that the employer could reasonably have anticipated.

*Mingo v. United States*, 274 F. Supp. 2d 336, 346 (E.D.N.Y. 2003). In the context of vicarious liability, it is not determinative that the officer may have flashed his badge or identified himself as a police officer. *See Mahmood v. City of New York*, No. 01 Civ. 5899, 2003 WL 21047728, at *2–3 (S.D.N.Y. May 8, 2003). Where a police officer's "conduct is brought on by a matter wholly personal in nature, the source of which is not job-related, his actions cannot be said to fall within the scope of his employment." *See Wahhab v. City of New York*, 386 F. Supp. 2d 277, 290 (S.D.N.Y. 2005) (quoting *Stavitz v. City of New York*, 98 A.D.2d 529, 471 N.Y.S.2d 272, 274 (1st Dep't 1984)).

Here, the Complaint fails to plausibly allege that the Municipal Defendants are liable under a theory of *respondeat superior*. Initially, the Court notes that Colavito's purportedly unlawful actions occurred when he was off duty and outside of New York City. Further, Colavito's alleged tortious conduct—specifically acting in

15

"concert" with Walsh to perpetrate a criminal act—is a significant departure from NYPD's normal method of performance as a law enforcement agency. *See Nu–Life Const. v. Board of Educ.*, 779 F.Supp. 248, 250–251 (E.D.N.Y. 1991) ("The criminal intent of municipal agents cannot be imputed to the municipality itself by reason of *respondeat superior*."); *see also Heffernan v. Marine Midland Bank, N.A.*, 267 A.D.2d 83, 84, 701 N.Y.S.2d 4, 6 (1st Dep't 1999) (finding that alleged criminal conduct is so gross a departure from normal performance that it cannot be considered to have been within the scope of employment). Finally, the Complaint is silent as to any events that would have allowed the Municipal Defendants to reasonably anticipate Colavito's specific wrongful behavior. Simply, as alleged, Colavito's purely personal actions appear to be completely unrelated to the performance of his job with the NYPD. Therefore, Plaintiff has failed to plausibly allege that the City is vicariously liable for Colavito's action. Accordingly, on this basis, the Court recommends that the state-law claims against the Municipal Defendants again be dismissed.

### ii. Negligent Hiring and Retention

The Court further concludes that Plaintiff's negligent hiring and retention claim fails on its merits as a matter of law. To state a claim for negligent hiring and retention under New York law, in addition to the standard elements of negligence, a plaintiff must show: (1) that the tortfeasor and the defendant were in an employee-employer relationship; (2) that the employer "knew or should have known of the employee's propensity for the conduct which caused the injury" prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels. *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004).

Once again, the Complaint fails to allege any specific facts concerning any of Colavito's prior misconduct. Therefore, even assuming the facts alleged in the Complaint to be true, Plaintiff is unable to plausibly demonstrate that NYPD "knew or should have known of [Colavito's] propensity for the conduct which caused [Plaintiff's alleged] injury." *Soliman v. City of New York*, No. 15-cv-531, 2017 WL 1229730, at *12 (E.D.N.Y. Mar. 31, 2017). Accordingly, the Court recommends that the Municipal Defendants' motion to dismiss Plaintiff's negligent hiring and retention claim again be granted on this alternate ground.

### iii. Negligent and Intentional Infliction of Emotional Distress

Plaintiff's negligent and intentional infliction of emotional distress claim is similarly subject to dismissal. "Under New York law, a claim for intentional infliction of emotional distress requires a showing of (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *See Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999). A viable claim for negligent infliction of emotional distress can be achieved in one of two ways: (1) the 'bystander' theory; or (2) the 'direct duty' theory." *Lloyd v. City of New York*, 246 F. Supp. 3d 704, 730 (S.D.N.Y. 2017) (quoting *Baker v. Dorfman*, 239 F.3d 415, 421 (2d Cir. 2000)). Here, Plaintiff attempts to set forth a claim under the latter. Under the "direct duty" theory, "a plaintiff suffers emotional distress caused by [a] defendant's breach of a duty which unreasonably endangered [the plaintiff's] own physical safety." *Id.* (citation and internal quotation marks omitted).

Negligent and intentional infliction of emotional distress are "highly disfavored [torts] under New York law," and they are "to be invoked only as a last resort." *Turley*, 774 F.3d at 158 (internal citations omitted). To that end, these causes of action may be applied only "to provide relief in those circumstances where traditional theories of recovery do not." *Salmon v. Blesser*, 802 F.3d 249, 256 (2d Cir. 2015) (citations omitted)).

Here, Mosca' negligent and intentional infliction of emotional distress cause of action is fatally flawed as it is duplicative of his assault and battery claim. *See, e.g.*, *Caravalho v. City of New York*, No. 13-cv-4174, 2016 WL 1274575, at *23 (S.D.N.Y. Mar. 31, 2016) (dismissing as duplicative negligent infliction of emotional distress claim because "the conduct at issue—[the defendant's] allegedly unreasonable use of force—and any resulting emotional damage is entirely subsumed by [the plaintiff's] common law assault and battery claim and his federal excessive force claim). Accordingly, the Court recommends that Plaintiff's negligent and intentional infliction of emotional distress claim also be dismissed.

### iv. Negligence

Finally, Plaintiff has failed to plausibly allege a negligence cause of action against the Municipal Defendants. To establish a claim of negligence, a plaintiff must demonstrate each of following elements: "(1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Genao v. Bd. of Educ. of City of New York*, 888 F. Supp. 501, 505 (S.D.N.Y. 1995). It is well-settled that once intentional offensive conduct has been established, the actor is liable for assault and not negligence. *See, e.g., United Nat. Ins. Co. v. Tunnel, Inc.*, 988 F.2d

351, 353 (2d Cir. 1993) (discussing the mutual exclusivity of negligence and battery under New York law).

The Municipal Defendants are also entitled to dismissal of Mosca's negligence claim. Here, as the Complaint alleges that Colavito's actions were intentional and deliberate, they are outside the ambit of a negligence claim. Accordingly, the Court recommends that the Municipal Defendants' motion to dismiss be granted as to Mosca's negligence claim as well.

### C. <u>Leave to File an Amended Complaint</u>

Finally, Mosca seeks leave his amend his municipal liability claim if Defendants' motion is granted. While leave to amend a complaint should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), it is "within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). "[A] district court may deny leave to amend when [ . . . ] amendment would be futile because the problem with the claim 'is substantive ... [and] better pleading will not cure it.'" *Reynolds v. City of Mount Vernon*, 14-CV-1481, 2015 WL 1514894, at \*5 (S.D.N.Y. Apr. 1, 2015) (quoting *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000)). Here, the Court cannot conclude with certainty that amendment would be futile. Accordingly, the Court recommends that Plaintiff be granted leave to file an amended complaint that would satisfy the pleading requirements under the standards addressed above.

## V. CONCLUSION

Based on the foregoing, the Court respectfully recommends that the District Court grant the Municipal Defendants' motion to dismiss in its entirety and without prejudice. Further, the Court recommends that Plaintiff be granted to leave to file an amended complaint addressing the deficiencies in the causes of action asserted against the Municipal Defendants. Finally, the Court recommends that the NYPD be removed from the caption as a Defendant in the case because it is a non-suable entity.

## VI. OBJECTIONS

A copy of this Report and Recommendation is being served on all parties by electronic filing on the date below. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of receipt of this report. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a); *Ferrer v. Woliver*, 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
April 24, 2018

/s/ Steven I. Locke
STEVEN I. LOCKE
United States Magistrate Judge