UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

VINCENT MOSCA,

                                                    Plaintiff,

                        -against-

THE CITY OF NEW YORK, et al.,

                                                    Defendants.

**DEFENDANT CITY OF NEW YORK'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR DISMISSAL OF SECOND AMENDED COMPLAINT**

***ZACHARY W. CARTER***
*Corporation Counsel of the City of New York*
*Attorney for Defendant City of New York*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Mark D. Zuckerman*
*Tel:  (212)356-3519*
*Matter #: 2017-039975*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...............................................................................................ii

PRELIMINARY STATEMENT ........................................................................................ 1

FACTUAL STATEMENT ................................................................................................ 1

LEGAL STANDARD....................................................................................................... 3

ARGUMENT

       POINT I

              PLAINTIFF'S FEDERAL CLAIMS AGAINST
              THE CITY SHOULD BE DISMISSED ...................................................... 4

       POINT II

              PLAINTIFF'S STATE LAW CLAIMS AGAINST
              THE CITY SHOULD BE DISMISSED .................................................... 11

              A.   Respondeat Superior Does Not Lie Against The
                    City ..................................................................................... 12

              B.   Plaintiff's Negligent Hiring and Retention
                    Claim Should be Dismissed................................................. 14

              C.   Plaintiff's Negligence Claim Should be
                    Dismissed........................................................................... 15

              D.   Plaintiff's Infliction of Emotional Harm Claims
                    Should Be Dismissed .......................................................... 16

       POINT III

              THE CITY WAS NOT THE PROXIMATE
              CAUSE OF PLAINTIFF'S INJURIES ..................................................... 17

CONCLUSION................................................................................................................ 20

# TABLE OF AUTHORITIES

**Cases**                                                                                 **Pages**

Akins v. Glens Falls City Sch. Dist.,
   53 N.Y.2d 325 N.E.2d 531, 441 N.Y.S.2d 644 (1981)............................................................15

Alfaro v. Wal-Mart Stores, Inc.,
   210 F.3d 111 (2d Cir. 2000)...............................................................................................15

An v. City of New York,
   230 F. Supp.3d 224 (S.D.N.Y. 2017)..............................................................................8, 9, 10

Aquino v. City of New York,
   16 CV 1577 (GHW), 2017 U.S. Dist. LEXIS 10436
   (S.D.N.Y. Jan. 25, 2017).......................................................................................................5

Ashcroft v. Iqbal,
   556 U.S. 662 (2008)..................................................................................................3, 8, 15, 16

Banushi v. City of New York,
   09 CV 2937 (KAM), 2010 U.S. Dist. LEXIS 109903
   (E.D.N.Y. Oct. 15, 2010).......................................................................................................7

Bell Atlantic Corp. v. Twombly,
   550 U.S. 544 (2007)..........................................................................................................3, 4

Bradley v. City of New York,
   08 CV 1106 (NGG), 2009 U.S. Dist. LEXIS 51532 (E.D.N.Y. June 18, 2009) ......................7

Busch v. City of New York,
   00 CV 5211 (SJ), 2003 U.S. Dist. LEXIS 27571 (E.D.N.Y. Sept. 11, 2003).........................16

Cardona v. Cruz,
   271 A.D.2d 221, 705 N.Y.S.2d 368 (1st Dep't 2000) ............................................................13

City of Canton v. Harris,
   489 U.S. 378 (1989)................................................................................................................5

Collins v. City of New York, et. al.,
   923 F. Supp.2d 462 (E.D.N.Y. 2013) ......................................................................................8

Connick v. Thompson,
   563 U.S. 51 (2011).........................................................................................................6, 7, 9

Cuevas v. City of New York,
   07 Civ. 4169 (LAP), 2009 U.S. Dist. LEXIS 114984 (S.D.N.Y. Dec. 7, 2009) ......................8

**Cases**                                                                                          **Pages**

Davis v. City of New York,
    226 A.D. 2d 271 (1st Dep't 1996) ........................................................................14

Derdiarian v. Felix Contracting Corp.,
    51 N.Y.2d 308 (1980) .......................................................................................19

Deskovic v. City of Peekskill,
    673 F. Supp.2d 154 (S.D.N.Y. 2009) ...........................................................17, 18

Dwares v. City of New York,
    985 F.2d 94 (2d Cir. 1993)..................................................................................7

Ehrens v. Lutheran Church,
    385 F.3d 232 (2d Cir. 2004)..............................................................................15

Franks v. City of New York,
    13 CV 5264 (KAM), 2017 U.S. Dist. LEXIS 49532 (E.D.N.Y. Mar. 31, 2017) .....................7

Fuller v. City of Yonkers,
    100 A.D.2d 926 (2d Dep't 1984) ......................................................................14

Gierlinger v. Gleason,
    160 F.3d 858 (2d Cir. 1998)..............................................................................17

Hearst v. City of New York,
    05 Civ. 5272 (KAM) (RML), 2012 U.S. Dist. LEXIS 41135 (E.D.N.Y. 2012).....................13

Howell v. New York Post Co.,
    81 N.Y.2d 115 (1993) .......................................................................................16

Iqbal v. Hasty,
    490 F.3d 143 (2d Cir. 2007)................................................................................4

Kush v. City of Buffalo,
    59 N.Y. 2d 26 (1983) ..................................................................................18, 19

Leibovitz v. City of New York,
    15 CV 1722, 2015 U.S. Dist. LEXIS 84995 (E.D.N.Y. June 30, 2015)..................................7

Lloyd v. City of New York,
    246 F. Supp. 3d 704 (S.D.N.Y. 2017)................................................................16

Longin v. Kelly,
    875 F. Supp. 196 (S.D.N.Y. 1995) ...............................................................12, 13

| Cases | Pages |
|---|---|

Lundberg v. State of New York,
25 N.Y. 467 (1967) ...............................................................................12

Mahmood v. City of New York,
01 CV 5899 (SAS), 2003 U.S. Dist. LEXIS 7745 (S.D.N.Y. May 8, 2003) ..........................13

Martin v. City of New York,
793 F. Supp.2d 583 (E.D.N.Y. 2011) ...............................................................17, 19

McAllister v. New York City Police Department,
49 F. Supp. 2d 688 (S.D.N.Y. 1999)...................................................................10

Means v. City of New York, et. al.,
15 CV 4855 (KBF), 2016 U.S. Dist. LEXIS 45865 (S.D.N.Y. April 5, 2016) ......................10

Mercado v. City of New York,
08 Civ. 2855 (BSJ) (HP), 2011 U.S. Dist. LEXIS 140430
(S.D.N.Y. Dec. 5, 2011)..............................................................................18

Monell v. New York City Dept. of Soc. Servs.,
436 U.S. 658 (1978)................................................................................5, 18

Mosca v. City of New York, et. al.,
17 CV 4327 (SJF)(SIL), 2018 U.S. Dist. LEXIS 69846
(E.D.N.Y. Apr. 24, 2018)...............................................................12, 14, 15, 16, 17

Mosca v. City of New York, et. al.,
17 CV 4327 (SJF)(SIL), 2018 U.S. Dist. LEXIS 84163
(E.D.N.Y. May 18, 2018) ...........................................................................11, 12

Oklahoma City v. Tuttle,
471 U.S. 808 (1985).....................................................................................4

Pembaur v. City of Cincinnati,
475 U.S. 469 (1986)...................................................................................4, 5

Perez v. City of New York,
94 CV 2061 (DLC), 1996 U.S. Dist. LEXIS 2812 (Mar. 7, 1994).........................13

Plair v. City of New York,
789 F. Supp. 2d 459 (S.D.N.Y. 2011).....................................................................7

Reynolds v. Giuliani,
506 F.3d 183 (2d Cir. 2007)...........................................................................6, 7

iv

**Cases**      **Pages**

Riviello v. Waldron,
    47 N.Y.2d 297 (1979) ...................................................................................13, 14

Rodriguez v. Winski,
    973 F. Supp. 2d 411 (S.D.N.Y. 2013)........................................................................5

Sachs v. Cantwell,
    10 Civ. 1663 (JPO), 2012 U.S. Dist. LEXIS 125335 (S.D.N.Y. Sept. 4, 2012).....................12

In re September 11 Litigation,
    280 F. Supp.2d 279 (S.D.N.Y. 2003)...............................................................18, 19

In re September 11 Litigation Aegis Insurance Services, Inc.,
    865 F. Supp.2d 370 (S.D.N.Y. 2011).......................................................................19

Sheehan v. City of New York,
    40 N.Y.2d 496 (N.Y. 1976) .................................................................................19

Simms v. City of New York, et. al.,
    480 Fed App'x 627 (2d Cir. 2012)............................................................................9

Soliman v. City of New York,
    15 CV 531 (PKC)(RER), 2017 U.S. Dist. LEXIS 50599
    (E.D.N.Y. Mar. 31, 2017) ...................................................................................15

Stavitz v. City of New York,
    98 A.D.2d 529 (1st Dep't 1984) ...................................................................12, 13, 14

Swinton v. City of New York,
    08 Civ. 3278 (RJD)(RML), 2011 U.S. Dist. LEXIS 32384
    (E.D.N.Y. Mar. 28, 2011) ....................................................................................8

Tieman v. City of Newburgh,
    13 CV 4178 (KMK), 2015 U.S. Dist. LEXIS 38703 (S.D.N.Y. Mar. 26, 2015)..................8, 9

Townes v. City of New York,
    176 F.3d 138 (2d Cir. 1999).............................................................................17, 18

Triano v. Town of Harrison,
    895 F. Supp. 2d 526 (S.D.N.Y. 2012)........................................................................7

Turk v. McCarthy,
    661 F. Supp. 1526 (E.D.N.Y. 1987) ........................................................................13

United Nat. Ins. Co. v. Tunnel, Inc.,
    988 F.2d 351 (2d Cir. 1993)................................................................................16

**Cases**                                                                                                 **Pages**

Vippolis v. Vill. Of Haverstraw,
    768 F.2d 40 (2d Cir. 1985)..........................................................................................5

Walker v. City of New York, et. al.,
    14 CV 808 (ER), 2015 U.S. Dist. LEXIS 91410 (S.D.N.Y. July 14, 2015)............................9

Wray v. City of New York,
    490 F.3d 189 (2d Cir. 2007)...............................................................................5, 6, 11

Zahrey v. City of New York,
    98 Civ. 4546 (DCP), 2009 U.S. Dist. LEXIS 31893 (S.D.N.Y. Apr. 15, 2009) ....................19

**Statutes**

42 U.S.C. § 1983.........................................................................................4, 5, 6, 17, 18

Fed. R. Civ. P. 12(b)(6)...............................................................................................1, 18

Fed. Rule Civ. P. 8 .........................................................................................................4

Fed. Rule Civ. P. 8(a)(2)................................................................................................4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------------- x

VINCENT MOSCA,

Plaintiff,

-against-

THE CITY OF NEW YORK, et. al.,

Defendants.

--------------------------------------------------------------------- x

**DEFENDANT CITY OF NEW YORK'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR DISMISSAL OF SECOND AMENDED COMPLAINT**

17 CV 4327 (SJF)(SIL)

## PRELIMINARY STATEMENT

Defendant City of New York (the "City") hereby respectfully submits its Memorandum of Law in support of its motion to dismiss plaintiff's Second Amended Complaint (the "SAC") with prejudice pursuant to Rule 12(b)(6), Fed. R. Civ. P. For the reasons set forth herein, plaintiff's SAC fails to cure the deficiencies identified by the Court in dismissing plaintiff's original complaint, thus, defendant's motion should be granted in its entirety and plaintiff's SAC dismissed with prejudice.

## FACTUAL STATEMENT

The following facts are alleged to be true by plaintiff in the SAC: Prior to April 29, 2016, the defendant Colavito had been hired as a police officer by the NYPD. (SAC, ¶33) On April 29, 2016, plaintiff Vincent Mosca ("Mosca") "visited" a restaurant and bar called the "Tap Room." (SAC, ¶40) A short time after arriving at the Tap Room, Mosca "encountered" Colavito and Ian Walsh. (hereinafter "Walsh") (SAC, ¶41) Colavito and Walsh were "visibly intoxicated." (SAC, ¶41) Colavito was a probationary NYPD police officer at the time. (SAC,

¶41)  Colavito was off-duty at the time of the subject incident, which occurred outside the City of New York.  (See SAC)

Colavito and Walsh, acting together, and almost immediately, "began to menace, threaten, bully, harass and act belligerent towards Mosca without just cause or provocation." (SAC, ¶42)  Mosca announced that he was going to exit the restaurant/bar.  (SAC, ¶43)  Colavito and Walsh followed Mosca as he attempted to leave the restaurant/bar, and continued to "menace, threaten, bully, harass and act belligerent towards Mosca without provocation."  (SAC, ¶44)  Mosca "attempted to de-escalate the situation by giving Walsh a friendly hug and wishing him the best."  (SAC, ¶45)  Colavito and Walsh followed Mosca to the parking lot of the Tap Room.  (SAC, ¶46)

As Mosca was attempting to "remove himself from the situation and exit the parking lot" at the Tap Room, Colavito "confronted Mosca."  (SAC, ¶48)  "Colavito pronounced:  'I'm with the NYPD, you're not going anywhere.'  Colavito flashed his NYPD badge at Mosca."  (SAC, ¶49)  "While Mosca was confronted, detained, and distracted by Colavito, Walsh viciously punched Mosca from behind on his head."  (SAC, ¶52)  Walsh continued to "repeatedly punch, kick, assault and brutalize Mosca," causing Mosca to lose consciousness.  (SAC, ¶53)  Colavito and Walsh returned to inside the restaurant/bar while Mosca lied on the ground unconscious.  (SAC, ¶54)  Colavito and Walsh "openly celebrated" their "unprovoked attack."  (SAC, ¶55)  Colavito and Walsh "repeatedly, brazenly and openly brought out patrons of the bar into the parking lot in a jovial drunken fashion to mock the condition of Mosca," who remained unconscious.  (SAC, ¶58)

A "good Samaritan Jeffrey Bucheit," assisted Mosca.  (SAC, ¶63)  However, Mosca, "as a result of the attack,…suffered a traumatic brain injury, multiple facial fractures,

required reconstructive surgery and continues to suffer from permanent physical and psychological injuries...." (SAC, ¶64)

Colavito never reported the off duty incident to NYPD, in "violation of NYPD guidelines." (SAC, ¶66) Walsh pled guilty to a misdemeanor in connection with the incident. (SAC, ¶68) Walsh had been "arrested for a similar assault and battery in the past." (SAC, ¶69) Colavito was eventually terminated by NYPD.[1] (SAC, ¶74)

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. (quoting Twombly, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

Two working principles determine whether a complaint may survive a motion to dismiss. Ashcroft, 556 U.S. at 678-679. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

[1] Plaintiff continually states in the SAC that plaintiff was not terminated until approximately a year after the incident. Plaintiff's presentation is purposely incomplete, however, as the defendant Colavito was immediately placed on modified duty upon the NYPD learning of the incident, and his weapon removed from him, while the incident was investigated by the NYPD.

Id. (citing <u>Twombly</u>, 550 U.S. at 555) ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"). "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." <u>Id.</u> Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id.</u> (quoting <u>Iqbal v. Hasty</u>, 490 F.3d 143, 157-58 (2d Cir. 2007)). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – "that the pleader is entitled to relief.'" <u>Id.</u> (citing Fed. Rule Civ. Proc. 8(a)(2)).

## ARGUMENT

## POINT I

### PLAINTIFF'S FEDERAL CLAIMS AGAINST THE CITY SHOULD BE DISMISSED

To hold a municipality liable as a "person" within the meaning of 42 U.S.C. § 1983, a plaintiff must establish that the municipality itself was somehow at fault. <u>Oklahoma City v. Tuttle</u>, 471 U.S. 808, 810 (1985). A municipality may not be held liable under § 1983 by application of the doctrine of *respondeat superior*. <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 478 (1986). "The plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries . . . . Second, the plaintiff must establish a causal connection – an affirmative link – between the policy and the

deprivation of his constitutional rights." Vippolis v. Vill. Of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985) (internal quotation marks and citation omitted).

Thus, "[i]n order to hold the City of New York liable under 42 U.S.C. § 1983 for an alleged constitutional violation, plaintiff must plead: "(1) an official policy or custom that (2) cause[d] [Plaintiff] to be subjected to (3) a denial of a constitutional right." Aquino v. City of New York, 16 CV 1577 (GHW), 2017 U.S. Dist. LEXIS 10436, at *8 (S.D.N.Y. Jan. 25, 2017) (quoting Rodriguez v. Winski, 973 F. Supp. 2d 411, 425 (S.D.N.Y. 2013)) (citing Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007)). Plaintiff can satisfy the "policy or custom" prong required for municipal liability by alleging "the existence of (1) a formal policy, see Monell v. New York City Dept, of Soc. Servs., 436 U.S. 658, 690 (1978)); (2) actions taken or decisions made by final municipal policymakers that caused the violation of [plaintiff's] rights, see Pembaur, at 483-484 (1986); (3) a practice so persistent and widespread that it constitutes a "custom or usage" and implies the constructive knowledge of policymakers, see Monell, 436 U.S. at 690-91; or (4) a failure to properly train or supervise municipal employees that amounts to "deliberate indifference to the rights of those with whom municipal employees will come into contact." See City of Canton v. Harris, 489 U.S. 378, 388 (1989).

Plaintiff has only attempted to proceed against the City under a municipal liability theory that the NYPD has a systematic failure to "properly screen, hire, train, retain and supervise its police officers, especially with regard to off duty incidents." (See SAC, ¶37) The only deficiency in the NYPD's programs that plaintiff cites to in the SAC is that "favors" are provided to applicants for the position of police officer who are otherwise unqualified, based

solely on an unnamed source cited in a New York Post newspaper article of May 26, 2018, regarding an arrest of P.O. Michael Baror of January 1, 2018.[2]  (SAC, ¶¶ 5 n. 1, 36)

A municipality's failure to train or supervise its employees may constitute a "policy" or "custom," but a plaintiff premising liability on a claim of failure to train or supervise must show that "the failure amounts to 'deliberate indifference' to the rights of those with whom the city employees interact."  Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007). "Deliberate indifference," as the Supreme Court cautioned, "is a *stringent standard of fault*, requiring proof that a municipal actor disregarded a known obvious consequence of his action." Connick v. Thompson, 563 U.S. 51, 61 (2011) (emphasis added).  Although a municipality may be liable under § 1983 for its policies or customs, only "[i]n limited circumstances [can] a local government's decision not to train certain employees about their duty to avoid violating citizens' rights [] rise to the level of an official government policy for purposes of § 1983."  Id. ("municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train").

"[W]here a city has a training program, a plaintiff must . . . identify a *specific deficiency* in the city's training program and establish that that deficiency is *closely related to the ultimate injury*, such that it actually caused the constitutional deprivation."  Wray, 490 F.3d at 196 (internal quotation marks and citations omitted; emphasis added).  "[A] training program must be quite deficient in order for the deliberate indifference standard to be met:  the fact that training is imperfect or not in the precise form a plaintiff would prefer is insufficient to make such a showing."  Reynolds v. Giuliani, 506 F.3d 183, 193 (2d Cir. 2007).

---

[2] The New York Post article does not even state that P.O. Baror was hired as a result of "favors."

To succeed on a "deliberate indifference" theory, a plaintiff must show that (i) "city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights," and notwithstanding such notice, (ii) "the policymakers choose to retain that program." Connick, 563 U.S. at 61. With respect to claims alleging failure to train, it is "ordinarily necessary" to establish a "pattern of similar constitutional violations by untrained employees." Id. at 62 ("Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."). "[A] failure to act, train, or supervise can constitute a municipal custom 'only where the need to act is so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need.'" Triano v. Town of Harrison, 895 F. Supp. 2d 526, 534 (S.D.N.Y. 2012) (quoting Reynolds, at 192.)

"The mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." Bradley v. City of New York, 08 CV 1106 (NGG), 2009 U.S. Dist. LEXIS 51532, at *8-*9 (E.D.N.Y. June 18, 2009) (citing Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993)). Courts routinely dismiss boilerplate assertions of municipal liability. Plair v. City of New York, 789 F. Supp. 2d 459, 469 (S.D.N.Y. 2011) (collecting cases). Moreover, wholly conclusory allegations of municipal liability are routinely dismissed by district courts in this Circuit. Franks v. City of New York, 13 CV 5264 (KAM), 2017 U.S. Dist. LEXIS 49532, at *14 (E.D.N.Y. Mar. 31, 2017); Leibovitz v. City of New York, 15 CV 1722 (KAM), 2015 U.S. Dist. LEXIS 84995, at *12-14 (E.D.N.Y. June 30, 2015); Banushi v. City of New York, 09 CV

2937 (KAM), 2010 U.S. Dist. LEXIS 109903, at *35-37 (E.D.N.Y. Oct. 15, 2010) (KAM); Swinton v. City of New York, 08 Civ. 3278 (RJD)(RML), 2011 U.S. Dist. LEXIS 32384, at *15-17 (E.D.N.Y. Mar. 28, 2011) (dismissing as conclusory plaintiff's claim that [ADA's] inflate charges); Cuevas v. City of New York, 07 Civ. 4169 (LAP), 2009 U.S. Dist. LEXIS 114984, at *10 (S.D.N.Y. Dec. 7, 2009) ("Plaintiff's boilerplate allegations against the City … satisfy neither the elements [for municipal liability], nor the pleading requirements set forth in Iqbal").

Plaintiff's municipal liability claims fail for a number of reasons. First, plaintiff's complete reliance on the New York Post article of May 26, 2018 regarding the arrest and prosecution of P.O. Baror based on an off duty "road rage" incident of January 1, 2018, is entirely inadequate to "plausibly" alleged municipal liability against the City. Courts have consistently stated that complaints arising out of other incidents **that post-date** the subject act of misconduct cannot be used to prove municipal liability, even where a complaint cites many other alleged police misconduct cases, which plaintiff has not even done herein. See Tieman v. City of Newburgh, 13 CV 4178 (KMK), 2015 U.S. Dist. LEXIS 38703, at *48-49 (S.D.N.Y. Mar. 26, 2015) (citing Collins v. City of New York, et. al., 923 F. Supp.2d 462, 479 (E.D.N.Y. 2013)) ("a 'litany of other police-misconduct cases' discussed in plaintiff's complaint 'were insufficient to make a plausible case for Monell liability,' because they…post-dated the alleged misconduct in the case at hand…"); see An v. City of New York, 230 F. Supp.3d 224, 230 (S.D.N.Y. 2017) (finding no widespread custom "at the time of plaintiff's arrest"). Even assuming *arguendo* that the incident involving P.O. Baror was in any similar to the underlying incident in Mosca, which it is not, citing a single other incident post-dating the date of subject incident date of April 29, 2016 herein, is insufficient to establish the "pattern of similar constitutional violations by

untrained employees," <u>Connick</u> at 62, which would be necessary to put the City on notice of the insufficiency of its training programs.

Second, a single other incident is insufficient to "plausibly" allege municipal liability under a "failure to train" theory and courts have dismissed "failure to train" municipal liability allegations even where a much greater number of other complaints have been cited in a complaint. <u>See</u> <u>An</u>, <u>supra</u>, at 231 (six lawsuits and one newspaper article over a four year period insufficient to plausibly allege notice of the need for additional training under a failure to train theory). Simply, plaintiff has not "plausibly" alleged a "pattern of similar constitutional violations by untrained employees" necessary to put the City on notice of a deficiency in its training programs as required by <u>Connick</u> by merely citing to the P.O. Baror incident that post-dates the date of the subject incident herein, and for which there has not even been a resolution of the criminal allegations arising out of such incident[3]. <u>See</u> <u>Simms v. City of New York, et. al.</u>, 480 Fed App'x 627, 630 (2d Cir. 2012) ("[A]ll that the Complaint's reference to the other action establishes is that other individuals have plausibly alleged that they experienced similar violations of their constitutional rights as Simms alleges here, not that those violations actually occurred.")

Third, plaintiff has also failed to plead that the City did not investigate any other "similar incidents" alleged in the SAC, which is a necessary element of such a claim. <u>Walker v. City of New York, et. al.</u>, 14 CV 808 (ER), 2015 U.S. Dist. LEXIS 91410, at *29 (S.D.N.Y. July 14, 2015) ("although Plaintiff alleges a pattern of allegations about similar misconduct, he does not specifically claim that the City failed to investigate the list of lawsuits."); <u>Tieman v. City of Newburgh</u>, <u>supra</u>, at *61-63 (allegations of other instances of excessive force by themselves

_____

[3] The New York Post article does not reflect that there has been a resolution of the charges against P.O. Baror.

inadequate to raise an inference of deliberate indifference); <u>An</u>, <u>supra</u>, at 231 (Complaint was inadequate as there was no allegation that the City, once on notice of a deficiency in its training programs, failed to investigate any such inadequacy).  Simply, plaintiff's municipal liability claims fail for this reason as well, as plaintiff fails to allege that the City failed to investigate the one other purported "similar incident" cited in the SAC.

Fourth, plaintiff is relying exclusively on a New York Post newspaper article, and unnamed sources cited therein, which is hearsay within hearsay.  Newspaper articles are hearsay and should not be considered.  <u>McAllister v. New York City Police Department</u>, 49 F. Supp. 2d 688, n. 12 (S.D.N.Y. 1999).  Additionally, the one newspaper article cited by plaintiff is also "too generalized, isolated and attenuated to support an inference that there existed a pervasive unlawful municipal custom or policy."  <u>See</u> <u>Means v. City of New York, et. al.</u>, 15 CV 4855 (KBF), 2016 U.S. Dist. LEXIS 45865, at *18 (S.D.N.Y. April 5, 2016).  The P.O. Baror incident was purportedly a "road rage" incident.  The subject incident in this case resulted from an incident at a bar where there was an alleged assault by Walsh.  Simply, the **New York Post article** of May 26, 2018, by itself, is inadequate to "plausibly" allege the existence of a deficiency in any of the NYPD's programs, as it is way "too generalized, isolated and attenuated."

Fifth, as seen, the only deficiency in the NYPD's hiring or training programs that plaintiff cites in the SAC is that "favors" are provided to applicants for the position of police officer who are otherwise unqualified, based solely on a New York Post newspaper article of May 26, 2018.[4]  (SAC, ¶¶ 5 n. 1, 36)  However, "where a city has a training program, a plaintiff must . . . identify a *specific deficiency* in the city's training program and establish that the

---

[4] Again, the New York Post article does not even reflect that P.O. Baror was hired as a result of a "favor."

10

deficiency is *closely related to the ultimate injury*, such that it actually caused the constitutional deprivation." <u>Wray</u>, 490 F.3d at 196 (internal quotation marks and citations omitted; emphasis added). Here, while plaintiff alleges a purported deficiency in the NYPD's programs, nowhere in the SAC are there well-pled facts that the defendant Colavito was hired as a "favor" to anyone within the NYPD or any facts that he was unqualified. Plaintiff, therefore, has completely failed to "plausibly" allege the necessary causal connection between the policy he alleges and the injury he alleges in this case. There simply are no well pled facts in the complaint that the defendant Colavito's hiring had any connection to the purported practice that he alleges.[5] Plaintiff, therefore, has not "plausibly" pled municipal liability against the City.

## POINT II

### PLAINTIFF'S STATE LAW CLAIMS AGAINST THE CITY SHOULD BE DISMISSED

Despite this Court having found that plaintiff abandoned his state law claims against the City by not responding to the City's arguments for dismissal of such claims in its original motion to dismiss, <u>Mosca v. City of New York, et. al.</u>, 17 CV 4327 (SJF)(SIL), 2018 U.S. Dist. LEXIS 84163, at *3, n. 1 (E.D.N.Y. May 18, 2018), it appears that the SAC still contains certain state law allegations against the City in plaintiff's second and fourth causes of action. Having been found to have abandoned such claims, plaintiff should not be able to raise such claims once again. Additionally, the SAC makes no real attempt to cure the deficiencies

---

[5] Plaintiff also cited in the SAC to a Daily News Article of May 29, 2018 regarding the NYPD's disciplinary processes. This hearsay article also fails to "plausibly" alleged municipal liability against the City as the SAC points to no disciplinary proceedings against the defendant Colavito that pre-dated the subject incident in this case or that there was any undue interference in any such disciplinary proceedings as to Colavito. In fact, the SAC is completely devoid of any disciplinary proceedings involving the defendant Colavito that preceded the subject incident. Such Daily News article, therefore, in no way, should change the outcome of this motion.

with respect to these claims as found by Magistrate Judge Locke's Report and Recommendation in <u>Mosca v. City of New York, et. al.</u>, 17 CV 4327 (SJF)(SIL), 2018 U.S. Dist. LEXIS 69846 (E.D.N.Y. Apr. 24, 2018), and which was subsequently adopted by the Court. <u>Mosca v. City of New York, et. al.</u>, <u>supra</u>, 2018 U.S. Dist. LEXIS 84163. However, defendant City will once again address plaintiff's state law claims, as to which this Court also found that plaintiff's objections to Magistrate Judge Locke's Report and Recommendation dismissing such state law claims lacked merit. <u>Mosca v. City of New York, et. al.</u>, 2018 U.S. Dist. LEXIS 84163, at *3, n. 1.

## A.      Respondeat Superior Does Not Lie Against The City

Should the Court again reach the merits of plaintiff's *respondeat superior* claims, these claims should still be dismissed. "Under New York law, 'an employer may be vicariously liable for an intentional tort committed by an employee if the employee was acting within the scope of employment at the time the tort was committed.'" <u>Sachs v. Cantwell</u>, 10 Civ. 1663 (JPO), 2012 U.S. Dist. LEXIS 125335, at *55 (S.D.N.Y. Sept. 4, 2012). (internal citations omitted) Additionally, under New York law, "an employer may be liable based on a theory of respondeat superior only where an employee was engaged in furtherance of the employer's enterprise at the time of the employee's wrongdoing, and the employer was or could have been exercising some control over the employee's activities." <u>Longin v. Kelly</u>, 875 F. Supp. 196 (S.D.N.Y. 1995) (citing <u>Lundberg v. State of New York</u>, 25 N.Y. 467 (1967)). With respect to off duty police officers, "New York courts have stated that 'where an employee's conduct is brought on by a matter wholly personal in nature, the nature of which is not job related, his actions cannot be said to fall within the scope of his employment.'" <u>Id</u>. (quoting <u>Stavitz v. City of New York</u>, 98 A.D.2d 529, 531, 471 N.Y.S.2d 272 (1st Dep't 1984)). An officer's acts are personal and not job related when he is "not authorized to act by virtue of his status" as a police

officer.  Hearst v. City of New York, 05 Civ. 5272 (KAM) (RML), 2012 U.S. Dist. LEXIS 41135, at *14 (E.D.N.Y. 2012) (quoting Longin, 875 F. Supp. at 202).

In determining the factors to be weighed, New York courts often look to five factors:  "[1] the connection between the time, place and occasion for the act, [2] the history of the relationship between employer and employee as spelled out in actual practice, [3] whether the act is one commonly done by such an employee, [4] the extent of departure from normal methods of performance; [5] and whether the specific act was one that the employer could reasonably have anticipated."  Riviello v. Waldron, 47 N.Y.2d 297, 302 (1979).

"The act of identifying oneself as a police officer, producing a shield, and executing an arrest, because one's employment with the City confers the authority to do so, does not automatically create liability for the City."  Perez v. City of New York, 94 CV 2061 (DLC), 1996 U.S. Dist. LEXIS 2812, at *6-7 (Mar. 7, 1994) (citing Stavitz, 471 N.Y.S.2d at 274); see also Mahmood v. City of New York, 01 CV 5899 (SAS), 2003 U.S. Dist. LEXIS 7745 (S.D.N.Y. May 8, 2003).  "The issue remains whether the alleged wrongful act was 'in the course of the officer's employment or outside it, to accomplish a purpose foreign to it.'"  Id. (internal citation omitted).

Where it is undisputed that an off duty officer has been the aggressor in an off duty altercation, New York courts have consistently found that the municipality is not liable under a theory of *respondeat superior*.  Cardona v. Cruz, 271 A.D.2d 221, 705 N.Y.S.2d 368, 368-369 (1st Dep't 2000) (declining to hold City liable for officer's shooting of ex-wife's boyfriend even where officer told plaintiff that he was under arrest and plaintiff knew the officer's police officer status); Turk v. McCarthy, 661 F. Supp. 1526 (E.D.N.Y. 1987) (City not liable when a drunk off duty officer shot a security officer at an amusement park when asked to

leave grounds);  <u>Davis v. City of New York</u>, 226 A.D. 2d 271 (1st Dep't 1996) (City not liable

for acts of off duty Correction officer who shot person in McDonald's for cutting in front of

him); <u>Fuller v. City of Yonkers</u>, 100 A.D.2d 926 (2d Dep't 1984) (municipality not liable for

police officer who fatally shot bar employee while trying to remove daughter from bar); <u>Stavitz</u>

<u>v. City of New York</u>, 98 A.D.2d 529 (1st Dep't 1984) (City not liable for police officer's off duty

assault of a neighbor in common driveway).

   Magistrate Judge Locke's analysis in applying the five factors of <u>Riviello</u>, <u>supra</u>,

to the facts of this case was correct. <u>See</u> <u>Mosca</u>, 2018 U.S. Dist. LEXIS 69846, at *17-19.

Indisputably, Colavito was off duty and the acts complained of were not even undertaken in the

City of New York, where he was a police officer, but rather at a restaurant/bar in Massapequa,

Nassau County, which was not Colavito's jurisdiction.  Plaintiff's acts, as alleged, were of course

the opposite from what the NYPD expects, as plaintiff is alleged to have stood

by/encouraged/assisted in an criminal assault by Walsh.  This would be a complete departure

from "normal methods of performance."   Furthermore, the City could not have reasonably

anticipated that Colavito would have undertaken such acts, which were for a personal pursuit and

not job related in any way.  The City had no control over Colavito's personal pursuit as alleged

in the complaint.  As such, the City cannot be liable under a theory of *respondeat superior* under

any state law claim that plaintiff may be making in his Complaint, including any claim for

infliction of emotional distress caused by any acts of the defendant Colavito.

**B.**  **Plaintiff's Negligent Hiring and Retention Claim Should be Dismissed**

   Under New York law, in order to state a claim for negligent hiring and retention,

plaintiff must show, in addition to the standard elements of negligence, that: "(1) that the tort-

feasor and the defendant were in an employee-employer relationship; (2) that the employer knew

or should have known of the employee's propensity for the conduct which caused the injury

prior to the injury's occurrence; and, (3) that the tort was committed on the employer's premises or with the employer's chattels." <u>Mosca</u>, 2018 U.S. Dist. LEXIS 69846, at \*19-20 (citing <u>Ehrens v. Lutheran Church</u>, 385 F.3d 232, 235 (2d Cir. 2004) (internal citations and quotation marks omitted).

As was found by Magistrate Judge Locke, plaintiff's complaint is completely devoid of any specific facts of any prior misconduct before the subject incident of April 29, 2016 by Colavito, or that plaintiff is able to "plausibly demonstrate that NYPD 'knew or should have known of [Colavito's] propensity for the conduct that caused [Plaintiff's alleged] injury.'" <u>Mosca</u>, 2018 U.S. Dist. LEXIS 69846, at \*20 (quoting <u>Soliman v. City of New York</u>, 15 CV 531 (PKC)(RER), 2017 U.S. Dist. LEXIS 50599 (E.D.N.Y. Mar. 31, 2017)). There are simply no well pled facts in the SAC concerning any conduct of Colavito prior to the underlying incident, much less any allegations of prior misconduct. The entirety of plaintiff's allegations in this regard amount to threadbare legal conclusions. Therefore, a negligent hiring and retention claim has still not been plausibly alleged under <u>Iqbal</u> against the City, and such claim should be dismissed.

**C.     Plaintiff's Negligence Claim Should be Dismissed**

As was found by Magistrate Judge Locke in <u>Mosca,</u> 2018 U.S. Dist. LEXIS 69846, at \*22, in order to prove negligence, a plaintiff must "plausibly" allege three elements: "'(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof.'" <u>Alfaro v. Wal-Mart Stores, Inc.</u>, 210 F.3d 111, 114 (2d Cir. 2000) (quoting <u>Akins v. Glens Falls City Sch. Dist.</u>, 53 N.Y.2d 325, 333, 424 N.E.2d 531, 441 N.Y.S.2d 644 (1981)).

Further, "once intentional offensive conduct has been established, the actor is liable for assault and not negligence." <u>Mosca</u>, 2018 U.S. Dist. LEXIS 69846, at \*22-23.

Additionally, "when a plaintiff asserts excessive force and assault claims, which are premised upon a defendant's allegedly intentional conduct, a negligence claim with respect to the same conduct will not lie." Busch v. City of New York, 00 CV 5211 (SJ), 2003 U.S. Dist. LEXIS 27571, at *21-22 (E.D.N.Y. Sept. 11, 2003) (internal citations omitted) (holding that alternative claims alleging intentional tort and negligence not allowed). Thus, since plaintiff's SAC is premised upon an intentional tort by the defendant Colavito, Magistrate Judge Locke correctly found in Mosca, 2018 U.S. Dist. LEXIS 69846, at *22-23, that a negligence claim does not lie. See United Nat. Ins. Co. v. Tunnel, Inc., 988 F.2d 351, 353 (2d Cir. 1993) (torts of negligence and battery under New York law are mutually exclusive).

Additionally, plaintiff has completely failed to "plausibly" allege negligence against the City in the SAC as required by Iqbal. Plaintiff's complaint is devoid of any factual allegations evidencing a duty or a beach of such a duty to plaintiff by the City. There are no well pled facts as to how the City could be negligent as to the defendant Colavito prior to the subject incident. As such, for this reason as well, plaintiff's negligence claim should be dismissed.

**D.    Plaintiff's Infliction of Emotional Harm Claims Should Be Dismissed**

Under New York Law, the tort of intentional infliction of emotional harm constitutes: (1) extreme and outrageous conduct; (2) an intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (3) a causal relationship between the conduct and the injury; and (4) severe emotional distress. Howell v. New York Post Co., 81 N.Y.2d 115, 121 (1993). As found by Magistrate Judge Locke, a negligent infliction of emotional harm claim "can be achieved in one of two ways: 1) 'bystander' theory; or 2) the 'direct duty' theory." Mosca, 2018 U.S. Dist. LEXIS 69846, at *20-21 (citing Lloyd v. City of New York, 246 F. Supp. 3d 704, 730 (S.D.N.Y. 2017) (internal citations omitted)).

Magistrate Judge Locke correctly found that these claims are "'highly disfavored [torts] under New York law,' and they are 'to be invoked only as a last resort.'" Mosca, 2018 U.S. Dist. LEXIS 69846, at *20-22. (internal citations omitted) Magistrate Judge Locke also correctly found that these "causes of action may be applied only 'to provide relief in those circumstances where traditional theories of recovery do not.'" Mosca, 2018 U.S. Dist. LEXIS 69846, at *20-22. There is no question that plaintiff's underlying claim is an intentional tort as found by Magistrate Judge Locke. Further, plaintiff cannot meet the elements of these torts. As such, any such claims should be dismissed.

## POINT III

### THE CITY WAS NOT THE PROXIMATE CAUSE OF PLAINTIFF'S INJURIES

As an additional basis to dismiss plaintiff's §1983 claims, Magistrate Judge Locke found that plaintiff failed to plausibly allege in his Complaint that the City was the proximate cause of his injuries. Mosca, 2018 U.S. Dist. LEXIS 69846, at *16, n. 4. Magistrate Judge Locke's recommendation of dismissal of plaintiff's federal claims on the basis of proximate causation was correct and applies equally to plaintiff's new claims.

"Actions brought under § 1983 are similar to tort actions since they both serve to compensate victims, and '[a] § 1983 action, like its state tort analog[ues], employs the principle of proximate causation.'" Martin v. City of New York, 793 F. Supp.2d 583, 586 (E.D.N.Y. 2011) (quoting Townes v. City of New York, 176 F.3d 138, 146 (2d Cir. 1999)). "In any Section 1983 case, a "plaintiff must prove that the defendant's action was a proximate cause of the plaintiff's injury." Deskovic v. City of Peekskill, 673 F. Supp.2d 154, 161 (S.D.N.Y. 2009) (quoting Gierlinger v. Gleason, 160 F.3d 858, 872 (2d Cir. 1998)). A court may decide the issue of proximate causation "if it can be determined as a matter of law that the defendant's actions

were not the proximate cause of the plaintiff's injuries." <u>Deskovic</u>, 673 F. Supp.2d at 162, n. 5 (citing <u>Townes</u> 176 F.2d at 147). A § 1983 claim may be dismissed pursuant to Rule 12(b)(6) where plaintiff's allegations do not adequately allege that defendants proximately caused plaintiff's injury. <u>Townes</u>, 176 F.2d at 147.

In this regard, plaintiff must establish that an identified municipal policy or practice was "the moving force [behind] the constitutional violation." <u>Monell v. Dep't of Social Services</u>, 436 U.S. 658, 694 (1978). "To establish <u>Monell</u> liability, the causal link must be strong; that is, the policy must be the 'moving force' behind a constitutional violation." <u>Mercado v. City of New York</u>, 08 Civ. 2855 (BSJ) (HP), 2011 U.S. Dist. LEXIS 140430, at *23 (S.D.N.Y. Dec. 5, 2011) (quoting <u>Monell</u>, 436 U.S. at 691, 694). Simply, plaintiff's SAC fails to demonstrate the "strong" causal connection necessary to make a "plausible" claim against the City for a municipal failure to train, discipline or supervise. Any alleged failure to train, discipline or supervise was not the "moving force" behind Colavito's acts, but rather plaintiff's injuries were the result of intervening alleged criminal acts of Colavito and Walsh. As such, plaintiff's municipal liability failure to train, discipline or supervise claim fails for this reason as well.

Further, "[w]hen an intervening act 'is of such an extraordinary nature or so attenuates defendants' [actions] from the ultimate injury that responsibility for the injury may not be reasonably attributed to the defendant,' proximate cause is lacking." <u>In re September 11 Litigation</u>, 280 F. Supp.2d 279, 301 (S.D.N.Y. 2003) (quoting <u>Kush v. City of Buffalo</u>, 59 N.Y. 2d 26 (1983)). "Thus, 'when such an intervening cause 'interrupts the natural sequence of events, turns aside their course, prevents the natural and probable result of the original act or omission, and produces a different result that could not have been reasonably anticipated,' it will

prevent a recovery on account of the act or omission of the original wrongdoer.'" Id. (quoting Sheehan v. City of New York, 40 N.Y.2d 496 (N.Y. 1976)). "An intervening act 'must be a new and independent force, which was not set in motion by the defendant's own wrongful acts, and must rise to such a level of culpability as to replace the defendant's [actions] as the legal cause.'" Martin, supra, at 586-587 (quoting Zahrey v. City of New York, 98 Civ. 4546 (DCP), 2009 U.S. Dist. LEXIS 31893, at *16-17 (S.D.N.Y. Apr. 15, 2009)).

      "Generally, an intervening intentional or criminal act severs the liability of the original tort-feasor," In re September 11 Litigation, 280 F. Supp.2d at 302 (citing Kush at 729), except where the "intentional or criminal intervention of a third party or parties is reasonably forseeable." Id. (quoting Kush). Injuries are not reasonably foreseeable for proximate cause purposes where the "injuries were different in kind than those which would have normally been expected" from the original wrongdoing. Martin, 793 F. Supp.2d at 588 (quoting Derdiarian v. Felix Contracting Corp., 51 N.Y.2d 308, 316 (1980)). The question presented is whether the risks being litigated were within the "zone of reasonable foreseeability." In re September 11 Litigation Aegis Insurance Services, Inc., 865 F. Supp.2d 370, 384 (S.D.N.Y. 2011).

      Here, the acts of Colavito and Walsh are alleged in the SAC to be criminal, and in fact, plaintiff has alleged that Walsh pled guilty to a misdemeanor in connection with the incident. (SAC, ¶68) The alleged assault of plaintiff was certainly not within the "zone of foreseeability" to the City based on any facts alleged in the SAC. The acts of Colavito and Walsh were intervening and superceding acts that severed any liability of the City. As such, based on the principle of proximate causation, the SAC against the City should be dismissed as well.

## CONCLUSION

For the foregoing reasons, defendant City's motion to dismiss should be granted and plaintiff's SAC dismissed with prejudice.

Dated:          New York, New York
                June 22, 2018

ZACHARY W. CARTER
Corporation Counsel of the
    City of New York
*Attorney for Defendant City of New York*
100 Church Street
New York, New York 10007
(212) 356-3519

By:      _____/s/_____
         MARK D. ZUCKERMAN