UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

VINCENT MOSCA,

                                   Plaintiff,            **REPORT AND**
                                                        **RECOMMENDATION**
        -against-

THE CITY OF NEW YORK, FRANCESCO            17-CV-4327 (SJF)(SIL)
COLAVITO, TAPPED 1010 INC., MXL
LLC, and IAN M. WALSH,

                                   Defendants.

-------------------------------------------------------------x

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court in this 42 U.S.C. § 1983 civil rights litigation, on

referral from the Honorable Sandra J. Feuerstein for Report and Recommendation,

are: (i) Defendant the City of New York's (the "City") motion to dismiss Plaintiff

Vincent Mosca's ("Plaintiff" or "Mosca") Second Amended Complaint as against it, *see*

Docket Entry ("DE") [92]; *see also* Second Amended Complaint ("SAC"), DE [78]; and

the City's motion to dismiss co-Defendant Tapped 1010 Inc.'s ("Tapped") crossclaims

against it. *See* DE [95]. For the reasons set forth herein, the Court respectfully

recommends that the City's motions be granted in their entirety, and that the SAC

and crossclaims against the City be dismissed with prejudice.[1]

---

[1] Also pending is the City's motion to dismiss earlier crossclaims asserted by Tapped. *See* DE [70]. As
discussed below, the Court respectfully recommends that motion be denied as moot because it relates
to an inoperative earlier pleading. *See* notes 4 and 5, *infra*.

I.    **Background**

    A.    **Relevant Facts**

The following facts are taken from the SAC and are accepted as true for the purposes of these motions.

Defendants', Francesco Colavito ("Colavito") and Ian Walsh ("Walsh"), purported 2016 assault on Mosca outside a Long Island bar sparks the instant action. *See generally* SAC. On April 29, 2016, Plaintiff visited the Tap Room – a bar owned by Tapped located in Massapequa, New York – where he encountered a visibly intoxicated Colavito and Walsh. *See id.* ¶¶ 26, 40-41. Almost immediately, Colavito, who at the time was an off-duty probationary New York Police Department ("NYPD" or "Department") officer, and Walsh began harassing Plaintiff. *See id.* ¶¶ 41-42. In an attempt to deescalate the situation, Mosca exited the bar and retreated into an adjacent parking lot. *See id.* ¶¶ 43, 46. However, Colavito and Walsh followed. *See id.* ¶ 46.

    In the parking lot, Colavito confronted Mosca and, while showing his NYPD badge, pronounced that he was "with the NYPD, [and that Plaintiff was] not going anywhere." *Id.* ¶¶ 48-49. Walsh thereafter punched Mosca in the back of his head and "in concert with Colavito" pummeled him into unconsciousness. *See id.* ¶¶ 52-53. The pair returned inside the bar and "openly celebrated" the beating for approximately ten minutes until a good Samaritan eventually assisted Mosca. *Id.* ¶¶ 55, 63. As a result of the incident, Plaintiff suffered a traumatic brain injury, multiple facial fractures which required reconstructive facial surgery, and

permanent psychological injuries.  *See id.* ¶ 64.  Walsh was ultimately charged with assault and pled guilty to an unidentified misdemeanor, but no charges appear to have been filed against Colavito.  *See id.* ¶¶ 67-68.

Plaintiff further alleges that Tapped failed to provide adequate safety and security measures despite actual or constructive knowledge that Mosca would be assaulted.  *See id.* ¶ 47.  Moreover, Tapped purportedly continued to serve Colavito and Walsh alcoholic beverages as they celebrated their attack on Mosca.  *See id.* ¶ 56.

Colavito, in violation of internal NYPD guidelines, never reported the incident to the Department.  *See id.* ¶ 66.  However, within a few weeks of the incident, the NYPD received a copy of the Tap Room's surveillance video which purportedly depicts the attack.  *See id.* ¶ 70.  Despite the video evidence, Colavito was employed by the Department for "more than one full year after the assault" until he was eventually terminated on June 9, 2017.  *See id.* ¶¶ 72, 74.  Plaintiff alleges that this delay highlights a systemic failure in the NYPD's hiring and training procedures.  *See id.* ¶ 72.

To that end, Mosca claims that Colavito's conduct is consistent with two incidents concerning former NYPD officer Michael Baror ("Baror"), who is alleged to have brutally assaulted a motorist in a fit of road rage on January 1, 2018 (the "Baror Motorist Incident") and to have flashed his badge at a traffic agent to avoid a parking ticket in 2012 (the "Baror Ticket Incident").  *See id.* ¶¶ 7-9 50-51; *see also* https://nypost.com/2018/05/26/nypd-cop-accused-in-road-rage-beating-never-

should-have-been-hired/ (the "Post Article").  Moreover, Baror was reportedly hired as a favor to the Department's leadership notwithstanding a litany of red flags deeming him unsuitable for duty.  *See* AC ¶¶ 8, 11; Post Article.

## B.   **Relevant Procedural History**

Based on the above, Mosca commenced the instant action on July 21, 2017, alleging various claims under 42 U.S.C. § 1983 for:  (i) false arrest; (ii) excessive force; (iii) conspiracy; and (iv) failure to train, along with various related state law claims, against the City and the NYPD.  *See* Complaint (the "Original Complaint"), DE [1].  Further, the Original Complaint asserted a cause of action for assault and battery against Colavito, and claims of negligence as well as violations of New York's Dram Shop Act against Tapped and its landlord, MXL LLC ("MXL").[2]  *See id*.  Thereafter, the City moved to dismiss the Original Complaint against it pursuant to Fed. R. Civ. P. 12(b)(6).  *See* DE [28].  That motion was granted on May 18, 2018, and Plaintiff's claims against the City were dismissed in their entirety without prejudice and with leave to amend.[3]  *See* DE [60].  Mosca's First Amended Complaint ("FAC"), which was filed while the City's first motion to dismiss was *sub judice*, added Walsh as a Defendant.  *See* DE [74].  The SAC followed on June 18, 2018.  *See* DE [78].[4]

---

[2] MXL has failed to answer or otherwise appear in this action.

[3] That decision also resulted in the removal of the NYPD as a Defendant.  *See* DE [60].

[4] By filing the SAC, the FAC became moot.  *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect") (internal quotation and citations omitted).

Although the SAC does not clearly delineate which causes of actions it pleads against each Defendant, it appears to assert claims for: (i) violations of 42 U.S.C. § 1983 against the City based on false arrest, excessive force, and failure to train; (ii) negligent hiring and retention, negligent and intentional infliction of emotional distress, and general negligence against the City; (ii) assault, battery, false arrest, and excessive force against Colavito and Walsh; and (iii) negligence and Dram Shop violations against Tapped and MXL. *See* SAC.

On June 29, 2018, Tapped answered the SAC and asserted crossclaims against the City for indemnity and contribution (the "Crossclaims").[5] DE [83] at ¶¶ 66-74.[6] Subsequently, the City moved to dismiss to SAC as to it along with the Crossclaims pursuant to Rule 12(b)(6) for failure to state a claim, and Judge Feuerstein referred those motions to this Court for report and recommendation. *See* DEs [92], [99]; *see also* July 26, 2018 Order Referring Motion. Plaintiff and Tapped each oppose the City's motions. *See* Plaintiff's Memorandum of Law in Opposition to the City's Motion to Dismiss the SAC ("Pltf.'s Opp."), DE [94]; *see also* Tapped's Memorandum of Law

---

[5] Tapped had previously asserted crossclaims against the City in response to the FAC, s*ee* DE [55], which the City moved to dismiss. *See* DE [70]. That motion was referred to this Court. *See* July 26, 2018 Order Referring Motion. Because the FAC is inoperative, *see* note 4, *supra*, the Court respectfully recommends that this motion be denied as moot. *See Weinreb v. Xerox Bus. Servs., LLC Health & Welfare Plan*, 323 F. Supp. 3d 501, 508 at n. 6 (S.D.N.Y. 2018) (motions based on pleadings that have been superseded are routinely denied as moot) (collecting cases); *see also Thompson v. Pallito*, 949 F. Supp. 2d 558, 582 (D. Vt. 2013) ("motions addressed to the original complaint are generally regarded as moot upon the filing of an amended complaint") (citing, *inter alia*, *Gonzalez v. Paine, Webber, Jackson & Curtis, Inc.*, 493 F. Supp. 499, 501 (S.D.N.Y. 1980)).

[6] Tapped also asserted crossclaims against Colavito and Walsh in connection with their alleged assault on Mosca and against MXL for indemnification and contribution. *See* DE [83], ¶¶ 75-84.

in Opposition to the City's Motion to Dismiss the Crossclaims ("Tapped's Opp."), DE [98].

## II.   Legal Standard for Motions to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), a pleading must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). A pleading "that offers only 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965).

In reviewing a motion to dismiss, the Court must accept the factual allegations set forth in Plaintiff's SAC and Tapped's Crossclaims as true and draw all reasonable inferences in their favor. *See LaFaro v. New York Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009). The Court may consider:

> (1) the factual allegations [set forth in the pleadings], which are accepted as true; (2) documents attached to the [pleadings] as an exhibit or incorporated . . . by reference; (3) matters of which judicial notice may be taken; and (4) documents upon whose terms and effect the [pleadings] rel[y] heavily, *i.e.,* documents that are "integral" to the [pleading].

*Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003) (internal citation omitted); *see also Miotto v. Yonkers Pub. Sch.*, 534 F. Supp. 2d 422, 425 (S.D.N.Y. 2008) ("[I]n assessing the legal sufficiency of a claim, the court may consider only the

facts alleged in the complaint, and any document attached as an exhibit to the complaint or incorporated in it by reference").

## III.  Discussion

Applying the standards outlined above, and for the reasons set forth below, the Court respectfully recommends that the City's motions to dismiss the SAC and Crossclaims be granted in their entirety with prejudice.

### A.    <u>The City's Motion to Dismiss the SAC</u>

The City first seeks to dismiss Plaintiff's 42 U.S.C. § 1983 claims, arguing the SAC fails to cure the deficiencies present in the Original Complaint.  *See* The City's Memorandum of Law in Support of its Motion to Dismiss the SAC ("Defts.' Mem."), DE [93].  Specifically, the City contends that the SAC remains devoid of factual allegations sufficient to create a plausible inference that the City could be subject to liability.  *See id.*  As to the state-law causes of action, the City argues that the SAC again fails to viably plead claims of:  (i) negligent hiring and retention; (ii) negligent and intentional infliction of emotional distress; and (iii) general negligence.  The Court considers each argument in turn.[7]

---

[7] As he did in response to the first motion to dismiss, Plaintiff again annexes to his opposition a purported copy of the Tap Room's surveillance video allegedly depicting the subject incident.  *See* DE [94-1].  In this Circuit, courts have considered video evidence in conjunction with 12(b)(6) motions where the tape has either been:  (1) incorporated into the pleadings by reference; (2) offered by the plaintiff as part of its pleadings; or (3) incorporated by reference after the defendant introduced the video.  *See Garcia v. Does*, 779 F.3d 84, 88 (2d Cir. 2015); *see also Gersbacher v. City of New York*, 134 F. Supp. 3d 711, 720 (S.D.N.Y. 2015).  Here, Mosca has not offered the video as part of his pleadings but does reference the surveillance tape that depicts the subject incident.  *See, e.g.*, SAC ¶¶ 70-71.  The Court, however, declines to consider the video herein as it is not relevant to the analysis of the allegations against the City.  *See Leibovitz v. City of New York*, No. 14-cv-7106, 2018 WL 1157872, at *6 (E.D.N.Y. Mar. 2, 2018) (declining to consider video evidence that was not integral to allegations at issue).

i.   <u>42 U.S.C. § 1983</u>

Initially, the Court concludes that SAC fails to plausibly state a 42 U.S.C. § 1983 claim against the City.  *See* SAC ¶¶ 95-112.  Section 1983 provides, in relevant part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured….

42 U.S.C. § 1983.  Although the statute itself does not create substantive rights, it does provide "a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).  To prevail on a claim arising under 42 U.S.C. § 1983, a plaintiff must demonstrate: "(1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state law." *Hawkins v. Nassau Cty. Corr. Facility*, 781 F. Supp. 2d 107, 111 (E.D.N.Y. 2011) (citing 42 U.S.C. § 1983).

a.   *Color of State Law*

As a preliminary matter, Mosca sufficiently asserts, as he did in his Original Complaint, that Colavito acted under the color of state law.  "The purpose of Section 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161, 112 S.Ct. 1827, 1829 (1992).  To act under color of state law for purposes of 42 U.S.C. § 1983, the defendant must "have exercised power 'possessed by virtue of state law and made possible only

8

because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49, 108 S.Ct. 2250, 2255 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043 (1941)). "However, not all acts performed by public employees are under color of state law: 'acts of officers in the ambit of their personal pursuits are plainly excluded.'" *Gleason v. Scoppetta*, 566 F. App'x 65, 68 (2d Cir. 2014) (quoting *Screws v. United States*, 325 U.S. 91, 111, 65 S.Ct. 1031, 1040 (1945)).

"[T]here is no bright line test for distinguishing personal pursuits from activities taken under color of law." *Pitchell v. Callan*, 13 F.3d 545, 548 (2d Cir. 1994) (internal quotation and citation omitted). Where the defendant is an off-duty police officer, "courts look to the nature of the officer's act, not simply his duty status." *Id.* Liability under Section 1983 "may attach where an off-duty officer 'invokes the real or apparent power of the police department.'" *Wong v. Yoo*, 649 F. Supp.2d 34, 54 (E.D.N.Y. 2009) (quoting *Pitchell*, 13 F.3d at 548); *see also Rivera v. La Porte*, 896 F.2d 691, 695 (2d Cir. 1990) ("The off-duty status of an arresting officer does not mean that he is not acting under color of law."). In analyzing whether a police officer acted under the color of law, courts consider, *inter alia*, whether the officer:

> (1) was off-duty; (2) identified himself as an officer of the law; (3) was in uniform; (4) was authorized to make an arrest at the time; (5) was carrying handcuffs; (6) was carrying any weapons; (7) flashed a police badge; and (8) placed the plaintiff under arrest or otherwise detained her.

*Cotz v. Mastroeni*, 476 F. Supp.2d 332, 372 (S.D.N.Y. 2007).

Consistent with these factors, courts have found that an off-duty officer who engaged in a private altercation but also invoked the real or apparent power of the

9

police department acted under the color of state law. In *Davis v. Lynbrook Police Dep't*, the court denied summary judgment on the issue of whether an off-duty officer who initiated a traffic stop was acting under the color of state law. *See* 224 F. Supp. 2d 463, 475 (E.D.N.Y. 2002). Significantly, the off-duty officer was dressed in civilian clothes and immediately prior to the stop was at local bar drinking for approximately four hours. *See id.* The court concluded that, while the officer's pursuit began as purely personal in nature, the character of the officer's conduct changed when he identified himself as a police officer and flashed what appeared to be a badge thereby invoking the "real or apparent power of the police department." *See id.* As a result, the Court concluded that a reasonable jury could rationally conclude that the off-duty officer was acting under the color of state law. *See id.*

Here, the nature of Colavito's alleged conduct, like the off-duty officer in *Davis*, changed when he invoked his apparent authority as a police officer. Specifically, the SAC alleges that Colavito:  (1) identified himself as an officer of the law; (2) flashed his badge; and (3) detained Plaintiff when he stated that "I'm with the NYPD, you're not going anywhere." *See* SAC ¶ 49. Assuming these allegations to be true, it is reasonable to conclude that Colavito used his authority as an NYPD officer to facilitate his conduct. Accordingly, Mosca has plausibly alleged that Colavito acted under the color of state law and the Court proceeds to consider whether municipal liability is otherwise properly stated.

b.    *Municipal Liability*

Turning to the substance of Mosca's municipal liability cause of action, the Court concludes that the SAC again fails to state a claim. A municipality may not be held liable under Section 1983 on a *respondeat superior* theory of liability. *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91, 98 S. Ct. 2018, 2036 (1978); *see also Genovese v. Town of Southampton*, 921 F. Supp. 2d 8, 24 (E.D.N.Y. 2013) ("[A] municipal entity may only be held liable where the entity itself commits a wrong; a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.") (internal quotation omitted). To state a claim for municipal liability, a plaintiff must allege "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Torraco v. Port Authority of New York & New Jersey*, 615 F.3d 129, 140 (2d Cir. 2010) (citing *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)); *see also Norton v. Town of Islip*, 97 F. Supp. 3d 241, 264 (E.D.N.Y. 2015), *reconsideration denied*, No. 12-cv-4463, 2016 WL 264930 (E.D.N.Y. Jan. 21, 2016), *aff'd*, No. 16-cv-490, 2017 WL 440131 (2d Cir. Feb. 1, 2017) (citing *Monell*, 436 U.S. at 690-91, 98 S. Ct. at 2036; *Lamont v. City of New York*, No. 12-CV-2478, 2014 WL 4829328, at *7 (E.D.N.Y. Sept. 29, 2014)).

Moreover, although Section 1983 does not require application of a heightened pleading standard to allege municipal liability, a complaint does not "suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal,* 556 U.S. at 678, 129 S. Ct. at 1937 (alteration in original) (internal quotation and citations omitted); *see also Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination*

11

*Unit,* 507 U.S. 163, 168, 113 S. Ct. 1160, 1163 (1993). Thus, Plaintiff cannot simply allege the existence of a policy and/or custom without putting forth "facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." *Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012) (internal citation omitted). Simply asserting that the alleged violations could not have occurred unless supervisors and policy makers tolerated them is insufficient to demonstrate the existence of such a custom unless the assertion is clearly supported by an articulated factual context. *See Missel v. Cnty. of Monroe,* 351 F. App'x. 543, 545 (2d Cir. 2009); *Duncan v. City of New York,* No. 11-CV-3826, 2012 WL 1672929, at *3 (E.D.N.Y. May 14, 2012) (holding that "boilerplate statements" claiming that the city has a custom of making and tolerating false arrests and of using excessive force "are insufficient to state a claim of municipal liability under *Monell*"); *Bradley v. City of New York,* No. 08-cv-1106, 2009 WL 1703237, at *3 (E.D.N.Y. June 18, 2009) ("The Complaint's conclusory, boilerplate language – that the City 'fail[ed] to adequately discipline and supervise' employees and 'fail[ed] to promulgate and put into effect appropriate rules and regulations applicable to the duties and behavior' of its employees – is insufficient to raise an inference of the existence of a custom or policy, let alone that such a policy caused Plaintiff to be arrested without probable cause") (internal citations omitted).

A municipality may also be held liable where it demonstrates a "manifest failure to train, supervise or discipline [its] employees." *Mahan v. City of New York*, No. 00-cv-6645, 2005 WL 1677524, at *3 (E.D.N.Y. July 19, 2005) (citing *Oklahoma*

*City v. Tuttle*, 471 U.S. 808, 823, 105 S. Ct. 2427, 2436 (1985)). Such manifest failure only constitutes an official policy or custom if it amounts to "deliberate indifference." *See Wray*, 490 F.3d at 195 (internal citation omitted). As described by the Supreme Court:

> [D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. Thus, when [municipal] policymakers are on actual or constructive notice that a particular omission in their training program causes [municipal] employees to violate citizens' constitutional rights, the [municipal entity] may be deemed deliberately indifferent if the policymakers choose to retain that program.

*Connick v. Thompson*, 563 U.S. 51, 62, 131 S. Ct. 1350, 1360 (2011) (internal citations omitted); *see also Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) ("We have held that municipal inaction such as the persistent failure to discipline subordinates who violate civil rights could give rise to an inference of an unlawful municipal policy or ratification of unconstitutional conduct within the meaning of *Monell*"). As a result, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62, 131 S. Ct. at 1360. In order to plausibly allege a pattern of similar violations, a complaint must reference comparable incidents that occurred *prior* to the events in question and cannot rely on events that post-date the subject act of alleged misconduct. *See Tieman v. City of Newburgh*, No. 13-cv-4178, 2015 WL 1379652, at *17 (S.D.N.Y. Mar. 26, 2015) (citing *Collins v. City of New York*, 923 F. Supp. 2d 462, 479 (E.D.N.Y.2013) (a complaint's allegations of other police

13

misconduct incidents that are different from or post-date the wrongdoing alleged therein are insufficient to make a plausible case for *Monell* liability).  Moreover, where a municipal entity has a training program, a plaintiff must identify a specific deficiency in the program that is "closely related to the ultimate injury, such that it 'actually caused' the constitutional deprivation."  *Wray*, 490 F.3d at 196 (citing *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 129 (2d Cir.2004)).

Applying these standards, Mosca has failed to state a claim for municipal liability under Section 1983, as his argument that the SAC is rendered plausible through the inclusion of allegations concerning former officer Baror is insufficient as a matter of law.  Plaintiff alleges that the City failed to adequately screen potential NYPD officers who "pose an undue threat to the health and safety of the general public."  *See* SAC ¶ 106.  However, the SAC is devoid of any factual references to *prior*, *similar* constitutional violations.  Instead, the SAC references two other incidents concerning former NYPD officer Baror, one of which post-dates Mosca's alleged incident and another that does not reflect a similar constitutional violation. The Baror Motorist Incident is alleged to have occurred on January 1, 2018, nearly two years *after* the incident in question, and the Baror Ticket Incident does not relate to any deprivation of constitutional violations but rather, at most, amounts to an attempt by Baror to abuse his power to get out of a parking ticket.  Thus, the incidents pled by Mosca are insufficient to support an actionable claim.

Moreover, Plaintiff fails to plausibly articulate a factual context that ties his allegations to Baror's conduct or the City's handling of Baror.  Mosca's reliance on the

14

Post Article in an attempt to demonstrate the Department's "well-documented custom and practice in which favors were granted to help certain disqualified, and possibly dangerous candidates become NYPD officers," SAC ¶¶ 5, 35, misses the mark. Initially, Mosca's reliance on a newspaper article – published more than two years after his alleged incident, whereby unnamed "insiders" claim officers are hired as "favors" – does not in itself support an inference of a custom, policy or practice. *See Means v. City of New York*, No. 15-cv-4855, 2016 WL 1337278, at *6 (S.D.N.Y. Apr. 5, 2016) ("citing to a statement by a 'senior NYPD official' in a … newspaper article [more than two years after the incident in question] …. does not support an inference that there existed a pervasive unlawful custom, policy or practice"). Further, the article states that *Baror* was deemed a "high risk" candidate with a "tendency to behave in an impulsive, reckless and careless fashion" *prior* to his hiring, but was hired as a "favor" nonetheless. *See* Post Article. The SAC, however, is devoid of factual allegations that *Colavito* was hired under a similar pretense – there is no claim that Colavito's vetting process presented red flags deeming him unsuitable, nor is it alleged that Colavito was hired as a favor to NYPD leadership. Instead, the SAC criticizes the manner in which Colavito was disciplined *after* the subject incident, s*ee* SAC ¶¶ 72-74, 103, which is irrelevant with respect to any allegation of deliberate indifference preceding the attack. In short, Mosca's attempt to extrapolate Baror's

15

conduct to Colavito without any similar underlying factual assertions presents an untenable leap.[8]

Inasmuch as Plaintiff claims that the City manifestly failed to train its officers, the SAC fails to allege any inadequacies – specific or general – in the NYPD's existing training program at the time of the incident in question. *See Wray*, 490 F.3d at 196. Instead, it appears that Mosca attempts to impermissibly infer a policy from the alleged single violation of his own civil rights. *See Anderson v. City of New York*, 657 F. Supp. 1571, 1574 (S.D.N.Y. 1987) ("Plaintiff cannot infer a policy from the alleged violation of his own civil rights"). Therefore, at most, Plaintiff has alleged an isolated incident which is insufficient to state a claim for municipal liability. *See Tuttle*, 471 U.S. at 814, 105 S. Ct. at 2431 ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*"). To the extent Mosca argues his inclusion of the Baror Incidents in the SAC presents additional support that the City retained training programs known to be inadequate, *see* Pltf.'s Opp. at 17, as set forth above Plaintiff's position is flawed based on the time and scope of those events. Accordingly, the Court respectfully recommends that Mosca's Section 1983 claims against the City be dismissed.

---

[8] Plaintiff's reliance on a second article claiming that high ranking NYPD officials meddled with disciplinary investigations to afford some officers special treatment similarly fails. *See* SAC ¶ 12; https://www.nydailynews.com/new-york/ex-commander-exposes-nypd-corrupt-disciplinary-process-article-1.4014258. The SAC contains no allegations that Colavito was subject to disciplinary action prior to the Mosca incident, let alone that such proceedings were interfered with.

ii.    <u>State Law Claims</u>

Turning to Plaintiff's state law claims, the Court concludes that they similarly fail as a matter of law.  The Court first notes that SAC's only apparent attempt to cure the Original Complaint's deficiencies concerning the state law causes of action hinges on the same additional allegations as the Section 1983 claims, and otherwise effectively mirrors the claims in Original Complaint.  As set forth above, the SAC appears to assert state law claims for:  (i) negligent hiring and retention; (ii) negligent and intentional infliction of emotional distress; and (iii) general negligence.  *See* SAC, Second and Fourth Causes of Action; *see also* Pltf.'s Opp. at 19.  The Court addresses each in turn.

a.    *Negligent Hiring and Retention*

The Court first concludes that Plaintiff's negligent hiring and retention claim should be dismissed.  To state a claim for negligent hiring and retention under New York law, in addition to the standard elements of negligence, a plaintiff must show: (1) that the tortfeasor and the defendant were in an employee-employer relationship; (2) that the employer "knew or should have known of the employee's propensity for the conduct which caused the injury" prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels. *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004).

Once again, the SAC fails to allege any specific facts concerning any prior misconduct of Colavito.  Instead, Plaintiff criticizes the NYPD's treatment of Colavito after the incident in question and relies on the prior misconduct of Baror.  *See* SAC

¶¶ 7-10, 72-74, 103. Therefore, even assuming the facts alleged in the SAC to be true, Mosca is unable to plausibly demonstrate that NYPD "knew or should have known of [Colavito's] propensity for the conduct which caused [Plaintiff's alleged] injury." *Soliman v. City of New York*, No. 15-cv-531, 2017 WL 1229730, at \*12 (E.D.N.Y. Mar. 31, 2017). Accordingly, the Court respectfully recommends that the City's motion to dismiss Mosca's negligent hiring and retention claim be granted.

b.    *Negligent and Intentional Infliction of Emotional Distress*

Plaintiff's negligent and intentional infliction of emotional distress claim is similarly subject to dismissal. "Under New York law, a claim for intentional infliction of emotional distress requires a showing of (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *See Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999). A viable claim for negligent infliction of emotional distress can be achieved in one of two ways: (1) the 'bystander' theory; or (2) the 'direct duty' theory." *Lloyd v. City of New York*, 246 F. Supp. 3d 704, 730 (S.D.N.Y. 2017) (quoting *Baker v. Dorfman*, 239 F.3d 415, 421 (2d Cir. 2000)). Here, Plaintiff attempts to set forth a claim under the latter. Under the "direct duty" theory, "a plaintiff suffers emotional distress caused by [a] defendant's breach of a duty which unreasonably endangered [the plaintiff's] own physical safety." *Id.* (internal quotation and citation omitted).

Negligent and intentional infliction of emotional distress are "highly disfavored [torts] under New York law," and they are "to be invoked only as a last

resort." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158 (2d Cir. 2014) (internal citations omitted). To that end, these causes of action may be applied only "to provide relief in those circumstances where traditional theories of recovery do not." *Salmon v. Blesser*, 802 F.3d 249, 256 (2d Cir. 2015) (citations omitted)).

Here, Mosca's negligent and intentional infliction of emotional distress cause of action remains fatally flawed as it is duplicative of his assault and battery claims against Colavito and Walsh. *See, e.g.*, *Caravalho v. City of New York*, No. 13-cv-4174, 2016 WL 1274575, at *23 (S.D.N.Y. Mar. 31, 2016) (dismissing as duplicative negligent infliction of emotional distress claim because "the conduct at issue – [the defendant's] allegedly unreasonable use of force – and any resulting emotional damage is entirely subsumed by [the plaintiff's] common law assault and battery claim). Accordingly, the Court respectfully recommends that this claim also be dismissed.

### c.    Negligence

Finally, the SAC fails to cure the Original Complaint's deficiencies with respect to a negligence cause of action against the City. To establish a claim of negligence, a plaintiff must demonstrate each of following elements: "(1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Genao v. Bd. of Educ. of City of New York*, 888 F. Supp. 501, 505 (S.D.N.Y. 1995). It is well-settled that once intentional offensive conduct has been established, the actor is liable for assault and not negligence. *See, e.g.*, *United Nat. Ins. Co. v.*

*Tunnel, Inc.*, 988 F.2d 351, 353 (2d Cir. 1993) (discussing the mutual exclusivity of negligence and battery under New York law).

Here, as the SAC alleges that Colavito's and Walsh's actions were intentional and deliberate, they are outside the ambit of a negligence claim. Insofar as Plaintiff contends the City's negligence occurred *before* the incident due to the NYPD's history of hiring unqualified officers, *see* Pltf.'s Opp. at 20, this argument also fails for the same reason as his Section 1983 claim. Specifically, Mosca's assertion that the NYPD should have deemed Colavito unfit for duty simply because Baror was hired in spite of a troubling history remains untenable. Accordingly, the Court concludes that Mosca's negligence claim fails as well.

For all of the foregoing reasons, the Court respectfully recommends that the City's motion to dismiss the SAC as to it be granted in its entirety.[9]

## B.    Leave to File a Third Amended Complaint

Although Mosca has not sought leave to further amend the SAC as he did in response to the City's first motion to dismiss, the Court addresses the issue nonetheless. Leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2). However, it is "within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Courts may properly dismiss a complaint without granting leave

---

[9] The Court notes that even if Mosca's state law claims survived on the merits, the failure of Plaintiff's Section 1983 cause of action would divest this Court of subject matter jurisdiction over the litigation under 28 U.S.C. §§ 1331 and 1367. *See Quiroz v. U.S. Bank Nat'l Ass'n*, No. 10-cv-2485, 2011 WL 2471733, at *8 (E.D.N.Y. May 16, 2011) (recommending that the district court decline to exercise supplemental jurisdiction) (Report and Recommendation), *adopted by*, 2011 WL 3471497 (E.D.N.Y. Aug. 5, 2011).

to amend when the plaintiff fails to cross-move for leave to do so in response to the pertinent motion to dismiss. *See Augienello v. Coast-to-Coast Fin. Corp.*, 64 F. App'x 820 (2d Cir. 2003) (holding dismissal for failure to state a claim was warranted in part due to the plaintiffs' failure to seek leave to amend); *see also Lynn v. McCormick*, No. 17-cv-1183, 2017 WL 6507112, at *7 (S.D.N.Y. Dec. 18, 2017) (denying leave to amend where the plaintiffs did not request such relief). Moreover, if a plaintiff fails to cure pleading deficiencies after being given an opportunity to do so, denial of leave to amend is appropriate. *See Payne v. Malemathew*, No. 09-cv-1634, 2011 WL 3043920, at *5 (S.D.N.Y. July 22, 2011) ("That Plaintiff was provided notice of his pleading deficiencies and the opportunity to cure them is sufficient ground to deny leave to amend *sua sponte*); *accord TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 506 (2d Cir. 2014) ("A plaintiff need not be given leave to amend if [he] fails to specify … how amendment would cure the pleading deficiencies").

Here, Plaintiff has not requested leave to file an Third Amended Complaint and has already twice attempted to cure the deficiencies in his pleadings. Accordingly, the Court respectfully recommends leave to amend be denied *sua sponte*.

## C.   The City's Motion to Dismiss Tapped's Crossclaims

The City also moves to dismiss Tapped's Crossclaims as against it.[10]  As a preliminary matter, Tapped concedes that its Crossclaims are "based on all of the factual allegations contained in [the SAC]." *See* Tapped's Opp. at 3. Indeed, the

---

[10] Tapped's crossclaims against Colavito and Walsh in connection with their alleged assault on Mosca and against MXL for indemnification and contribution are not at issue herein.

21

Crossclaims fail to assert any additional facts. *See* Crossclaims. On that basis alone, the Crossclaims should be dismissed for the same reasons as the SAC. Notwithstanding, the Court considers the substance of Tapped's Crossclaims against the City for the sake of completeness. Tapped contends in conclusory fashion that it is entitled to indemnification and/or contribution from the City. *See* Crossclaims ¶¶ 73-74. Both causes of action fail.

Initially, the Court notes that 42 U.S.C. § 1983 does not provide a federal right to indemnification or contribution. *See Firestone v. Berrios*, 42 F. Supp. 3d 403, 419 (E.D.N.Y. 2013) (collecting cases).[11]

Turning to potential state law claims, in New York a claim for indemnity "arises out of a contract which may be express or may be implied in law." *Rosado v. Proctor & Schwartz, Inc.*, 66 N.Y.2d 21, 24, 494 N.Y.S.2d 851, 853 (1985) (collecting cases). Implied indemnity only exists "if some duty to indemnify exists between [a third-party plaintiff and third-party defendant]." *Id.* (internal quotation and citation omitted); *see also Landtek Grp., Inc. v. N. Am. Specialty Flooring, Inc.*, No. 14-cv-1095, 2016 WL 11264722, at *33 (E.D.N.Y. Aug. 12, 2016), *report and recommendation adopted*, 2016 WL 8671839 (E.D.N.Y. Sept. 16, 2016) ("indemnification claims shift liability … based upon a relationship between the parties") (internal quotation and citations omitted). Here, Tapped has not alleged the existence of a relationship – contractual or otherwise – between it and the City, nor

---

[11] Although any damages Plaintiff ultimately recovers from Tapped would be outside the scope of Section 1983, as Tapped is not a government entity, the Crossclaims purport to allege the City is liable to Tapped under that statute.

does it claim that the City owed it any duty to indemnify. Thus, Tapped has failed to state a claim for indemnity.

The doctrine of contribution enables "the loss [to be] distributed among tortfeasors by requiring joint tortfeasors to pay a proportionate share of the loss." *Firestone*, 42 F. Supp. 3d at 419 (E.D.N.Y. 2013) (quoting *Rosado*, 66 N.Y.2d at 24; 494 N.Y.S.2d at 853). Although contribution may lie "even when the contributor has no duty to the injured plaintiff," such claim may only "be asserted if there has been a breach of a duty that runs from the contributor to the defendant who has been held liable." *Raquet v. Braun*, 90 N.Y.2d 177, 182, 659 N.Y.S.2d 237, 240 (1997) (internal citations omitted). Because Tapped has failed to allege the City owes it any duty, its claim for contribution also fails.

Accordingly, the Court respectfully recommends granting the City's motion to dismiss the Crossclaims. Because Tapped's claims against the City are admittedly predicated solely on Plaintiff's allegations and since, like Mosca, Tapped has not requested leave to amend its Crossclaims, the Court further recommends that the dismissal of the Crossclaims be with prejudice.

## IV.   Conclusion

For the reasons set forth above, the Court respectfully recommends: (i) granting the City's motion to dismiss the SAC as against it, DE [92], with prejudice; (ii) granting the City's motion to dismiss Tapped's Crossclaims against it, DE [99], with prejudice; (iii) denying as moot the City's motion to dismiss Tapped's inoperative

original crossclaims against it, DE [70]; and (iv) dismissing the City as a Defendant/Cross-Defendant in this litigation.

## V.    Objections

A copy of this Report and Recommendation is being served on all parties by electronic filing on the date below.    Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of receipt of this report.    Failure to file objections within the specified time waives the right to appeal the District Court's order.   *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a); *Ferrer v. Woliver*, 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:       Central Islip, New York
             December 26, 2018        s/ Steven I. Locke
                                      STEVEN I. LOCKE
                                      United States Magistrate Judge